FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
JUL 28 2025
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

**Plaintiff STEVEN CLAYTON THOMASON, on behalf of himself, his daughters NORCISSE THOMASON and BRE THOMASON, and similarly situated co-owners.**

**COMPLAINT FOR CIVIL RICO VIOLATIONS, CONSTITUTIONAL DEPRIVATIONS, INJUNCTIVE RELIEF, DAMAGES, AND DECLARATORY JUDGMENT**

1:25-CV-4189

**JURY TRIAL DEMANDED**

**Civil Action No. ______________**

**TABLE OF CONTENTS**


- **Jurisdiction and Venue**
- **Parties (including Norcisse Thomason and Bre Thomason as co-owners and injured parties)**
- **Preliminary Statement**
- **Statement of Facts**
- **Causes of Action**

**Count 1 – Civil RICO (18 U.S.C. §§ 1962(c), (d))**

**Count 2 – Mail Fraud (18 U.S.C. § 1341)**

**Count 3 – Wire Fraud (18 U.S.C. § 1343)**

**Count 4 – Servicemembers Civil Relief Act (SCRA) Violations**

**Count 5 – RESPA & FDCPA Violations (12 U.S.C. §§ 2605(f), 2607; 15 U.S.C. § 1692f)**

**Count 6 – Simulated Servicing and Debt Discharge Suppression (26 U.S.C. § 6050P; 12 U.S.C. § 2605; 15 U.S.C. §§ 1692e, 1692f)**

**Count 7 – Obstruction Under Color of Law – FIRREA Violations (12 U.S.C. § 1833a)**

**Count 8 – False Statements and Due Process Injury (18 U.S.C. § 1001; 42 U.S.C. § 1983)**

**Count 9 – Interference with Civil Rights (42 U.S.C. § 1981 – Right to Contract)**

**Count 10 – Quiet Title and Declaratory Relief (28 U.S.C. § 2409a; FIRREA § 1821(j))**

**Count 11 – Fourth and Fifth Amendment Violations (U.S. Const. Amends. IV, V; 42 U.S.C. § 1983)**

**Count 12 – Truth in Lending Act Violations and Promissory Fraud (15 U.S.C. § 1601 et seq.; 12 CFR § 1026; Ala. Common Law)**

**Count 13 – Adverse Possession and Equitable Title (Ala. Code § 6-5-200; Moore v. Lovelace; Sylvest v. Stowers)**

**Count 14 – Obstruction of Justice (18 U.S.C. § 1503)**

**Count 15 – Witness Retaliation and Intimidation (18 U.S.C. § 1513(e))**

**Count 16 – Conspiracy to Obstruct Justice (18 U.S.C. § 371)**

**Count 17 – Procedural Due Process and Equal Protection Violations (U.S. Const. Amends. V, XIV)**

**Count 18 – Unlawful Seizure of Property Under Color of Law (U.S. Const. Amends. IV, V, XIV; 42 U.S.C. § 1983)**

**Count 19 – Civil Conspiracy to Interfere with Judicial Access (42 U.S.C. § 1985(2))**

**Count 20 – Abuse of Injunction Power and Restraint of Legal Access (U.S. Const. Amends. I, XIV; 42 U.S.C. § 1983)**

**Count 21 – Conspiracy to Violate Constitutional Rights (42 U.S.C. § 1985(3); 18 U.S.C. § 1962(d))**

**Count 22 – Fraud Upon the Court**

**Count 23 – Federal Court Complicity and Due Process Violations**

**Count 24 – Judicial Misconduct and Ethics Suppression**

**Count 25 – Fair Housing Act Violations**

**Count 26 – Retaliation Against Protected Advocacy**

**Count 27 – State Court Appellate Obstruction**

**Count 28 – Federal Preemption Violations and Jurisdictional Overreach**

**Count 29 – Suppression of FDIC Asset Determinations and Banking Fraud**

**Count 30 – Procedural Due Process Violations and Denial of Meaningful Review**

**Count 31 – Violation of Judicial Transparency and Public Accountability**

**Count 32 – Obstruction of Federal Process and Retaliatory Enforcement (18 U.S.C. § 1512; 42 U.S.C. § 1983)**

**Count 33 – Constructive Fraud and Suppression of Statutory Defenses**

**Count 34 – Injunctive Relief to Vacate Void Foreclosure and Ejectment**

- **Prayer for Relief**
- **Verification and Signature Page**
- **Jury Trial Demanded**
- **Reference Materials Section**

  **– Master Table of Counts**

**– Predicate Act Matrix**

**– Timeline of Judicial Misconduct**

**– Exhibit Index (with brief summaries)**

**– Docket Manipulation Chart**

**– Enterprise Coordination Diagram**

## JURISDICTION AND VENUE

This Court has jurisdiction under the following statutes:

- **28 U.S.C. § 1331** — Federal question jurisdiction
- **28 U.S.C. § 1343** — Civil rights violations and redress
- **28 U.S.C. § 1332** — Diversity jurisdiction where applicable
- **18 U.S.C. § 1964(c)** — Civil RICO enforcement
- **12 U.S.C. § 1821(d)(13)(D)** — FIRREA-related claims
- **42 U.S.C. §§ 1981–1985** — Civil rights and constitutional protections

Plaintiffs assert claims under the **Racketeer Influenced and Corrupt Organizations Act (RICO)**, the **Servicemembers Civil Relief Act (SCRA)**, **FIRREA**, **RESPA**, **FDCPA**, and the **U.S. Constitution**, all arising from a coordinated pattern of misconduct involving foreclosure enforcement, procedural suppression, servicing fraud, and denial of judicial access.

**Venue is proper in the **Northern District of Georgia** pursuant to **28 U.S.C. § 1391(b)**, because:**

- A substantial portion of the conduct alleged occurred within the Eleventh Circuit
- Multiple related appeals are currently active within this district
- Venue outside Alabama is required to avoid conflicts of interest and ensure impartial adjudication given prior Middle District entanglements and documented judicial suppression. The conduct challenged herein occurred while the Eleventh Circuit had—and continues to exercise—subject matter jurisdiction over related appeals involving the same enterprise actors and statutory violations. Specifically:

- Appeal No. 24-13965, docketed December 5, 2024, challenges enterprise conduct by Deutsche Bank National Trust and PHH Mortgage, involving a failed bank asset subject to FDIC receivership and prudential mootness determinations.

- Appeal No. 25-10236, docketed January 27, 2025, further threads enterprise continuity and procedural suppression across federal venues.

The asset at issue—commonly referred to as the Thomason note—is time-barred under 28 U.S.C. § 2415(a), as adjudicated in FDIC v. Belli, 981 F.2d 838 (5th Cir. 1993). The Fifth Circuit held that assignment to the FDIC does not restart the limitations period, and that claims must be filed within six years of accrual. The FDIC retained the asset and did not transfer valid title or note rights to the entity now asserting control. Accordingly, any attempt to enforce the note constitutes racketeering under 18 U.S.C. § 1962(c) and violates federal receivership protocols under FIRREA.

Plaintiffs further allege that judicial officers, acting in their individual capacities, have aided in the concealment of this time-barred status and retaliated against Plaintiff for seeking federal intervention. This conduct includes procedural obstruction, denial of equitable relief, and forum manipulation designed to bypass federal protections and suppress statutory defenses. Improper use of an Injunction without a due process hearing.

Declaratory relief is sought under **28 U.S.C. §§ 2201–2202**, and injunctive relief is requested under **Fed. R. Civ. P. 65**.

Jurisdiction is also invoked under 18 U.S.C. § 1964(c) for RICO violations; 12 U.S.C. § 1821(d)(13)(D) for FIRREA-related claims; and 42 U.S.C. §§ 1981–1985 for civil rights violations.

## PARTIES

Plaintiff **Steven Clayton Thomason** is a resident of Montgomery County, Alabama and has been a titled co-owner of the subject property at all times relevant herein.

Plaintiff ** Bre Leonna Thomason** is a resident of Shelby County, Alabama and has been a titled co-owner of the subject property at all times relevant herein. Ms. Thomason served on active duty in the U.S. Armed Services during the foreclosure period and is joined pursuant to Federal Rule of Civil Procedure 20(a).[1]

Plaintiff **Norcisse Prisca Thomason** is a resident of Montgomery County, Alabama and has likewise been a titled co-owner of the subject property at all times relevant herein.

DEFENDANTS

- **Federal Deposit Insurance Corporation (FDIC)** – Receiver for IndyMac Bank, FSB Address: 3501 Fairfax Drive, Arlington, VA 22226

- **First Citizens Bank** – Successor-by-acquisition to CIT Group, One West Bank, and IndyMac operations Address: 4300 Six Forks Road, Raleigh, NC 27609

- **Eva Bank** – FDIC-insured state-chartered bank Address: 34113 Eva Road, Eva, AL 35621 Branch: 1710 Cherokee Avenue, Cullman, AL 35055

- **PHH Mortgage Corporation** – Successor servicer to Ocwen Loan Servicing, LLC Address: P.O. Box 5954, Springfield, OH 45501-5954

- **Deutsche Bank National Trust Company (DBNTC)** – Foreign trustee purporting to act on behalf of INABS 2006-A8 securitized pool Address: 60 Wall Street, New York, NY 10005

- **Mortgage Electronic Registration Systems (MERS)** – Registry entity involved in title manipulation Address: 1901 E. Voorhees Street, Suite C, Danville, IL 61834

**ATTORNEYS**

Referenced for roles in document concealment, foreclosure enforcement, and litigation suppression:

Named attorneys include:

- Christopher A. Bottcher
- Joseph Vincent Ronderous
- Timothy Dylan Reeves
- Natalie V. Walker
- Colin Thomas Dean
- Graham W. Gerhardt
- Meaghan Elizabeth Ryan
- Shaun Ramey
- John R. Lavette
- Jon-Kaden G. Mullen
- Cynthia W. Williams

> Plaintiffs reserve the right to amend this Complaint to include The Attorneys firms as named defendants if discovery reveals enabling misconduct or systemic coordination.

**JUDICIAL OFFICERS (Named in Individual Capacity)**

- **Judge Emily C. Marks**, Chief Judge, MDAL
- **Judge William Keith Watkins**, Senior Judge, MDAL

- **Judge Andrew L. Brasher**, Circuit Judge, Eleventh Circuit
- **Judge James Anderson**, Circuit Judge, Montgomery County
- **Judge Brooke Reid**, Circuit Judge, Montgomery County

**STATE JUDICIAL INSTITUTIONS**

- **Judges of the Alabama Civil Court of Appeals** *(individual capacity)*
- **Clerks of the Alabama Civil Court of Appeals** *(names unknown; joined for discovery)*

> Plaintiffs reserve the right to name specific appellate judges and clerks who authored, signed, or enabled void rulings despite statutory preemption under FIRREA. Identification will be confirmed via discovery.

**AGENCY & MUNICIPAL ACTORS**

- **Montgomery County Sheriff's Department**
- **Jubilee Movers**
- **Altisource Relocation Services**
- **Clerks of the Circuit Court of Montgomery County** *(to be identified)*

> Plaintiffs expressly reserve the right to name specific individuals responsible for administrative reassignment of the Thomason matter from Hon. Judge Hardwick to Judge Brooke Reid and Judge James Anderson.

---

[1] Plaintiffs Bre Leonna Thomason and Norcisse Thomason are joined under Federal Rule of Civil Procedure 20(a) as their injuries arise from the same series of

transactions and occurrences and share common questions of law and fact. Plaintiffs reserve the right under Rule 21 to seek severance, amendment, or independent pleading should judicial economy or discovery later warrant.

[2] Judicial officers named herein are joined in their individual capacities for conduct contributing to the suppression of statutory defenses, denial of equitable relief, and procedural obstruction. Plaintiffs assert that rulings, orders, and omissions by these officer's form part of the enterprise pattern challenged under Civil RICO, 42 U.S.C. § 1983, and federal statutory frameworks. Plaintiffs reserve the right to amend this Complaint to include additional judicial officers or refine allegations as discovery reveals further misconduct or enabling behavior.

[3] Plaintiffs expressly reserve the right to name individuals, offices, or entities whose involvement is presently unknown or subject to confirmation through discovery. This includes—but is not limited to—clerks or administrators responsible for reassigning the Thomason matter from Hon. Judge Hardwick to Judge Brooke Reid and Judge James Anderson. Discovery will include formal interrogatories, requests for admission, and third-party subpoenas to confirm roles and timing.

[4] Judges of the Alabama Civil Court of Appeals are named in their individual capacities for rulings that sustained a state action lacking jurisdiction, despite Plaintiffs' formal notice of federal preemption under FIRREA. Plaintiffs reserve the right to name the individual judges who signed or enabled the orders refusing to adhere to abatement and respect the federal jurisdiction over the subject matter or reverse such void proceedings, as discovery clarifies attribution and internal awareness.

## III. PRELIMINARY STATEMENT

This Complaint arises from a multi-phase enterprise that originated with promissory fraud in the 2005 mortgage execution involving Eva Bank and later evolved into a servicing suppression scheme spanning nearly twenty years. Plaintiffs assert claims under federal and state law arising from a coordinated pattern of racketeering behavior, concealment, procedural denial, and unlawful conveyance.

Eva Bank's role in origination triggered mandatory obligations under the Real Estate Settlement Procedures Act (RESPA). Loan documents—including the HUD-1 Settlement Statement, promissory note, and deed of trust—were executed in 2005, yet Probate records confirm trust deposit did not occur until 2011. This six-year delay evidence asset laundering, mail and wire fraud, and statutory violations triggering federal claims under RESPA, RICO, and FIERRA.

The loan was funneled into IndyMac Asset-Backed Securities, with Deutsche Bank National Trust Company (DBNTC) acting as purported trustee. Defendants—including successor servicers, foreclosure counsel, law firms, and administrative actors—coordinated misrouting of borrower data, unauthorized redactions, document concealment, and denial of correspondence access. This structure included fabricated trial logic, hazard policy suppression, post-mortem obstruction, and coordinated blackout events as documented in Doc. 70-1 (¶30EK) and Call-log entries 1–132.

During the foreclosure process, Plaintiff SSGT Bre Leonna Thomason was on active military duty. Defendants knowingly violated the Servicemembers Civil Relief Act (SCRA) by proceeding without proper review or protections, further infringing Plaintiffs' rights under the First Amendment (denial of meaningful access to court), Fifth Amendment (unlawful deprivation of property without due process), and Fourteenth Amendment (denial of equal protection and standing).

Defendants transferred the subject property to an offshore buyer aligned with obstructive possession fencing, concealment activity, and post-removal intimidation. Plaintiffs responded with notarized legal notices, county affidavits, and direct enforcement of constitutional rights—including reclamation under color of law and assertion of property rights protected by federal statutes and constitutional guarantees.

This action includes claims under:

- Racketeer Influenced and Corrupt Organizations Act (RICO)
- Real Estate Settlement Procedures Act (RESPA)
- Servicemembers Civil Relief Act (SCRA)
- Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA)
- 42 U.S.C. §§ 1981–1985 (civil rights violations and conspiracy)
- Fair Housing Act (interference with equal housing access)
- State law claims for fraud, unjust enrichment, and constructive eviction

Plaintiffs affirm that all causes of action herein arise from post-dismissal conduct, newly discovered evidence, and statutory violations not adjudicated on the merits in any prior proceeding. On March 22, 2017, Judge Myron H. Thompson dismissed Thomason's previous claims without prejudice and stated on record that the Plaintiff's claims were meritorious, though relief was denied under Rule 60(b) due to evidentiary limitation at the time—a limitation caused by DBNTC's concealment.

Accordingly, the present pleading includes new causes of action, including Count I (Civil RICO), Counts VIII, IX, and XIII (Fair Housing Act violations), and additional claims arising from venue override, statutory obstruction, adverse possession, and due process injury that have not been previously litigated. These claims are not barred by res judicata, collateral estoppel, or any related doctrine.

Plaintiffs expressly reserve all procedural and substantive rights preserved under Rule 41(a), 42 U.S.C. § 1983, and the constitutional guarantees of access to court, equal protection, and redress.

## Appendix Introduction and Reservation of Rights

Plaintiffs submit a consolidated Appendix in support of this Complaint, consisting of sworn affidavits, correspondence, internal records, and judicial filings that document the continuity, inducement, and suppression patterns underlying the enterprise conduct challenged herein. Included are affidavits from the original mortgage broker and closing attorney, whose firsthand accounts detail the inducement, misrepresentation, and procedural irregularities that predate the housing crash and form part of the enterprise's foundational misconduct. These materials reflect not only the deceptive practices used to entrap vulnerable homeowners, but also the coordinated efforts to suppress statutory defenses and evade federal oversight in the years that followed. Plaintiffs reserve the right to expand this Appendix as discovery reveals further misconduct, enabling behavior, or institutional entrenchment.

## IV. STATEMENT OF FACTS

### I. Foundational Misconduct and Origination Scheme (2004–2008)

¶1: In 2004, the Thomason family resided at 901 Seibles Road under a rent-to-own agreement. Mrs. Priscilla Thomason had stage 4 cancer and was approved for disability prior to executing any mortgage documents with Eva Bank.

¶2: Eva Bank falsified Ms. Thomason's work income and employment status and presented two mortgage loans carrying high interest rates. The second note included a balloon payment, despite the property being valued under $100,000.00.

¶3: During closing, the Thomasons expressed concern about escalating variable rates and declined the loans, until Eva Bank made a verbal promise to refinance both mortgages into a single fixed-rate product after two years of payment performance.

¶4: Eva Bank assured the Thomasons that two years of payments would trigger a refinance, materially inducing reliance and continued performance. This representation, documented in correspondence and internal records, forms part of the deceptive pattern underlying the enterprise's servicing conduct. (See APPX Vol 1 pg. 1.)

¶5: The Thomasons fulfilled this agreement; however, Eva Bank sold the loans to IndyMac Bank shortly after the first payment, nullifying the refinance assurance.

¶6: When the Thomasons returned to Eva Bank's broker in 2007, they were redirected to IndyMac Bank, which denied any obligation to refinance.

¶7: Priscilla and Clayton Thomason signed mortgages granting security interest to MERS as nominee for Eva Bank and its successors. (See APPX Vol. 2, pg. 49)

¶8: Eva Bank's broker later confirmed in an affidavit that all instructions—including the refinance assurance—were issued directly by Eva Bank. (APPX Vol 1 page 1 – Promissory Fraud Archive)

¶9: Affidavits from both the broker and closing attorney corroborate Eva Bank's representations and support allegations of promissory fraud, which constitute predicate acts under RICO.

¶10: The loan structure violated federal lending laws by artificially splitting debt into two subprime adjustable-rate mortgages with escalating payments designed to induce borrower default.

## II. FDIC Receivership and Jurisdictional Trigger (2008–2010)

¶11: IndyMac Bank was declared insolvent and closed by the Office of Thrift Supervision in July 2008. The Federal Deposit Insurance Corporation (FDIC) was appointed conservator.

¶12: On July 11, 2008, the FDIC acquired the Thomason mortgage asset, thereby triggering a six-year federal limitation period under 28 U.S.C. § 2415(a).

¶13: No probate estate was opened for Priscilla Thomason. Under Ala. Code § 35-4-7, title passed directly to Clayton Thomason and her children.

¶14: Ownership was confirmed by Old Republic Title Company and documented in relevant title policies. (APPX Vol 1 page 20)

¶14A: On January 6, 2009, IndyMac Vice President Michael J. Bekes admitted that Ms. Thomason's original loan modification documents were "lost, misplaced, or inadvertently destroyed." (See Exhibit A – RESPA QWR Archive)

¶15: On March 19, 2009, the FDIC transferred certain IndyMac assets to One West Bank. Receivership liabilities remained with the FDIC.

¶16: On November 18, 2009, the FDIC published notice that assets acquired from IndyMac could not be used to satisfy general unsecured claims. (See 74 Fed. Reg. 59,540; APPX Vol. 2, p. 48)

¶17: Deutsche Bank's related claims were dismissed as prudentially moot pursuant to 12 U.S.C. § 1821(d)(11).

¶18: Courts affirmed the FDIC's asset valuations as final and binding, foreclosing judicial recourse against receivership assets. (See Deutsche Bank v. FDIC, 854 F. Supp. 2d 756)

**III. Bankruptcy Attempts and Wrongful Foreclosure (2011–2012)**

¶19: In March 2011, DBNTC accelerated unpaid debt and initiated nonjudicial foreclosure despite Plaintiff's active modification efforts and without submitting the foreclosure claim for administrative review as required under 12 U.S.C. § 1821(d)(3).

¶20: On March 1, 2011, Thomason filed for bankruptcy protection under Case No. 11-30520-DHW, residing at the subject property with two minor children.

¶21: On February 21, 2012, DBNTC again accelerated the debt and scheduled a foreclosure sale for March 27, 2012—despite ongoing modification efforts and without administrative claim review. During this period, DBNTC violated multiple provisions of the Real Estate Settlement Procedures Act (RESPA), including failure to acknowledge or substantively respond to Qualified Written Requests (QWRs), as mandated under 12 U.S.C. § 2605(e). These actions form part of a deliberate pattern of statutory noncompliance designed to conceal material facts, obstruct relief, and advance foreclosure under false pretenses. The pattern of administrative sabotage and coercion supports a Civil RICO predicate under 18 U.S.C. § 1961(5). (APPX Vol 1 page 39)

¶22: On March 26, 2012, Plaintiff filed a second bankruptcy petition (Case No. 12-30717-DHW), which was dismissed the following month.

¶23: Plaintiff filed suit in the Middle District of Alabama (Case No. 2:12-cv-604-MHT-TFM) asserting promissory fraud and wrongful foreclosure.

**IV. RESPA Violations and Document Suppression (2010–2012)**

¶24: On January 12, 2010, Plaintiff submitted a QWR to IndyMac requesting servicing records, escrow breakdowns, and modification eligibility documentation.

¶25: On November 30, 2011, a second QWR sought loan ownership verification and borrower status correction.

¶26: On March 24, 2012, a third QWR requested full payment history and escrow reconciliation.

¶27: On June 4, 2012, a fourth QWR was submitted for modification materials and accurate payoff documentation.

¶28: On May 10, 2012, IndyMac responded vaguely, stating it would reply "when required under applicable laws," and failed to meet the 60-day response deadline mandated under 12 U.S.C. § 2605(e)(2).

¶29: In response to continued obstruction, Plaintiff submitted multiple follow-up letters demanding original documents, call logs, and internal modification records.

**IV. STATEMENT OF FACTS (Continued)**

¶29A: On July 25, 2013, Ocwen Loan Servicing refused to acknowledge a prior modification approval from IndyMac and reset the account to default. This action violated 12 U.S.C. § 2605(k)(1)(C) and obstructed Plaintiff's loss mitigation status. (Exhibit A, Entry #51)

¶29B: On August 14, 2013, Ocwen Customer Service denied authorization to communicate with Plaintiff despite documentation confirming borrower status. This delay tactic violated § 2605(e)(1)(B) and prevented timely servicing inquiries. (Entry #52)

¶29C: On September 9, 2013, Ocwen's Escrow Department disbursed insurance funds without notifying Plaintiff and failed to disclose an escrow shortage. This violated § 2609(c)(2) and contributed to unauthorized disbursement practices. (Entry #53)

¶29D: On October 4, 2013, Ocwen re-boarded the loan with an inflated principal balance and misallocated escrow. These manipulations violated §§ 2605(k)(1)(C) and 2609 and support wire fraud under the RICO framework. (Entry #54)

¶29E: On November 13, 2013, while payoff calculations were actively disputed, Ocwen charged off the loan and initiated debt collection. This retaliatory act violated § 2605(e)(2) and supports an abuse of process claim. (Entry #55)

¶29F: On November 25, 2013, Ocwen logged internal communication retrieval labeled "FORM PRIVMSG." The form was never produced in discovery or document disclosures. (Exhibit A, Entry dated 11/25/2013)

¶29G: On January 29, 2014, Ocwen agent Kadambari Toraskar logged Plaintiff—a verified borrower—as a "non-authorized caller," obstructing future communication and violating § 2605(e)(1)(B) and (e)(3). (Exhibit A, Entry dated 1/29/2014)

¶29H: On February 11, 2014, Ocwen's Litigation Desk acknowledged an active dispute while continuing collection activity on the same account, in violation of § 2605(k)(1)(D). (Entry #58)

¶29I: On March 3, 2014, Ocwen's Hazard Claims Department failed to provide requested insurance claim documents. This neglect violated § 2605(e)(1)(B) and reinforced concealment practices. (Entry #59)

¶29J: On March 26, 2014, Ocwen Credit Bureau falsely reported Plaintiff as deceased, violating § 2605(e)(3) and FCRA § 623. (Entry #60)

¶29K: On April 16, 2014, Ocwen issued conflicting payoff figures and concealed escrow misallocations, violating §§ 2605(k)(1)(C) and 2609. (Exhibit A, Entry #61)

¶29L: On April 29, 2014, Ocwen demanded duplicate estate documentation and delayed hazard claim processing, violating § 2605(e)(1)(B) and (e)(2). (Entry #62)

¶29M: On May 2, 2014, property inspections were repeatedly billed to Plaintiff's account without justification, violating §§ 2605(g) and 2609(d). (Entry #63)

¶29N: On May 14, 2014, Ocwen failed to respond to a modification inquiry, violating § 2605(e)(2) and (e)(3). (Entry #64)

¶29O: On June 23, 2014, Ocwen refused to release hazard insurance funds despite active litigation, violating § 2605(k)(1)(D). (Entry #65)

¶29P: On July 16, 2014, Ocwen acknowledged borrower death but failed to update ownership records, violating successor-in-interest notice rights under § 2605(e)(3). (Entry #66)

¶29Q: On August 18, 2014, Plaintiff submitted repair documentation as estate representative. Ocwen denied release of hazard insurance funds, violating § 2605(k)(1)(D). (Entry #67)

¶29R: On September 25, 2014, Ocwen issued a payoff quote inflating legal fees and omitting modification terms, violating § 2605(k)(1)(C) and § 2609(d). (Entry #68)

¶29S: On September 30, 2014, Ocwen uploaded a signed modification agreement into its internal platform but withheld it from Plaintiff, violating § 2605(e)(3). (Entry #69)

¶29T: On October 3, 2014, Ocwen issued an escrow quote featuring inflated shortages and undisclosed disbursements, violating § 2609(c)(2). (Entry #70)

¶29U: On October 6, 2014, Ocwen disbursed escrow funds without borrower consent or authorization, violating § 2609(d). (Exhibit A, Entry #71)

¶29V: On October 21, 2014, Ocwen repeated inflated escrow quote practices, omitting disclosed transactions, violating § 2609(c)(2). (Entry #72)

¶29W: On October 25, 2014, further inflation of deposits and shortages occurred, violating § 2609(c)(2). (Entry #73)

¶29X: On October 31, 2014, escrow was disbursed despite servicing hold codes, without notice, violating § 2609(d). (Entry #74)

¶29Y: On November 3, 2014, a second tax escrow disbursement occurred without borrower consent, repeating violations of § 2609(d). (Entry #75)

¶29Z: On November 7, 2014, Ocwen generated an internal "litigation letter" but never disclosed it to Plaintiff, violating § 2605(e)(3). (Entry #76)

¶29AA: On November 10, 2014, Ocwen issued another escrow quote with inflated deposits and misrepresented shortages, violating § 2609(c)(2). (Entry #77)

¶29AB: On November 13, 2014, escrow funds were disbursed without authorization, violating § 2609(d). (Entry #78)

¶29AC: That same day, Ocwen issued a payoff quote inflating fees and omitting prior payments, violating §§ 2605(k)(1)(C) and 2609(d). (Entry #79)

¶29AD: Also on November 13, Ocwen zeroed out the unpaid principal balance and reinstated the lien without notice, violating § 2605(e)(3). (Entry #80)

¶30: IndyMac's failure to respond to four documented QWRs and destruction of modification records reflect a sustained pattern of RESPA violations supporting statutory and actual damages.

¶30A: On January 13, 2014, Ocwen logged "No Action Taken" under Ms. Goodwin's credentials, demonstrating disregard for QWR and Notice of Error obligations. (Entry dated 1/13/2014)

¶30B: On January 21, 2014, agent Manchan Gupta entered "CL MANSIN" with no narrative, reflecting undocumented status changes in violation of 12 C.F.R. § 1024.38(c)(2). (Entry dated 1/21/2014)

¶30C: On January 22, 2014, agent Vishal Jethwa logged the creation and delivery of a "Relationship Manager Letter" that was never disclosed in RESPA responses or produced in litigation. (Entries at 9:10:53 PM and 10:01:57 PM)

¶30D: On January 23, 2014, system logs captured an IVR interaction referencing IBM platform authentication. No record of this communication was produced in RESPA document packages. (Entry dated 1/23/2014)

¶30E: On January 29, 2014, agent Toraskar again labeled Plaintiff—an authorized borrower—as "non-authorized," triggering servicing silence in violation of § 2605(e)(1)(B). (Entry dated 1/29/2014)

¶30F: On the same day, multiple identical "Appointment Scheduled" entries were logged at 11:20 AM CST, indicating metadata flooding or record tampering relevant to evidence manipulation under 18 U.S.C. § 1512(c). (Entry dated 1/29/2014).

¶30G: Based on agent naming conventions, timestamp localization, and known corporate filings, Plaintiff reasonably believes that Ocwen Loan Servicing delegated critical servicing operations—including borrower communications, internal notations, and Qualified Written Request (QWR) processing—to offshore agents in India between 2012 and 2017. Servicing agents named Mayuresh Sawant, Nicole Goodwin, Vishal Jethwa, Manchan Gupta, and Kadambari Toraskar appear repeatedly in metadata logs during periods of active suppression and statutory noncompliance. Plaintiff contends these agents, while offshore, acted as operational extensions of Ocwen's enterprise and engaged in conduct that

obstructed regulatory access, distorted loan modification eligibility, and suppressed federally protected rights. This offshore delegation concealed accountability, violated disclosure statutes under RESPA and TILA, and impeded due process. The use of international infrastructure to avoid domestic oversight supports Plaintiff's assertion that Ocwen, One West, and IndyMac operated as a closed-market cartel, restraining access to lawful servicing remedies and obstructing borrower recourse in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

¶30H: On March 10, 2014, Ocwen agent Amitabh Mishra logged "CSH PAFLAG" with a notation that the borrower's account—over 90 days delinquent—must be resolved only through full reinstatement, trial payment, or payoff. Mishra instructed that partial funds were not accepted. This coded denial of loss mitigation options during an active dispute violated RESPA's dual-tracking prohibitions and obstructed modification access. (Exhibit A, Entry dated 3/10/2014, User: MISHRA)

¶30I: On March 13, 2014, agent Mohammed Sabir performed a DMDC (Defense Manpower Data Center) military status search, verifying that Plaintiff was not on active duty. This entry was never disclosed in servicing responses and bears significance for SCRA compliance review. (Entry dated 3/13/2014, User: SABIR)

¶30J: On March 14, 2014, Ocwen collector Sarah Cundiff logged "CL NO ACTION," affirming that no action was taken on the Collection Screen despite borrower hardship and known dispute. This entry reflects deliberate servicing inaction. (Entry dated 3/14/2014, User: CUNDIFF)

¶30K: On April 12, 2014, agent Pallavi Gupta updated the credit bureau to reflect foreclosure status as of March 3, 2009, and payment delinquency exceeding nine months. Despite its relevance, this entry was excluded from mandated RESPA disclosures. (Entry dated 4/12/2014, User: GUPTA)

¶30L: On April 16, 2014, Ocwen agent Mohsin Khan entered multiple overlapping entries: (i) "CL NOACTION" logged twice (2:39 PM, 3:01 PM); (ii) three phone calls with Plaintiff noted as authorized third party (2:51 PM, 3:04 PM); (iii) payoff detail communicated in all three calls; (iv) borrower mood coded as "frustrated" with lack of servicing answers; and (v) an appointment scheduled at 3:10 PM. This volume of contradictory activity suggests both system manipulation and suppression of resolution. (Entries dated 4/16/2014, User: KHAN)

¶30M: On April 18, 2014, agent Cecilia Milagr Virey Ma repeated Khan's pattern: verified authorized status, gave payoff details, but logged post-call frustration notation. The entry sequence failed to advance dispute resolution. (Entries dated 4/18/2014, User: MA, VIREY)

¶30N: On April 18, 2014, servicing lead Dawna Steindorf logged exception code "EXPDEAD" with no supporting narrative. This internal deadline flag—used to designate time-barred modifications or litigation-sensitive loans—was never referenced in court-ordered production. (Entry dated 4/18/2014, User: STEINDORF)

¶30O: On May 13, 2014, Ocwen agent Satish D. Kumar coded "CL MANSH" without entry narrative. This undocumented status alteration violated 12 C.F.R. § 1024.38(c)(2), which requires that loan files clearly reflect servicing activity and borrower communication. (Exhibit A, Entry dated 5/13/2014)

¶30P: On May 14, 2014, agent Sairam M. Swamy placed multiple outbound calls marked "No Answer" and "No Intro Call Attempted." These calls were logged only 31 seconds apart and reflect superficial call activity intended to simulate borrower outreach. (Entries dated 5/14/2014, User: SWAMY)

¶30Q: That same evening, agent Amin M. Virani requested and logged delivery of a "Relationship Manager Letter" within eight minutes. No version of this letter was produced during RESPA responses or litigation discovery, reinforcing claims under 12 U.S.C. § 2605(e) and obstruction under 18 U.S.C. § 1512(c). (Entries dated 5/14/2014, User: VIRANI)

¶30R: On May 28, 2014, Ocwen's servicing platform generated an internal "Monthly Delinquent Account Notice." This notice was withheld from QWR responses and not included in court-ordered document disclosures. (Entry dated 5/28/2014, Event Code: CORA MADNRI)

¶30S: On June 1, 2014, agent Pallavi Gupta submitted a credit bureau update reflecting over 24 months of delinquency. The payment history omitted forbearance periods and dispute notations, undermining accounting transparency. (Entry dated 6/1/2014, User: GUPTA)

¶30T: On June 13, 2014, agent Keshava Gopal Reddy logged "BK INFO to be reviewed" in connection with a borrower file analysis. No review results were ever disclosed during bankruptcy litigation. (Entry dated 6/13/2014, User: GOPALREDDY)

¶30U: On June 28, 2014, the CORA system repeated the "Monthly Delinquent Account Notice" event, evidencing layered internal tracking inconsistent with borrower-facing records. (Entry dated 6/28/2014, Event Code: CORA MADNRI)

¶30V: On July 14, 2015, Ocwen submitted a payoff spreadsheet listing monthly interest charges of $133.78 from August 1, 2009, to September 1, 2011, on a static balance of $12,116.30 at a rate of 13.25%. Despite borrower disputes and servicing inquiries, the spreadsheet reflected no reduction in principal or recognition of payments. The uniformity of figures and fixed balance support claims of fabricated

accounting and violate record-keeping obligations under RESPA (12 U.S.C. § 2605(e)) and TILA (12 C.F.R. § 1026.36(c)). These entries support allegations of wire and mail fraud under 18 U.S.C. §§ 1341 and 1343. (Exhibit B, Doc. 70-1 at p. 8)

¶30W: On November 13, 2014, Ocwen collector Thomas Coneddy logged the following entry: "UPS picked up and loan sent to Loan Release department for final release as part of lineup project. Loan is in charged off status at this station and not tele checked." The charge-off designation was never disclosed to Plaintiff or acknowledged in document responses. Continued fee accumulation and foreclosure activity post-charge-off contradict earlier payoff statements and support enterprise manipulation claims. The "lineup project" reference evidence potential portfolio bundling tied to RICO coordination. (Exhibit B, Doc. 70-1 at p. 9)

¶30X: Despite the explicit charge-off log entry on November 13, 2014 (see ¶30W), Ocwen failed to clarify whether the release applied to the $60,000 primary lien or the $12,116.30 subordinate balance. The absence of lien position, balance designation, or account classification suggests intentional vagueness. Given the consistent appearance of the $12,116.30 balance in prior entries and payoff tables, Plaintiff reasonably believes the charge-off pertained to the subordinate lien. However, Ocwen continued to pursue foreclosure, interest accumulation, and payoff demands on both liens without disclosure. These acts support allegations of fraudulent inducement, dual-balance concealment, and predicate violations under 18 U.S.C. §§ 1341 and 1343, as well as servicing violations under 12 U.S.C. § 2605(e).

¶30Y: Plaintiff reasonably believes that the "charged off status" entry dated November 13, 2014 (see ¶30W) was strategically timed to coincide with the expiration of the federal government's six-year statute of limitations under 28 U.S.C. § 2415(a). That limitation applies to contract-based claims by the FDIC as receiver of failed institutions—including IndyMac and One West Bank—and would have expired between 2008 and 2014, depending on the original

appointment date. Plaintiff contends that Ocwen, having acquired servicing rights from FDIC-supervised entities, knew or should have known that enforcement of borrower liability post-2014 could be time-barred. Yet no such limitation was disclosed to the borrower, and no FDIC extinguishment or trust transfer documentation was ever produced. Recharacterizing time-barred obligations as collectible balances, continuing interest accrual, or withholding extinguishment records would constitute material omission and deceptive practice under 12 U.S.C. § 2605(e) and 15 U.S.C. § 1692e(2)(A), and support a RICO predicate act under 18 U.S.C. §§ 1341 and 1343. Plaintiff further alleges that the clustering of charge-offs, adjustments, and payoff recalibrations in late 2014 reflects enterprise-wide awareness of impending federal exposure under FIRREA.

¶30Z: On November 14, 2014, at 7:55:40 PM, Ocwen cashiering processor Panareri entered: "Cashiering Note: Loan is Charged off as we are releasing the lien – This comment was auto-generated in batch mode." The entry confirms charge-off and lien release processing during active litigation, yet no charge-off was disclosed to Plaintiff. Batch-mode automation of a critical servicing event—absent borrower notices or regulatory reporting—constitutes material concealment. This conduct violates 12 U.S.C. § 2605(e), 15 U.S.C. § 1692e, and supports predicate acts under 18 U.S.C. § 1343 and 18 U.S.C. § 1512(c).

¶30AA: Between November 17 and December 17, 2014, five entries were logged by Ocwen agents Ravindresingh Bulwantsingh, Joseph Rivera, Melissa Kelsey, and Anu Kurian. Litigation copies redacted all corresponding notes (Doc. 70-1 at p. 9), though adjacent logs confirm these entries occurred immediately after the auto-charge-off (¶30Z) and before final credit reporting. Plaintiff contends these redactions concealed balance extinguishment acknowledgments, borrower correspondence, and internal discovery flags. Suppression of this content supports obstruction under 18 U.S.C. § 1512(c) and substantiates the Antitrust theory that Ocwen buried defenses using offshore infrastructure ahead of statutory deadlines (see ¶30Y).

¶30AB: A credit bureau summary printed December 29, 2014, listed the account as "Paid Off," flagged "Status 13," with Last Paid Installment (LPI) of 08/10/2009, a charge-off amount of $20,993, and monthly payment of $139. The 24-month history appeared as a continuous string of "6"s (delinquency >150 days). Internal servicing notations from ¶30W–¶30AA demonstrate contradictory payoff demands and lien enforcement during this same period. Plaintiff asserts that this dual-track narrative—internal collection versus external credit reporting—constitutes false credit reporting under 15 U.S.C. § 1681s-2(a) and a RICO predicate act under 18 U.S.C. § 1341.

¶30AC: System logs from November–December 2014 (Doc. 70-1, p. 9) contains eight time-stamped entries with named Ocwen agents but omit action codes, narrative detail, and system event fields. Surrounding entries maintain full documentation, suggesting deliberate redaction. Plaintiff believes these omissions conceal evidence of lien release or trust-level restructuring. The absence violates Rule 26(a)(1), supports Rule 9(b) inferences of fraudulent concealment, and constitutes obstruction under 18 U.S.C. § 1512(c). Plaintiff reserves the right to seek spoliation sanctions and adverse inference.

¶30AE: On March 9, 2015, at 3:32:29 PM, Ocwen agent M. Norris entered: "FHL-HISTORY letter mailed." The system indicates the letter was filed that same day, yet it was not produced in RESPA or litigation responses. Plaintiff contends this selective withholding violated disclosure duties under 12 U.S.C. § 2605(e) and supports concealment under 18 U.S.C. § 1512(c).

¶30AF: On March 25, 2015, at 9:13:35 AM, Ocwen audit processor T. Mandsager entered: "LOAN AUDIT COMMENT – Prior application transaction history provided via email." No such audit history or email record was disclosed. The entry reflects selective narrative control and concealment, violating § 2605(k)(1)(C) and implicating wire fraud under 18 U.S.C. § 1343.

¶30AG: On October 8, 2013, Ocwen processor NLP logged a "Loan Disbursement" for "ML Borrower Return Balance" of $12,116.30 as a net system offset, with –$380.00 in "Other" charges. No billing or litigation records disclosed this transaction. Plaintiff alleges this entry reflects an early sweep or extinguishment on the subordinate lien, violating 12 C.F.R. § 1026.36(c) and 12 U.S.C. § 2605(e).

¶30AH: On November 13, 2014, Ocwen entered into the following transactions within minutes:

• EXP: Escrow Advance for $299.39

• EXP: Escrow Payment of $0.01

• EXP: Escrow Advance of $0.50

• PTF: Payoff of $0.00

• PTC: Payoff – Charge Off, assigning $11,116.30 principal and $8,816.85 escrow to "Charge Off," totaling $20,997.95

These entries align with the "lineup project" and lien release (see ¶30W), reflecting bulk trust or servicer restructuring. Micro-transactions (.01, .50) suggest internal code-triggered resets. Plaintiff alleges this batch behavior constitutes a concealed accounting schema in violation of §§ 2605(e), 2605(k)(1)(C), and a predicate act under 18 U.S.C. § 1343.

¶30AI: On October 4, 2013, at 11:59:01 PM, Ocwen logged two simultaneous "Loan Disbursement" transactions related to the FHA-insured property at 901 Seibles Rd, Montgomery, AL. Entries included a $68,909.22 reversal and $30,755.54 applied to escrow, followed by a $4,535.08 escrow adjustment. No borrower notices or litigation disclosure was made. Plaintiff asserts this reflects retroactive balance engineering to reposition the loan for trust remapping or foreclosure eligibility, violating § 2605(k)(1)(C) and supporting fraud under § 1343.

¶30AJ: On December 4, 2013, Ocwen applied a charge labeled "EDD Expense Waiver $5 Automated" reversing $1,535.42 from escrow without narrative justification. A $1.50 "Other" fee was logged, likely reflecting a transaction test. No waiver documentation was sent. Plaintiff contends this reflects phantom fee engineering and silent escrow manipulation, violating 12 C.F.R. § 1024.17(k) and supporting a RICO predicate under § 1341.

¶30AK: On March 5 and November 25, 2014, Ocwen posted two escrow disbursements—$1,070.00 marked "Insurance Escrow Dis" and $334.22 labeled "STD Tax Escrow Disbursement." No system notes, call logs, or disbursement proofs were produced. Plaintiff alleges these reflect synthetic ledger padding to inflate balances or justify foreclosure eligibility. This conduct violated §§ 2605(g) and 1692e(2)(A) and supports allegations of fraudulent ledger manipulation.

¶30AL: Plaintiff references Exhibit [TBD] (Doc. 70-1, p. 14 of 151), which contains at least seven redacted servicing entries identified as borrower communications. While date and agent columns remain visible, the "Comment" field is entirely withheld. These omissions occurred while Plaintiff's Qualified Written Request (QWR) dated February 17, 2015, was pending. Each entry represents a separate violation of 12 C.F.R. § 1024.36(d) and supports spoliation sanctions under Fed. R. Civ. P. 37(e).

¶30AM: Exhibit [TBD] (Doc. 70-1, p. 17 of 151) shows 18 duplicated "Non-Escrowed Payment Quote" entries with identical metadata dated January 4, 2013. Each entry lists a payment amount of $1,073.75 with no charges or recent payments. This repetition without variation suggests placeholder usage during trial modification periods and may support billing fabrication and opacity claims under 12 U.S.C. § 2605(e) and 15 U.S.C. § 1639a. These entries remain unexplained in prior RESPA or litigation disclosures, reinforcing Counts II, III, and XL.

¶30AN: Exhibit [TBD] (Doc. 70-1, p. 18 of 151) reveals three log entries from November 23 to December 3, 2013, containing internal routing references and

"Loan Excluded Not..." tags without explanation. These notes occurred within the litigation hold window but were never disclosed to Plaintiff. Their suppression supports claims of data laundering and servicing concealment under § 1024.36(d), Fed. R. Civ. P. 37(e), and RICO § 1962(d). Agents Dinah Sullivan and Dinah Holloway appear in metadata but performed no borrower-facing activity.

¶30AO: Exhibit [TBD] (Doc. 70-1, p. 19 of 151) includes a November 9, 2013, property inspection entry by "Background Processor," noting the home was occupied, in good condition, and free of code violations. This contradicts foreclosure counsel's claims of abandonment and was never disclosed during litigation. Its concealment violates 12 C.F.R. § 1024.36 and supports obstruction and RICO counts related to wrongful foreclosure.

¶30AP: A second inspection on December 19, 2013 (Exhibit [TBD], Doc. 70-1, p. 19 of 151), conducted by agent Shannon Lowe, confirmed occupancy, utility service, and lack of code violations. This record was suppressed during active RESPA and litigation inquiry. Its concealment supports Counts II, XXIV, XL, and XLII concerning DBNTC's fraudulent 1099-A issuance classifying the home as abandoned.

¶30AQ: Exhibit [TBD] (Doc. 70-1, p. 20 of 151) contains two redacted entries from December 19, 2013 (3:23:29 PM) by User ID 719314609NP. At least 22 data rows were withheld, including comment, action, and agent fields. These entries are proximate to suppressed inspections and QWR activity. Their concealment constitutes servicing abuse under § 1024.36(d), spoliation under Rule 37, and RICO predicate concealment under § 1962(d).

¶30AR: Exhibit [TBD] (Doc. 70-1, p. 21 of 151) includes a payoff request dated approximately April 1, 2014, addressed to Ocwen's Payoff & CSP Team ("OWEN-020"). At least four redactions conceal the requestor's identity, contact information, and payoff date. Plaintiff was never provided with this record, which is material to

the foreclosure timeline. Its concealment violates § 1024.36 and Rule 26 and supports constructive fraud allegations.

¶30AS: Exhibit [TBD] (Doc. 70-1, p. 22 of 151) confirms that Sylvia Fernandez, Kiran A. Desai, and Jeremy Klemens processed a December 23, 2013, payoff request using routing code "OWEN-021." At least four identity fields were redacted. The form's suppression violates § 1024.36(d), evidentiary rules under Rule 26, and supports enterprise concealment under RICO.

¶30AT: Exhibit [TBD] (Doc. 70-1, p. 24 of 151) includes a fully redacted entry by agent Sendgass,_Ashanti, timestamped 11:30:49 PM on December 26, 2013. Entry ID 3A024410387 lacks action, comment, or routing data. Its concealment—timed near suppressed payoff records—violates § 1024.36(d), Rule 37(e), and supports predicate liability under 18 U.S.C. § 1962(d).

¶30AU: Exhibit [TBD] (Doc. 70-1, p. 25 of 151), labeled "GENEVANL-024," is fully redacted across 50+ entry fields—timestamps, user IDs, comments, and actions. Filed by Defendants on July 14, 2015, this blackout adjacent to earlier redactions evidences systemic spoliation and supports RESPA, Rule 37(e), and RICO § 1962(c) and § 1519 violations.

***¶30AV: Exhibit [TBD] (Doc. 70-1, p. 27 of 151) is a fully redacted call log titled "OWEN-026," omitting over 50 lines. The only visible text—"Parent Query Processed / Enduring Approval Details…"—suggests backend routing linked to FDIC claim release or note custody. This concealment supports Count 44 and predicates under § 2605(e) and RICO.***

¶30AW: Exhibit [TBD] (Doc. 70-1, p. 28 of 151) contains timestamped log entries between December 26, 2013, and January 3, 2014, interspersed with 10 redacted lines. Agents Amir Khan and Payman Moosa are noted. Routing tags "PGCR" and

"DIROP" suggest payoff transitions. These suppressed entries coincide with federal extinguishment timelines and QWR activity.

¶30AX: Exhibit [TBD] (Doc. 70-1, p. 29 of 151) includes a redacted entry dated January 4, 2012, at 1:14:29 PM. Sixteen lines are suppressed; only "Remedy_Memo_3 – COBRA REPORT" and "PCR Rush Request – Payoff Quote" are visible. This escalation, with case-tag "3:12-cv-00604," was never disclosed and supports claims of litigation-stage concealment and servicing risk assessment manipulation.

¶30AY: Exhibit [TBD] (Doc. 70-1, p. 30 of 151) includes 16 redacted entries surrounding a visible payoff entry labeled "PAYOFF NOTE." Agents Ronda Jumankkar and Meeta J. Ramsey appear tied to routing tags "PG002" and "SVC-Update." Suppression of adjacent servicing actions during open litigation supports Plaintiff's claims of payoff concealment and QWR response violations.

¶30AZ: Exhibit [TBD] (Doc. 70-1, p. 31 of 151*) reflects more than fifty redacted servicing log entries, retaining only the phrases "PAYOFF NOTE" and "the PERSONNEL INFO IS PREVIOUSLY APPROVED*." The record appears contemporaneous with Remedy Memo entries discussed in ¶30AX and likely involves payoff, account authorization, or note extinguishment deliberations. The scale of suppression and personnel restriction notation supports Plaintiff's allegation that critical servicing communications were concealed during active litigation. ***This redaction event affirms enterprise-level spoliation tied to federally governed debt timelines under 28 U.S.C. § 2415(a).***

¶30BA: Exhibit [TBD] (Doc. 70-1, p. 32 of 151), labeled "@OWEN-0341," is fully redacted across fifty-plus servicing log entries. The only remaining data includes a footer reading "Bank Permit Query – General and Pending Approval" and a timestamp: January 11, 2014, 11:06:45 AM – Hanson America – CH BRAY. The record likely reflects note custody or enforcement clearance processes occurring just after redacted payoff activity cited in ¶30AX–AY. Plaintiff asserts

this suppression pattern aligns with Counts 2, 24, 40, and 44 and supports a RICO predicate act of concealment.

¶30BB: Exhibit [TBD] (Doc. 70-1, p. 33 of 151) includes eight redacted entries positioned above a visible note: "Rush Payoff Quote Approved. Please see details below," timestamped January 13, 2014, at 8:09:14 AM. Internal routing tags such as "Mobile Lockdown-a EF RFAFS" and record 71282180387 indicate access lockdown procedures triggered by borrower dispute. The suppression of borrower-facing payoff details supports claims under Counts 2, 24, 40, and 44 for concealment of federally governed servicing records.

¶30BC: Exhibit [TBD] (Doc. 70-1, p. 34 of 151) logs a property inspection dated January 16, 2014, confirming occupancy, active utilities, and the presence of a for sale sign. The associated "Broker/Agent Name" field was redacted. Plaintiff asserts this omission concealed the identity of a sales agent acting during contested litigation, violating Rule 26 disclosure obligations, and supporting enterprise coordination claims.

¶30BD: Exhibit [TBD] (Doc. 70-1, p. 35 of 151) logs an auto-generated entry labeled "New Account Payment Quote" processed by Timash Anderson on January 17, 2014, at 11:04 PM. The system credited $85.00 to the legacy balance without borrower authorization. Plaintiff asserts this simulated ledger activity occurred during live litigation and was suppressed to bolster Defendants' litigation posture, violating Counts 2, 24, 31, 40, 42, and 44.

¶30BE: Exhibit [TBD] (Doc. 70-1, p. 36 of 151) reflects a trial plan created January 17, 2014, at 11:09:17 PM by processor Elizabeth Anderson. It established a three-month payment schedule of $1,000.00 per month with zero interest. A redacted routing entry preceded the quote. ***Plaintiff contends this entry represents concealed servicing activity generated without borrower consent and supports fraud claims under Counts 2, 24.***

¶30BF: Exhibit [TBD] (Doc. 70-1, p. 37 of 151), labeled "OCWEN-036," shows suppressed servicing actions following a borrower dispute about claim mismatches. "NOACTION" tags appear repeatedly after transfers to processors Thanasraj and anonymous background agents. Plaintiff alleges this log reflects intentional suppression of dispute resolution records, supporting concealment and refusal to acknowledge borrower status.

¶30BG: Exhibit [TBD] (Doc. 70-1, p. 38 of 151) logs a hazard loss claim labeled "HARARD LOSS CLAIM COMPENSY" received and closed within six minutes on January 31, 2014, by agent Keiley Mann. The record lacks substantive notes or borrower contact. Plaintiff asserts this sham processing violated due diligence duties and evidence suppression of liability exposure under Counts 2, 24, 31, 40, 42, and 44.

¶30BH: Exhibit [TBD] (Doc. 70-1, p. 38 of 151) mirrors ¶30BG and logs a three-stage loss claim cycle processed in under six minutes by Keiley Mann, with no resolution and only an "email to specialist." Plaintiff asserts this procedure reflects false diligence and supports concealment-based predicate liability under RICO.

¶30BI: Exhibit [TBD] (Doc. 70-1, p. 40 of 151) contains a batch-generated entry dated February 9, 2014, at 10:19:49 PM logged by processor Daniel A. Schoolfield under system tag "E9 NEF9." The record sets a payment of $2,291.36 including a flagged "Energy Payment" of $116.68. Plaintiff contends this ledger activity represents fabricated payoff continuity outside borrower control, supporting concealment under Count 44.

¶30BJ: Exhibit [TBD] (Doc. 70-1, p. 42 of 151) includes a post-remand inspection on February 4, 2014, confirming occupancy and good condition. Despite this, the servicer logged five consecutive "No Action Taken on Collection Screen" entries. Plaintiff asserts this entry reflects enterprise neglect and procedural inertia,

servicer logged five consecutive "No Action Taken on Collection Screen" entries. Plaintiff asserts this entry reflects enterprise neglect and procedural inertia, supporting suppression claims under Counts 2, 24, 31, 37, and 44. The report also erroneously states "gas service" was active, despite the home being fully electric, reinforcing allegations of fabricated occupancy records.

¶30BK: Exhibit [TBD] (Doc. 70-1, p. 43 of 151) logs a hazard loss claim initiated February 2014, tagged "HEARD LOSS CLAIM CONSENT." Entries by processors Babu, Wade, Jadhav, and Kenyon reflect "No Action Taken" codes and eventual referral to litigation with no borrower interaction. Plaintiff alleges this pattern evidence procedural suppression designed to simulate review activity while withholding loss resolution.

¶30BL: Exhibit [TBD] (Doc. 70-1, p. 44 of 151) logs a trial-period quote of $391/month composed entirely of "hazard disbursements," created on February 24, 2014, by processors Daniel Robertford and Cameron Morgan. The entry includes repeated comments stating, "Forwarded to assigned counsel," suggesting synthetic ledger routing. Plaintiff asserts this trial quote constitutes a fabricated instrument used to simulate servicing activity post-extinguishment.

¶30BM: Exhibit [TBD] (Doc. 70-1, p. 45 of 151) documents internal trial plan entries dated February 24–25, 2014 reflecting a $1,000.00 monthly quote repeated across sixty entries by various processors. No borrower authorization or contractual basis is established. Plaintiff alleges these simulated payments constructed retroactive performance failure to justify asset conversion, supporting enterprise manipulation claims under multiple Counts.

¶30BN: Exhibit [TBD] (Doc. 70-1, p. 46 of 151) logs a hazard snap package entry recorded by processor Tammy Carpenter on March 3, 2014, noting a "broken seal" without investigation or resolution. The log then repeats "Package was sent to the address on the package" over sixty times. Plaintiff alleges this repetition served as filler to mask lost or omitted servicing activity tied to hazard loss claims. This

record supports enterprise concealment, bad faith ledger masking, and material omissions.

¶30BO: Exhibit [TBD] (Doc. 70-1, p. 47 of 151) logs a March 18, 2014, sequence titled "Hazard Loss Claim Consent," involving processors Prashanth Ambu and Keyonda Newton. Entries repeatedly state that "RS attempted to contact" regarding consent but contain no resolution or follow-up. Plaintiff alleges this simulated diligence extended procedural uncertainty while suppressing actual remediation.

¶30BP: Exhibit [TBD] (Doc. 70-1, p. 48 of 151) reflects a March 24, 2014, inspection confirming occupancy, good condition, and functioning utilities. Despite verified status and no reported violations, the servicer falsely recorded "Gas On"—the property was and remains electric-only—and logged "No Action Taken on Collection Screen." Plaintiff alleges this reflects deliberate servicing inertia designed to suppress resolution and simulate default posture.

¶30BQ: Exhibit [TBD] (Doc. 70-1, p. 49 of 151) documents over sixty identical $99.00 payment entries, each marked "Payment Count: 1," attributed to processor Daniel A. Meadows. Plaintiff alleges these entries fabricated performance continuity without borrower engagement, disbursement documentation, or contractual basis. Supports ledger falsification claims.

¶30BR: Exhibit [TBD] (Doc. 70-1, p. 50 of 151) contains a batch-generated payment quote dated March 18, 2014, in the amount of $921.65, flagged as valid for 30 months and created without borrower authorization. A "special handling" note required receipt within five days or rejection. Plaintiff asserts this reflects coercive trial plan simulation to justify claims of borrower default.

¶30BS: Exhibit [TBD] (Doc. 70-1, p. 50 of 151) logs a second internally generated quote for $921.65 on March 18, 2014, by processor Daniel A. Woodford, labeled

"Auto generated in batch mode." Follow-up logs show payoff demands and five-day deadlines without borrower engagement. Plaintiff alleges this supports systemic ledger manipulation and unrepresented payoffs.

¶30BT: Exhibit [TBD] (Doc. 70-1, p. 51 of 151) shows a $1,000 escrow payment quote over 12 months, effective March 21, 2014, entered by processor Daniel A. Smet good under EF 158039. The quote lists no hazard, tax, or insurance disbursements. Plaintiff alleges this construction simulated borrower liability for unearned obligations. Supports concealment claims.

¶30BU: Exhibit [TBD] (Doc. 70-1, p. 53 of 151) includes batch-generated payments dated March 26, 2014, reflecting a phantom $1,782.34 transaction labeled "Payment Autopatch," without borrower activity. Adjacent entries include desk check processing and "DISPUTE RESOLVED/COMPLETED" tags. Plaintiff alleges this simulated loan rehabilitation and erased borrower dispute records. Supports constructive fraud and civil rights violations.

¶30BV: At the time of March 26, 2014, entries (see ¶30BU), Defendants acted as third-party contractors with no lawful ownership interest. The loan resided within an FDIC receivership portfolio subject to extinguishment under 28 U.S.C. § 2415(a). Plaintiff asserts Defendants knew or should have known of asset extinguishment yet concealed this status and retroactively constructed performance through batch coding and redacted records (see ¶30BM, ¶30BQ, ¶30BU, ¶30BV). Plaintiff further contends this conduct obstructed FIRREA enforcement rights under 12 U.S.C. §§ 1821–1833a and violated RESPA and 42 U.S.C. § 1981.

¶30BW: Exhibit [TBD] (Doc. 70-1, p. 53 of 151) logs a March 26, 2014, entry by processor Peasantmoth. abau indicating general correspondence processing, followed by one redacted line and two "No Action Taken on Collection Screen" annotations. Plaintiff asserts this suppression likely concealed extinguishment

verification requests and constitutes procedural deprivation in violation of § 2605, Rule 26, and § 1981.

¶30BY: Concealment of Mortgage Life Insurance Payoff Eligibility Post-Mortem

Plaintiff asserts that following co-borrower Priscilla's passing in 2010, servicers including One West Bank, Ocwen, and PPH Mortgage had fiduciary obligations to identify any embedded Mortgage Protection Insurance (MPI), Credit Life Insurance, or hazard-linked death benefits. These obligations arose from the subprime structure of the loan and the fee profile suggestive of bundled coverage. No records indicate that Defendants investigated, submitted, or disclosed any benefit. Instead, Defendants initiated automated foreclosure quoting (see ¶30BX), tagged Plaintiff's deceased status in credit reporting, and issued new quotes without resolving insurance payout eligibility. Plaintiff alleges either wrongful retention of benefits or negligent failure to investigate coverage, both constituting concealment, unjust enrichment, RESPA violations, and racial exclusion under § 1981. The suppression denied Plaintiff property redemption and contract enforcement rights protected by federal law.

¶30BZ: On or about July 11, 2025, Plaintiff physically reclaimed possession of the subject property at 901 Seibles Road, Montgomery, Alabama, pursuant to a voided judgment under appeal in the Alabama Civil Court of Appeals. Agents affiliated with Altisource—a contractor of Defendant DBNTC—requested a five-day delay to remove metal boarding and stalls, during which DBNTC allegedly attempted to sell the property to an international buyer from India. On the fifth day, Plaintiff observed the arrival of a truck carrying two individuals identified as Indian nationals, reportedly assigned to install perimeter fencing and erect "No Trespassing" signage. Plaintiff successfully barred access to the property, asserting legal possession and informing both individuals that no valid ejection existed. Plaintiff contends that the attempted fencing and signage—executed during appellate proceedings—constitutes unlawful reclassification of the property as transferred, in violation of federal due process protections. The incident reflects coordination between servicing agents, asset disposition firms, and foreign purchasers to conceal the active litigation status.

¶30CA: Exhibit [TBD] (Doc. 70-1, p. 57 of 151) logs a Non-Escrowed Payment Quote dated April 22, 2014, processed by Daniel A. Roehford via background tag COBRA MADNRI. The record shows zero trial payments, no modification pathway, and concludes with "Monthly Delinquency Acceptance Notice." Plaintiff asserts that this entry demonstrates targeted exclusion from payment participation, suppression of insurance offset investigation, and fabrication of delinquency posture. Supports violations of RESPA § 2605, FDCPA, and 42 U.S.C. § 1981; reinforces Counts.

¶30CB: Exhibit [TBD] (Doc. 70-1, p. 58 of 151) contains a Hazard Suspense Balance review dated April 29, 2014, logged by processor Brittany McDaniel-1. The phrase "borrower callback engagement at 4:30 PM CST" is repeated more than fifty times consecutively, obscuring procedural activity and suppressing true hazard suspense actions. Plaintiff asserts this repetition constitutes audit trail flooding, concealment of modification engagement, and denial of servicing access.

¶30CC: Exhibit [TBD] (Doc. 70-1, p. 59 of 151) documents a hazard loss claim processed by B. McDaniel and B. Thomas, contingent on death documentation including certificate, administration records, and executor status. Although a follow-up window was scheduled and a letter mailed to Plaintiff, no documentation receipt is confirmed. The claim is marked "Complete" twice without payout or closure audit. Plaintiff asserts this procedural abandonment suppressed hazard benefit eligibility. Supports RESPA violations, unjust enrichment claims, and 42 U.S.C. § 1981.

¶30CD: Exhibit [TBD] (Doc. 70-1, p. 59 of 151) logs a hazard claim follow-up in which processors B. McDaniel and B. Thomas recorded voicemail outreach to phone number (434) 284-9490—a number not affiliated with Plaintiff or his account. Plaintiff has consistently used mobile number (334) 294-9910 for over thirty years. No contact attempt or alert was received. Plaintiff contends this false

record was engineered to simulate borrower outreach and compliance, obstructing legitimate resolution of hazard claims and MPI benefit eligibility. Supports Counts 24, 31, 37, and 44 under due process and RICO concealment theories.

¶30CE: Exhibit [TBD] (Doc. 70-1, p. 60 of 151) contains a fully redacted entry spanning 40 lines, attributed to processor Ananias Farhat, with timestamps from July 28, 2010, to May 8, 2014. The entry, labeled OCWEN-059, reveals only the date and name. Plaintiff asserts that this redaction conceals critical servicing activity related to hazard claim resolution, MPI denial, or foreclosure setup across a four-year litigation window. Supports Rule 26 violations, due process injury, and RICO structuring.

¶30CF: Exhibit [TBD] (Doc. 70-1, p. 61 of 151) reflects a trial disbursement quote dated May 12, 2014, under system code NEF03, logged as "Denied: An Accepted 85." Although the system reflects a $391 merchant disbursement, no borrower payments were recorded and all tax and fee fields were zeroed. Plaintiff asserts this phantom disbursement scenario advanced internal benefits while denying borrower participation. Supports RESPA violations, unjust enrichment, and servicing fraud.

¶30CG: Exhibit [TBD] (Doc. 70-1, p. 62 of 151) logs a background property inspection dated May 6, 2014, under ID 7142180387, confirming occupancy, good condition, absence of violations, and no recommended maintenance. Despite these findings, the inspection was tagged DISREC and treated as an asset transfer or acceleration trigger. Plaintiff asserts this entry contradicts abandonment claims and reflects intent to suppress occupancy in favor of forced disposition.

¶30CH: Exhibit [TBD] (Doc. 70-1, p. 62 of 151) logs a second exterior inspection dated May 8, 2014, processed under ID 71492180387 and inspection code LS DIARC. The inspection confirmed occupancy, good condition, and absence of violations. The presence of a for-sale sign and placeholder broker information

suggests intent to listing the property during confirmed occupancy. Plaintiff asserts this evidence is a coordinated asset disposition attempt under false pretenses.

¶30CI: Exhibit [TBD] (Doc. 70-1, p. 63 of 151) reflects a trial payment quote dated May 8, 2014, auto generated by Daniel A. Rockford under batch flag NP NEF9. The record shows an accepted amount of $312.43, without borrower involvement, and includes a suspense allocation of $90. Subsequent entries show silent denial of a loss claim by processor Robert Smith, marked "Closed due to duplicate claim." Plaintiff asserts that this entry demonstrates quote manipulation, false acceptance notation, and suppression of hazard claim legitimacy.

¶30CJ: Exhibit [TBD] (Doc. 70-1, p. 64 of 151) contains 10 consecutive redacted entries dated May 8–14, 2014, involving processors Fahimah and Ahmed, tagged with CFORP and LSSIRW codes. Visible metadata references a FOIA disclosure request, inmate file order, and loan setup findings based on verification and custodial review. All entries linked to the 3D platform are fully suppressed. Plaintiff asserts that these redactions conceal material servicing determinations tied to MPI eligibility, hazard claim suppression, and foreclosure automation. The omissions obstruct discovery under Fed. R. Civ. P. 26 and support RICO predicate concealment.

¶30CK: Exhibit [TBD] (Doc. 70-1, p. 65 of 151) reflects loan setup verification activity dated May 19, 2004, confirming Plaintiff Clayton Thomason as the certified borrower. Processors Kiran Gholap and Mahesh Vemula completed origination validation under CS CERT, LS DIROQ, and SU codes. Notes confirm servicing authorization and assign door knocks. Plaintiff asserts this record substantiates lawful origination and undermines later allegations of abandonment or unauthorized possession.

¶30CL: Exhibit [TBD] (Doc. 70-1, p. 66 of 151) logs an accepted trial payment of $65.00 on May 17, 2014, for borrower Jones Rogers. During this same period,

Plaintiff's trial quotes were denied, erased, or fabricated. Plaintiff asserts this contrast reflects racial exclusion under 42 U.S.C. § 1981 and systemic ledger confusion. Supports Counts 31, 37, and 44.

Plaintiff's RESPA audit confirms third-party entries inserted during suppression of Plaintiff's contractual participation. These entries support exclusion and concealment under Count 44.

¶30CM: Exhibit [TBD] (Doc. 70-1, p. 67 of 151) includes a four-day record sequence under Entry ID 713216038AP, wherein a $1,000 trial quote is issued via batch mode, door knock receipts close workflows, and a delinquency notice is inserted while loan verification remains active. Plaintiff alleges this sequence demonstrates manufactured closure and suppression of eligibility. Supports Counts 2, 24, 31, 37, and 44.

¶30CN: Exhibit [TBD] (Doc. 70-1, p. 68 of 151) contains a fully redacted 24-line entry, labeled OCWEN: 867, timestamped May 22, 2014, and attributed to processor Ansari Farhat. Plaintiff asserts that the redaction conceals hazard claim reversals, MPI suppression, or override of borrower trial access. Supports Counts 24, 31, 37, and 44 under Rule 26 concealment and RICO structuring.

¶30CO: Exhibit [TBD] (Doc. 70-1, p. 69 of 151) includes three redacted entries dated May 23, 2014, under Entry ID 7432140387, referencing hazard suppression balance review and estate paperwork execution. Processors Weather Collins, Kiran Kumar, and Melissa Finley are listed. Plaintiff asserts that no lawful probate estate existed for Priscilla Thomason—title passed outside probate under Ala. Code §§ 43-8-41, 43-8-110. Servicer use of fabricated estate status misrepresented the legal posture, enabling asset disposition and trust placement under false pretenses. Supports Counts 24, 31, 37, and 44.

***Supporting Footnote:***

Under Alabama law, when a decedent person is survived by a spouse and children, real property passes automatically without probate unless exceptional conditions apply. See Ala. Code § 43-8-41 and § 43-8-110. No estate was created for Priscilla Thomason, rendering references to estate execution legally false and inadmissible. These entries support fraud allegations under Counts 24, 31, and 44.

¶30CP: Exhibit [TBD] (Doc. 70-1, p. 69 of 151) contains two redacted entries dated May 23, 2014, by processor Kiran Kumar, noting hazard suppression balance review, estate execution, and issuance of a $4,250.00 hazard check dated June 3, 2014. Plaintiff received the hazard check, yet servicing records omit Plaintiff's name and instead reference estate execution. Given the absence of a lawful estate, this omission reflects borrower identity suppression. Supports 42 U.S.C. § 1981 and RICO structuring under Counts 24, 31, 37, and 44.

¶30CQ Exhibit [TBD] (Doc. 70-1, pg. 71 of 151) contains 20 consecutive redacted lines dated June 29, 2014, processed under Case ID 792146897 by Nancy Anita Folkes. The entry occurs within the same window as a known hazard claim disbursement (see ¶30CP), yet omits borrower identity, servicing action, and ledger context. Plaintiff asserts that this redaction conceals critical disbursement mechanics and borrower recognition, supporting claims under Counts 24, 31, 37, and 44 for concealment, suppression, and enterprise structuring.

¶30CR Exhibit [TBD] (Doc. 70-1, pg. 72 of 151) documents a trial program ledger processed by Daniel A. Rodriguez referencing a 3-month trial period dated June 19, 2014. The entry reflects zero values for payment, adjustment, credit, tax payment, or delinquency resolution. Plaintiff asserts that this entry was crafted to simulate procedural transparency while excluding Plaintiff from actual trial engagement. This conduct supports claims under Counts 24, 31, 37, and 44 for concealment, denial of contractual rights, and racketeering structure.

¶30CS Exhibit [TBD] (Doc. 70-1, pg. 73 of 151) records a New-Received Payment Quote generated on June 29, 2014, by Daniel A. Rodberg. The quote reflects $117.00 across ambiguous categories—Stockholder Payment, Dividends, Tax Fee—and includes a batch automation notice confirming no servicer engagement.

Plaintiff asserts that this entry was created to simulate program interaction absent any real borrower inclusion, supporting claims under Counts 24, 31, 37, and 44 for procedural fabrication, exclusion, and RICO structuring.

¶30CT Exhibit [TBD] (Doc. 70-1, pg. 74 of 151) documents duplicated entries by processor Heather Collins on July 23, 2014, referencing Hazard Stage Balance Review and a 5-year CFPB resolution timeline. No borrower engagement or hazard relief is recorded, and the follow-up entry by a background processor logs a monthly delinquency notice. Plaintiff asserts that this ledger sequence simulates procedural compliance while deepening suppression posture, supporting Counts 24, 31, 37, and 44 for concealment, enterprise structuring, and denial of equitable servicing.

¶30CU Exhibit [TBD] (Doc. 70-1, pg. 75 of 151) contains a redacted entry dated July 27, 2014, by processor C. Dixon, referencing Hazard Recap and Reinstatement Packet Review. Four ledger lines are partially redacted, concealing hazard disbursement references and reinstatement calculations. Plaintiff asserts that the redaction hides accurate crediting of a roof claim payment previously logged (see ¶30CP), constituting suppression of borrower rights and asset misrepresentation. This supports Counts 24, 31, and 44.

¶30CV Exhibit [TBD] (Doc. 70-1, pg. 76 of 151) records a reinstatement ledger entry dated July 28, 2014, tagged to a background processor, and flagged as "Do Not Finalize." The entry repeats hazard ledger review language from the prior day (see ¶30CU) but includes no borrower engagement or calculation result. Plaintiff asserts that this repetition simulates procedural activity while denying reinstatement access, supporting Counts 24, 31, 37, and 44 for concealment, suppression, and enterprise structuring.

¶30CW Exhibit [TBD] (Doc. 70-1, pg. 77 of 151) logs a multi-row disbursement stack processed under Entry ID 71221400397 during the "March Trial Period" by Jackson Canteen and a background processor. Over twenty rows reflect identical Store Disbursement entries of $10.00, with no borrower ID or authorization noted. Plaintiff asserts that this entry simulates trial engagement through ledger automation and omits all records of Plaintiff's certified borrower status or claim disbursement linkage. This conduct supports Counts 24, 31, 37, and 44 for concealment, exclusion, and enterprise structuring.

¶30CX Exhibit [TBD] (Doc. 70-1, pg. 78 of 151) contains an entry dated August 28, 2014, under Entry ID 91212180397 processed by Centene Corp System. The record logs over 240 identical disbursement rows with no borrower ID, financial amounts, or ledger actions noted. Plaintiff asserts that this entry was created to simulate program participation through automation, masking the absence of actual servicing engagement. This conduct supports Counts 24, 31, 37, and 44 for concealment, exclusion, and racketeering structure.

¶30CY Exhibit [TBD] (Doc. 70-1, pg. 79 of 151) reflects a $1,000 payment entry processed on September 4, 2014, by the NEPO system and labeled OWEN-078. The ledger repeats identical payment amounts without borrower identification, servicing annotation, or disbursement record, and includes a batch-generation flag. Plaintiff asserts that this entry simulates trial participation absent borrower engagement, supporting Counts 24, 31, 37, and 44 for concealment, servicing fraud, and enterprise structuring. plaintiff asserts that no payments were made beyond October 2010 yet servicing records between 2011 and 2014 reflect disbursement stacks, trial payment entries, and estate executions involving fabricated monetary activity. These ledger entries simulate borrower engagement where none occurred, constituting constructive fraud and procedural suppression, supporting claims under Counts 24, 31, 37, and 44.

¶30CZ Exhibit [TBD] (Doc. 70-1, pg. 80 of 151) contains 20 consecutive redacted lines dated August 12, 2004, processed under Entry ID 792140387 by Romeo Thomas-Ashmar. The entry includes dual timestamps and no visible borrower or servicing data. Plaintiff asserts that this blackout conceals critical servicing actions related to hazard claim override, trial quote reversal, or reinstatement denial, and reflects intentional suppression of borrower identity and procedural records. This conduct supports Counts 24, 31, 37, and 44.

30 DA Exhibit [TBD] (Doc. 70-1, pg. 81 of 151) documents a hazard insurance ledger entry dated August 18, 2014, under Entry ID 713921603987 and processed by Background Processor ES H8355FP. Over 60 lines repeat the phrase "I asked that he call him back," without variation, borrower identity, or servicing progress. Plaintiff asserts that this entry reflects procedural inflation and ledger simulation, crafted to mask inactivity and suppress hazard claim reconciliation during a critical

period. This conduct supports Counts 24, 31, 37, and 44 for concealment, exclusion, and racketeering structure.

30 DB Exhibit [TBD] (Doc. 70-1, pg. 82 of 151) records an entry dated September 21, 2014, under Entry ID 71291:60347P and processed by Kenneth Ray Jackson. The entry contains nearly 100 identical lines stating "Efficiency Code: 3.00" without financial annotation, borrower identification, or servicing detail. Plaintiff asserts that this repetition simulates procedural productivity and masks the absence of borrower engagement, supporting Counts 24, 31, 37, and 44 for concealment, record inflation, and racketeering structure.

30 DC Exhibit [TBD] (Doc. 70-1, pg. 83 of 151) documents servicing entries processed by Centoney Buxton and Hannon Margaret on August 22 and September 26, 2014, respectively. The first logs a $1,000.00 payment under NF09 with a batch-generation flag, and the second provides hazard loss commentary ending in the award designation "Buxton." Plaintiff asserts that these entries simulate borrower engagement while redirecting claim benefits without financial annotation or identity recognition. These records support Counts 24, 31, 37, and 44 for procedural concealment, exclusion, and racketeering structure.

30 DD Exhibit [TBD] (Doc. 70-1, pg. 84 of 151) contains an entry dated October 3, 2014, processed under Entry ID 792145839B by Spencer Thomas. Over twenty rows repeat "Payment Recorded" entries with identical processor and timestamp, lacking amounts, borrower identification, or servicing logic. Plaintiff asserts that this entry was used to simulate procedural engagement absent real financial or borrower activity, supporting Counts 24, 31, 37, and 44 for concealment, exclusion, and racketeering structure.

30 DE Exhibit [TBD] (Doc. 70-1, pg. 85 of 151) documents a trial ledger closure entry dated October 4, 2014, under Entry ID 71549367293871, processed by M. Duval. The entry records a final ledger update and closure of the trial period, without financial annotation, borrower notice, or servicing comment. Plaintiff asserts that this silent closure reflects denial of participation and remedy, supporting Counts 24, 31, 37, and 44 for concealment, procedural suppression, and racketeering structure.

30 DF Exhibit [TBD] (Doc. 70-1, pg. 85 of 151) contains two identical auto-generated payment quotes dated March 16, 2014, reflecting a total delinquency amount of $1,117.94 and marked with a batch automation notice. The entries contain no borrower identification, servicing logic, or resolution pathway. Plaintiff asserts that these quotes simulate program participation absent borrower engagement, and support Counts 24, 31, 37, and 44 for procedural concealment, exclusion, and racketeering structure.

30 DG Exhibit [TBD] (Doc. 70-1, pg. 86 of 151) reflects multiple ledger actions under Entry ID 731241630347 between September 13–16, 2014. These entries document a $1,000.00 payment labeled "Accepted," alongside process reversal notations such as "Backed Out," "Withdrawn," and "Late." No borrower identification is recorded. Plaintiff asserts that this entry simulates procedural engagement without actual servicing or borrower consent, supporting Counts 24, 31, 37, and 44 for concealment, exclusion, and racketeering structure.

30 DH Exhibit [TBD] (Doc. 70-1, pg. 87 of 151) documents an entry dated September 12, 2014, under Entry ID 1:12:12:60337 with contact label amy@wix.com and system codes RF/N8793. The entry presents a $100.00 payment disbursement but is followed by over 60 lines of repeated settlement metadata, lacking borrower identification, financial resolution, or servicer attribution. Plaintiff asserts that this entry simulates procedural compliance without valid ledger engagement and supports Counts 24, 31, 37, and 44 for concealment, exclusion, and racketeering structure.

30 DI Exhibit [TBD] (Doc. 70-1, pg. 88 of 151) documents a record labeled "New-Record-Payment-Quota-Map-3a-Month-Period" dated September 12, 2014, under Entry ID 7312140397 and processed by Centebary Jackson. The entry reflects repeated Quota value "89" with tag XHF09, lacks borrower identification, and includes no financial annotation. Plaintiff asserts that this entry simulates procedural volume for regulatory optics absent servicing engagement, supporting Counts 24, 31, 37, and 44 for concealment, suppression, and enterprise structuring.

30 DJ Exhibit [TBD] (Doc. 70-1, pg. 89 of 151) records a dual-processor quote entry dated July 22, 2014, by Anthony Dixon and James Lee. The ledger reflects a $150.00 payment quote and $0.81 disbursement, flagged as auto generated in batch mode. No borrower ID or servicing action accompanies the quote, and processor

duplication creates an accountability haze. Plaintiff asserts that this entry simulates trial engagement absent real servicing, supporting concealment, suppression, and racketeering structure.

30 DK Exhibit [TBD] (Doc. 70-1, pg. 90 of 151) contains a manual modification quote processed by James Lee, documenting a "Straight Discount with Fixed Interest Rate" structure resulting in a 30-year term with $698.46 monthly payments. The entry includes no borrower identity, servicing annotations, or supporting escrow math. Repetition of the "$153,451.00 to be received" line more than twenty times reflects deliberate volume inflation. Plaintiff asserts that this entry simulates modification eligibility without real engagement, supporting for concealment, procedural suppression, and racketeering structure.

30 DL Exhibit [TBD] (Doc. 70-1, pg. 93 of 151) documents a settlement ledger record with $0.00 listed for both Settlement Amount 1 and 2, no requestor name or company attribution, and a blank user comments block. Plaintiff asserts that this entry was inserted as a structural placeholder during servicing review to simulate procedural compliance while denying borrower relief or engagement. This conduct supports concealment, exclusion, and racketeering structure. Plaintiff notes that Exhibit [TBD] (Doc. 70-1, pg. 93 of 151) contains one redacted ledger line among otherwise blank settlement fields. This intentional concealment suggests purposeful suppression of requestor identity, hazard attribution, or servicing decision-making. Plaintiff asserts that this redaction supports claims for concealment, obstruction, and racketeering structure.

30 DM Exhibit [TBD] (Doc. 70-1, pg. 94 of 151) contains 16 redacted ledger entries spanning September 22–23, 2014, processed by James Lee, Anisha Bakshi, and Serafina C. Michael. The visible portion rejects a Shared Appreciation Modification due to alleged negative NPV and assesses a fee for application processing. Plaintiff asserts that this entry conceals eligibility criteria, servicing logic, and procedural transparency, supporting Counts for concealment, exclusion, and racketeering structure. Plaintiff notes that Exhibit [TBD] (Doc. 70-1, pg. 94 of 151) contains 16 redacted ledger lines surrounding a Shared Appreciation Modification denial. Plaintiff asserts that these redactions conceal valuation logic, hazard claim suppression, and borrower exclusion, and reflect coordinated servicing obstruction.

30 DN Exhibit [TBD] (Doc. 70-1, pg. 94 of 151) contains 16 redacted ledger entries spanning September 22–23, 2014, processed by James Lee, Anisha Bakshi, and Serafina C. Michael. The visible portion rejects a Shared Appreciation Modification due to alleged negative NPV and assesses a fee for application processing. Plaintiff asserts that this entry conceals eligibility criteria, servicing logic, and procedural transparency, supporting Counts for concealment, exclusion, and racketeering structure.

30 DN cont- Exhibit [TBD] (Doc. 70-1, pg. 95 of 151) contains 14 redacted ledger lines under the heading "PAYOFF NOTE," dated September 23, 2014, and processed by JWhaley1. Visible entries include "Shredded c/," "Late Arrival," and "Backlogged processor," suggesting document suppression and servicing delay. Plaintiff asserts that this redaction conceals payoff logic, hazard reconciliation, and borrower exclusion, supporting Counts for concealment, procedural suppression, and racketeering structure.

30 DO Exhibit [TBD] (Doc. 70-1, pg. 96 of 151) contains 55 redacted ledger lines dated August 26, 1989, with only a partial fragment visible: "19121.46997 8/26/89 4 32080(9.98) Sheridan C." No processor, borrower ID, or ledger action is documented. Plaintiff asserts that this entry conceals legacy servicing logic and borrower attribution and may have been repurposed to simulate historical continuity. This conduct supports Counts for concealment, procedural suppression, and racketeering structure.

30DP Exhibit [TBD] (Doc. 70-1, pg. 97 of 151) contains over 35 redacted ledger lines with no visible borrower ID, processor name, or servicing logic. Plaintiff asserts that this entry conceals financial attribution, hazard reconciliation, and borrower rights, and reflects coordinated suppression of servicing records. This conduct supports for concealment, procedural exclusion, and racketeering structure. Plaintiff asserts that multiple Qualified Written Requests (QWRs) were filed prior to the redactions documented in ¶30DM–¶30DP. Plaintiff contends that said redactions constitute procedural retaliation, obstructing resolution of prior requests and violating 12 U.S.C. § 2605(e). Servicer behavior supports and elevates QWR claims into the factual backbone of concealment and enterprise structuring.

Plaintiff asserts that Exhibits ¶30DM–¶30DP reflect concealment and servicing obstruction in direct response to Qualified Written Requests ("QWRs")

acknowledged by the Eleventh Circuit in its December 16, 2014, remand order (USCA11 Case 24-13965). Said QWRs were filed on November 30, 2011, May 10, 2012, and twice on June 4, 2012, and included allegations under RESPA. The appellate court confirmed these QWRs as properly filed and sufficient to state a claim for relief. Plaintiff contends that redactions occurring post-2012 reflect targeted suppression of borrower rights already under judicial review.

Plaintiff asserts that Qualified Written Requests submitted on November 30, 2011; May 10, 2012; and twice on June 4, 2012, were acknowledged by the Eleventh Circuit in USCA11 Case 24-13965, filed December 16, 2014, wherein the court ruled that Plaintiff had adequately stated a claim under RESPA. Redacted ledger entries from ¶30DM through ¶30DP reflect suppression of servicing logic and borrower eligibility directly responsive to said QWRs, constituting procedural retaliation and concealment in violation of RESPA, Rule 26, and § 1981, and establishing enterprise structuring.

Plaintiff asserts that Exhibits ¶30DM through ¶30DP reflect redaction and concealment of servicing logic in direct response to Qualified Written Requests ("QWRs") acknowledged in USCA11 Case 24-13965, filed December 16, 2014. The Eleventh Circuit confirmed the validity of QWRs dated November 30, 2011; May 10, 2012; and June 4, 2012. The servicer's post-QWR redactions—particularly in entries involving hazard reconciliation, modification denials, and payoff logic—reflect procedural retaliation and targeted obstruction. These redactions are not random but chronologically responsive to filed QWRs, supporting Counts for concealment, exclusion, and enterprise structuring.

30DQ Exhibit [TBD] (Doc. 70-1, pg. 98 of 151) contains 45 redacted ledger lines with no visible borrower ID, processor name, or servicing logic. Plaintiff asserts that this entry conceals financial attribution, hazard reconciliation, and borrower rights, and reflects coordinated suppression of servicing records. This conduct supports Counts for concealment, procedural exclusion, and racketeering structure.

¶30DR: Exhibit [TBD] (Doc. 70-1, p. 99 of 151) contains 50 redacted ledger lines with no borrower ID, processor name, or visible servicing logic. Plaintiff asserts this entry conceals financial attribution, hazard reconciliation, and borrower rights, evidencing coordinated suppression of servicing records.

¶30DS: Exhibit [TBD] (Doc. 70-1, p. 100 of 151) includes 50 redacted lines dated July 14, 2015, Bates stamp Q2GWEN-6919. Plaintiff asserts this concealment coincides with the expiration of the six-year statute of limitations under 28 U.S.C. § 2415(a) and FIRREA, triggered by IndyMac Bank's FDIC closure on July 11, 2008. Because Plaintiff's second loan was already in default, limitations expired between July 11, 2014, and July 14, 2015. Plaintiff contends this concealment event suppressed servicing logic and borrower reconciliation during the final enforceability window.

¶30DT: Exhibit [TBD] (Doc. 70-1, p. 101 of 151) shows 45 redacted ledger lines dated May 25, 2014, with fragment referencing "pod activation purposes only." Attribution includes Sheridan & Mehlhaff; Bates stamp OGWEN–180. Plaintiff asserts concealment tied to custodial transfer protocols and servicing reconciliation.

¶30DU: Exhibit [TBD] (Doc. 70-1, p. 102 of 151) contains a payoff quote dated September 23, 2014, for Loan No. 71292460387, addressed to Priscilla L. Thompson. Document lists all charges as $0.00, total due $73,111.82, omitting reconciliation logic for escrow or hazard. Supports simulated quote theory linked to blackout batch OGWEN–180.

¶30DV: Exhibit [TBD] (Doc. 70-1, p. 104 of 151) logs 45 repetitive ledger rows showing identical numeric strings (e.g., "68.909.22 11.04842000 30 341.155 0.00000"), lacking borrower ID, processor, or timestamp variation. Plaintiff asserts numeric padding designed to obscure transactional history.

¶30DW: Exhibit [TBD] (Doc. 70-1, p. 104 of 151) records a manual modification approval for Loan Instance ID 0001791204071:9229210615338 by processor Kanchana K S. Resolution type: "Straight Discount with Fixed Interest Rate";

flagged "False" for permanent status; reliant on a $5,899.52 hold. Plaintiff asserts simulation of assistance without reconciliation logic.

¶30DX: Exhibit [TBD] (Doc. 70-1, p. 105 of 151) reflects additional quote simulation ($1,597.69), payoff amount of $126,747.89, and a non-permanent modification flag. Logged May 25, 2014, with over 45 identical "Required Principal Balance: 0.00" fields, devoid of logic or audit. Plaintiff asserts numeric nullification staged to preclude claim viability under 28 U.S.C. § 2415(a).

¶30DY: Exhibit [TBD] (Doc. 70-1, p. 106 of 151) reflects repeated ledger entries of "Required Principal Balance: 0.00" alongside zeroed Total Release Amount and Reconveyance Fee fields. The document claims to interpret loan release against current loans but lacks attribution or audit logic. Plaintiff asserts that this entry functions as a ledger mask—nullifying financial records to conceal payoff logic, hazard reconciliation, and borrower eligibility status. Supports Counts 24 (Obstruction), 31 (Servicing Abuse), 37 (Due Process Violation), and 44 (RICO Structuring).

¶30DZ: Exhibit [TBD] (Doc. 70-1, p. 107 of 151) includes two time-stamped entries denying a Shared Appreciation Modification based on VA insurance, processed by Tanichian X S and a background processor. The denial lacks income refresh audit or benefit attribution and instead flags internal correspondence markers including "Bay Area HAMP Letter" and "Transfer memo 006-A." Plaintiff asserts that this entry forms part of a broader pattern of quote suppression, insurer-based exclusion, and simulated outreach. Plaintiff further notes that phone number 800-746-2936 ext. 0871—historically, used by Ocwen Loan Servicing, LLC for modification and QWR response—now routes to PHH Mortgage. This confirms service transfer and custodial continuity. Plaintiff asserts that PHH's reuse of Ocwen infrastructure supports enterprise structuring and concealment continuity.

¶30EA: Exhibit [TBD] (Doc. 70-1, p. 108 of 151) contains two ledger entries dated September 26, 2014, time-stamped 7:05:45 AM and 7:05:52 AM, each attributed to

"Day Watcher" and containing 10 redacted lines. Plaintiff asserts these entries reflect coordinated concealment of servicing logic, quote simulation, and hazard reconciliation via custodial batch protocol. The absence of borrower ID, processor attribution, and ledger action.

¶30EB: Exhibit [TBD] (Doc. 70-1, p. 109 of 151) includes 15 redacted lines dated September 26, 2014, at 4:39:43 PM, attributed to "Fur Express Mail Track" under Entry ID 1931864097. Bates stamp OCWEN–108 confirms custodial continuity with prior blackout entries. Plaintiff asserts this entry conceals correspondence routing, simulated quote activity, and hazard reconciliation logic.

¶30EC: Exhibit [TBD] (Doc. 70-1, p. 110 of 151) contains 20 redacted ledger lines matching the timestamp of ¶30EB, confirming custodial batch concealment. With no processor attribution or ID, Plaintiff asserts this entry suppresses quote simulation, hazard reconciliation, and servicing activity.

¶30ED: Exhibit [TBD] (Doc. 70-1, p. 112 of 151) contains 12 redacted lines dated July 22, 2014, timestamped 12:34 PM and attributed to Fugamma Khalil Shaikh. Bates stamp OCWEN–111 confirms continuity. Plaintiff asserts concealment of mod audit logic, hazard reconciliation, and correspondence routing linked to pre-statute ledger suppression.

¶30EE: Exhibit [TBD] (Doc. 70-1, p. 111 of 151) logs dual entries dated September 30 and October 1, 2014, flagged "Modification Plan Sent" and "CL NOACTION." Plaintiff asserts the mod agreement, merged via internal CRG templates, was labeled ineligible and never sent to Plaintiff. The entries simulate resolution without borrower delivery or servicing action.

¶30EF: Exhibit [TBD] (Doc. 70-1, p. 113 of 151) includes dual entries dated October 13, 2014, for Loan No. 7132180397, showing Payment Amount $1,199.61

and suppression of all disbursement logic. Tagged NF903, processed by Steven Cemetery and John James, the entry simulates servicing reconciliation across 20 fields yet ends with "No Action Taken on Collection Screen."

¶30EG: Exhibit [TBD] (Doc. 70-1, p. 114 of 151) contains 14 redacted lines dated October 13, 2014, timestamped 3:18:32 AM and attributed to Steven Cemetery. Matching the timestamp of ¶30EF, this confirms batch concealment under NF903. Plaintiff asserts suppression of quote simulation logic, hazard reconciliation, and correspondence routing.

***Supplemental Ledger Disclosure (Doc. 70-1, pp. 115–116):***

Includes entries with "New Recorded Payment Quote" set to $0.00 and flagged "Auto generated in batch mode," followed by repetitive escrow disbursements of $334.22 tied to January 2015

¶30EH Exhibit [TBD] (Doc. 70-1, p. 115 of 151) contains a ledger entry processed by Canteen, Jackson ES and James Lee, time-stamped October 22, 2014, reflecting forty-five identical lines listing quote and payment amounts of $3,917.61. The entry concludes with a "CL NOACTION" flag and lacks servicing logic, hazard reconciliation, or escrow breakdown. Plaintiff asserts that this entry simulates resolution optics via numeric symmetry without servicing substance.

¶30EI Exhibit [TBD] (Doc. 70-1, p. 116 of 151) contains ledger entries reflecting a "New Recorded Payment Quote" at $0.00 with the comment "Auto generated in batch mode," followed by repetitive escrow disbursement loops of $334.22 tied to January 2015 region logic. Entries are processed by multiple handlers and tagged with codes ES, CRMR, TRMO, and EXPRPAD. Plaintiff asserts that these entries simulate escrow reconciliation and borrower payment activity via auto-generated logic lacking servicing attribution.

¶30EJ Exhibit [TBD] (Doc. 70-1, p. 124 of 151) contains three ledger entries spanning January 26–28, 2015, processed under tags COBA, CE, SRC, and WAMU, and handled by Fernando Aldalondo, Nelson Tiedemh, and Marion Sutton. Visible descriptions include "Monthly Delinquent Account Notice" and

"Relationship Manager Letter sent." The document disclaimer states it is not proof of mailing and is for internal reference only. Plaintiff asserts that these entries simulate correspondence delivery and borrower service while concealing actual transmission.

¶30EK Exhibit [TBD] (Doc. 70-1, p. 133 of 151) contains multiple ledger entries dated February 24, 2015, processed under Loan No. 79124146987, and tagged as Short Sale and Lien logic by processors BP, PO, COLL, and WCOMP. Twenty lines are redacted across entries, accompanied by comments such as "Outstanding Fee Quote," "Payoff Attorney Fee Quote (required)," and "PER LEGAL REVIEW." Plaintiff asserts that this block suppresses correspondence routing, fee transparency, and dual-servicing logic.

**¶30EL (continued) Exhibit [TBD] (Doc. 70-1, p. 134 of 151)** contains fifty redacted ledger lines dated February 19, 2015, time-stamped 6:33:39 PM and attributed to Bankr: Adoga, Chinyzia. Bates stamp OCWEN–133 confirms custodial continuity. Plaintiff asserts that this entry conceals bankruptcy correspondence routing, lien extinguishment logic, and hazard reconciliation.

**¶30EM Exhibit [TBD] (Doc. 70-1, p. 136 of 151)** contains three ledger entries dated February 8, 2015, tied to Loan ID 1132180387, and tagged RARC, COIF, and MOPAY. Twenty lines are redacted across entries, and the final note states "Order processed for end calculation purposes only." Plaintiff asserts that this entry simulates quote logic and correspondence routing while concealing hazard reconciliation and modification denial triggers.

**¶30EN Exhibit [TBD] (Doc. 70-1, p. 137 of 151)** contains a payoff quote ledger dated February 27, 2015, for Loan No. 7323140387, addressed to borrower Priscilla L. Thompson. The quote includes principal and interest only, with all escrows, hazard, fee, and attorney-related disbursements zeroed out. Plaintiff asserts that this entry simulates borrower relief while suppressing float logic, hazard reconciliation, and delinquency attribution. Plaintiff further asserts that the payoff quote addressed to Priscilla L. Thompson—confirmed deceased since 2010—constitutes identity misrepresentation and unauthorized post-mortem quote simulation. No estate attribution, legal discharge processing, or servicing authorization is presented. This supports Counts for concealment, procedural suppression, and racketeering structure via identity laundering.

**¶30EO Exhibit [TBD] (Doc. 70-1, p. 138 of 151)** contains a ledger simulating monthly interest accruals from September 2010 through July 2013 using rates from 2.2500% to 7.2500% over locked balances. Entries lack servicing context, processor attribution, and adjustment logic, indicating quote projection for audit purposes rather than borrower servicing. Plaintiff asserts that this structure simulates financial progression while concealing procedural transparency and borrower impact.

**¶30EP Exhibit [TBD] (Doc. 70-1, p. 139 of 151)** contains a modification projection ledger dated February 23, 2015, showing static principal ($68,909.22) with a 5.75% interest rate applied over semi-annual intervals spanning November 2009 to May 2027. No servicing fields are activated, and the ledger lacks hazard, escrow, or fee attribution. Plaintiff asserts that this ledger constructs quote projection logic without borrower relief.

**¶30EQ Exhibit [TBD] (Doc. 70-1, p. 140 of 151)** contains a ledger entry dated June 1, 2015, processed under borrower Kamchana, and tagged as a Manual Modification. The entry reflects $129,129.37 principal, $504.01 monthly payment, $1.17 PI charge, and zero interest across a 20-year balloon structure. Plaintiff asserts that the modification simulates relief without activating hazard, escrow, or forgiveness logic. Plaintiff further asserts that the balloon structure is inconsistent with actual loan terms: the original first mortgage contained no balloon clause, and the second lien—previously released—was the only instrument with such a provision. Accordingly, the modification ledger simulates a financial obligation without contractual foundation, supporting fraud.

**¶30ER Exhibit [TBD] (Doc. 70-1, p. 141 of 151)** includes fifty-one repetitive ledger entries quoting Loan Account 5-50-497.77 and stating, "FINAL PAYMENT IS DUE ON THE LATEST MORTGAGE LOAN," with processing timestamps from February 23–24, 2015, handled by Ashlee Burk, Mercy Kimbu, and Background Processor. Plaintiff asserts that these entries simulate payoff notification while suppressing disbursement logic, hazard reconciliation, and borrower correspondence.

**¶30ES Exhibit [TBD] (Doc. 70-1, p. 142 of 151)** contains three ledger entries dated February 28, 2015, tied to Loan No. 3128160397, and processed by Browser Alexander Samper and background processes. Fourteen lines are redacted across

entries timestamped within forty-six seconds. Plaintiff asserts that this block simulates correspondence routing and quote denial logic while suppressing hazard reconciliation and borrower-facing servicing,.

**¶30ET Exhibit [TBD] (Doc. 70-1, p. 143 of 151)** includes a timestamped ledger entry for Loan No. 7132140387 processed by Ashleen Shuck on February 27, 2015. The entry displays blank modification template fields for Total Debt Mod and DISCOVER Mod logic with no values populated. Litigation routing commentary and repeated filler strings suggested this was a simulation ledger used to block borrower relief. Plaintiff asserts that this structure supports fraud.

**¶30EU Exhibit [TBD] (Doc. 70-1, p. 144 of 151)** contains four ledger entries dated February 24–25, 2015, tied to Loan No. 1392160A87 and processed by Hamid, Khokhar, Gupta, and Siddiqi. Sixteen lines are redacted across entries, and visible notes confirm modification denial due to litigation status, foreclosure routing to Wells Fargo counsel, and servicing suspension. Plaintiff asserts that this block simulates procedural review while suppressing borrower relief, supporting false loan docs as that is not Thomason loan number.

**¶30EV Plaintiff further asserts that the ledger constructs reflected in ¶30EK, spanning pages 133–144 of Document 70-1**, simulate resolution logic through repetition, redaction, and template formatting. These tactics mirror documented patterns now under investigation by international regulatory bodies, including India's Competition Commission, where dominant entities are accused of procedural exclusion via document laundering, access blocking, and market simulation. Plaintiff invokes these parallels as evidence of systemic enterprise structuring.

**¶30EW Exhibit [TBD] (Doc. 70-1, p. 146 of 151)** contains ledger entries dated March 3–4, 2015, tied to Loan No. 71924:60387 and processed under SMODP and LNPP22 tags. Fields for modification type, escrow, TDP UPB logic, and servicing structure are blank, yet commentary asserts no prepayment penalty due to FHA and RHS-CHL loan structure. Plaintiff asserts that this scaffold simulates modification processing while suppressing relief logic and quote attribution, supporting fraud.

**¶30EX Exhibit [TBD] (Doc. 70-1, p. 147 of 151)** contains eight ledger entries dated March 12–23, 2015, tied to Loan No. 7142143037 and processed by Shuck,

Kawashiri, Ziyara, Randy V, Sharma, and background processors. Thirteen lines are redacted across entries, and visible notes confirm foreclosure routing, servicing freeze, and document imaging without borrower delivery. Plaintiff asserts that this block simulates procedural review while suppressing hazard reconciliation and borrower-facing servicing.

¶30EY Exhibit [TBD] (Doc. 70-1, p. 148 of 151) falsely identifies the borrower as "Felicia Thompson" and references "Charles" as a party of interest—both incorrect. The correct mortgagor is Priscilla Thomason, deceased in 2010, and the sole surviving party is Clayton Thomason. Plaintiff asserts that this misattribution undermines ledger accuracy and supports claims of quote laundering, post-mortem correspondence suppression, and enterprise structuring.

**¶30EZ** Exhibit [TBD] (Doc. 70-1, p. 149 of 151) documents the death of borrower Jessica L. Thompson as of March 24, 2015. Entries show processing activity to update system records, complete escrow analysis, and image documents—but no borrower-facing correspondence or relief logic. Plaintiff asserts that this ledger sequence supports claims of post-mortem quote simulation and suppression of borrower servicing, under false entity.

**¶30FA** Plaintiff further asserts that despite the passing of mortgagor Priscilla L. Thomason in 2010, servicing records failed to log death acknowledgment until 2015 under a misattributed identity. No correspondence, relief activity, or document imaging occurred in the interim. This delay functionally preserved quote logic and obstructed rightful survivor servicing access. These facts support Counts for concealment, identity laundering, and enterprise structuring.

**¶30FB** Exhibit [TBD] (Doc. 70-1, p. 150 of 151) contains three ledger entries dated March 26, 2015, tied to Loan No. 7192140387. Fifteen lines are redacted across entries processed under Record Search logic. Visible comments confirm collection freeze and prior investor transaction masking. Plaintiff asserts that this block simulates procedural review while suppressing borrower servicing and quote attribution, supporting a fraud.

**¶30FC** Exhibit [TBD] (Doc. 70-1, p. 151 of 151) contains five ledger entries tied to Loan No. 7192140387, spanning October 2013 to November 2014. Each entry reflects reversed principal logic ($8,399.22), escrow drift, and simulated servicing

relief through expense waivers and disbursements. Plaintiff asserts that this ledger sequence was used to simulate borrower benefit while preserving quote logic and suppressing actual servicing reconciliation.

**Section V: Enterprise Structure and Racketeering Intent (2009–2012)**

¶31 Deutsche Bank's claims against the FDIC were declared moot, leaving it with no lawful right to enforce foreclosure on failed IndyMac assets.

¶31A On January 30, 2014, Ocwen Servicing documented a third-party call confirming litigation status, yet denied Plaintiff access to modification programs. Internal logs reflect deliberate suppression of eligibility notices, in violation of 12 C.F.R. § 1024.36. (Exhibit A, Entry #91)

¶31B On March 10, 2014, Ocwen flagged the loan for "special handling" and rejected partial payments submitted by Plaintiff, citing status-based delinquency. This conduct violated 12 U.S.C. § 2605(k)(1)(C), forming part of a pattern of unlawful debt collection. (Entry #92). False no partial payments were made.

¶31C On April 16, 2014, Ocwen issued a payoff quote that inflated escrow shortages and failed to explain balance calculations. The quote violated 12 C.F.R. § 1024.17 and § 2609(c)(2), constituting misrepresentation under RICO predicate theory. (Entry #93)

¶31D On April 29, 2014, Ocwen refused to release hazard claim proceeds after Plaintiff completed repair work. Internal notes flagged the loan under litigation hold, obstructing release of insurance funds in violation of 12 U.S.C. § 2605(k)(1)(D). (Entry #94)

¶31E On May 2, 2014, an escrow quote issued by Ocwen again included inflated shortage projections and undisclosed interim disbursements. No supporting documentation was provided despite active QWR periods. (Entry #95)

¶31F On June 23, 2014, Ocwen denied a hazard claim related to property damage, citing litigation status as justification. Internal flags blocked disbursement of federally backed insurance proceeds—another violation of 12 U.S.C. § 2605(k)(1)(D). (Entry #96)

¶31G On July 16, 2014, Ocwen acknowledged the borrower's death in a servicing audit notice yet failed to update account ownership or notify Plaintiff as successor.

This omission constituted identity concealment and violated 12 C.F.R. § 1024.36. (Entry #97)

¶31H On August 18, 2014, Ocwen refused to release additional hazard claim proceeds, ignoring documentation submitted by Plaintiff in his capacity as estate executor. Records reflect internal denial based solely on litigation status. (Entry #98)

¶31I On September 25, 2014, Ocwen issued a payoff quote containing inflated legal fees and failed to acknowledge prior modification terms. The quote formed part of a broader pattern of fabrication and false certification. (Entry #99)

¶31J On September 30, 2014, Ocwen uploaded a modification agreement into its internal system but intentionally withheld it from Plaintiff, referencing ongoing litigation as justification. This act suppressed eligible modification terms in violation of 12 C.F.R. § 1024.36 and supports claims under Rule 60(b)(3). (Entry #100)

¶32 The FDIC's determinations were upheld by federal courts nationwide, including Bank of America v. FDIC and South Miami Holdings LLC, confirming the constitutional limits on redress where assets are deemed worthless.

¶33 Under Article III, no judicial controversy exists when recovery is structurally impossible. (See Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67)

¶34 Deutsche Bank's foreclosure efforts proceeded despite lacking standing, authority, or legal ownership, establishing predicate acts under 18 U.S.C. § 1961.

¶35 Eva Bank operated as a front to funnel subprime loans into DBNTC's enterprise, using ARMs and false promises to induce reliance and default.

¶36 IndyMac's servicing failures and QWR suppression protected this structure from discovery.

¶37 DBNTC enforced the foreclosure pipeline through coordinated acceleration tactics, judicial filings, and denial of federal protections—demonstrating enterprise continuity.

¶38 Exhibits A (RESPA Qualified Written Requests) and B (Affidavits of Promissory Fraud) are hereby incorporated by reference to substantiate Plaintiff's

claims under the Real Estate Settlement Procedures Act (RESPA), the Truth in Lending Act (TILA), the Racketeer Influenced and Corrupt Organizations Act (RICO), and civil rights statutes. These exhibits capture key predicate acts—including fraudulent inducement, unlawful foreclosure acceleration, willful RESPA noncompliance, and calculated suppression of borrower rights—that collectively form a pattern of racketeering activity. They also serve as foundational evidence of the enterprise's operation across multiple channels of federal and state obstruction, to be further developed through the factual and procedural chronology documented in subsequent sections.

¶39 In 2012, Plaintiff filed suit in the U.S. District Court for the Middle District of Alabama (Case No. 2:12-cv-604-MHT-TFM), asserting claims related to the promised loan modification and wrongful foreclosure. On March 28, 2013, the district court dismissed the case with prejudice, ruling that federal mortgage relief programs such as HAMP and HAFA created no private right of action. However, on December 16, 2014, the Eleventh Circuit Court of Appeals reversed in part, holding that the district court abused its discretion in denying leave to amend and that Plaintiff had stated a viable claim under RESPA. The appellate court directed the lower court to allow amendment of the complaint and the joinder of FDIC personnel and related statutory claims—thereby affirming the plausibility and procedural viability of Plaintiff's RESPA allegations.

¶40 Despite this directive, subsequent proceedings in the district court exhibited a pattern of resistance to adjudicating Plaintiff's amended claims, including judicial delays, rejection of material evidence, and the shielding of institutional defendants through procedural technicalities.

¶41 Following the Eleventh Circuit's partial remand in December 2014, Defendants were afforded a renewed opportunity to respond to clarified claims and produce loan-level documentation previously withheld. Instead, Defendants initiated a post-remand campaign of evidentiary obstruction, including the systematic redaction and alteration of internal servicing logs required to validate Plaintiff's RESPA and TILA allegations. For example, despite Plaintiff's submission of a formal Qualified Written Request on February 17, 2015—demanding unaltered modification records, payoff data, and servicing communications—Defendants produced logs (Entries #153–200) with redacted

borrower hardship entries and excluded entire sequences of correspondence and internal notes. These omissions directly contravened Defendants' obligations under 12 U.S.C. § 2605(e) and Rule 26 and formed the opening act in a new phase of concealment consistent with the enterprise's ongoing objective: to frustrate judicial oversight and suppress exposure to federal liability.

¶42 On March 11, 2015, in direct response to Plaintiff's formal QWR and discovery motions, Defendants submitted a payoff quote purporting to reflect the full balance due. However, the document omitted critical disclosures required by 12 C.F.R. § 1026.36(c), including the breakdown of principal, interest, fees, and escrow—each required for TILA compliance. Notably, this payoff quote bore inconsistencies with prior statements and servicing notes obtained through audit, some of which had been altered post-remand to reflect backdated amounts. The irregularities, paired with Defendants' refusal to produce the underlying payment application ledger, demonstrate an intent to mislead and frustrate any meaningful challenge to the accuracy or legitimacy of the debt. This act, as part of an emerging sequence of fabricated financial representations, further evidences the enterprise's reliance on manipulated records to suppress claims, obstruct discovery, and insulate servicing misconduct from judicial scrutiny.|

¶43. Between January and April 2015, Defendants recorded a series of internal servicing actions reflecting Plaintiff's loan modification eligibility, hardship review, and escalation requests—yet systematically excluded these records from litigation disclosures. This period is marked by the intentional redaction of servicing entries (#157–200), all of which fell within the discovery window governed by the court's May 2017 Scheduling Order (Doc. 116).

¶44. On January 15, 2015, Plaintiff's first internal "Home Retention Call" was documented, noting a prior modification history. Although material to Plaintiff's claims under RESPA and Regulation X's continuity-of-contact rules, this log was later redacted from formal production.

¶45. On February 3, 2015, an internal approval of a modification template, labeled "For Mailing" and "Alt Doc," was authorized by servicing agent Littom, Minahshi. Despite its legal significance, no such document was provided to Plaintiff, and the record was buried as redacted Entry #157.

## CHAIN OF TITLE FRAUD AND ROBO-SIGNED ASSIGNMENTS (2011–2012)

¶45A. On February 2, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as nominee for EVABANK, executed an Assignment of Mortgage purporting to transfer Plaintiff's loan directly to Deutsche Bank National Trust Company, as Trustee for the INABS 2006-A trust. The assignment was filed in Montgomery County Probate Court (RLPY 04121 PG 0379), despite the absence of any prior recorded assignment from the FDIC as receiver for IndyMac, or from One West Bank, FSB—both parties that had allegedly assumed servicing rights following IndyMac's 2008 failure.

¶45B. On February 9, 2012, a second Assignment of Mortgage was executed, again purporting to transfer the same mortgage to DBNTC. This instrument included no chain of custodial endorsement or FDIC conveyance, and was executed by Wendy Traxler, who signed as "Assistant Secretary" of MERS without evidence of her authorization by EVABANK or any lawful authority to act on behalf of the originating lender.

¶45C. An earlier assignment filed in 2011 had been signed by Brian Burnett, similarly, purporting to act as Assistant Secretary of MERS. Burnett's and Traxler's signatures appear in numerous unrelated foreclosure cases nationwide, and neither are disclosed as bona fide employees of EVABANK or holders of custodial rights. These facts strongly support the allegation that both individuals operated as surrogate signers—commonly known as robo-signers—executing mass assignment documents without legal authority, a hallmark of racketeering conduct.

¶45D. At no point was an assignment from the FDIC produced, endorsed, or recorded in the public land records. Accordingly, the MERS-originated assignments are not only invalid under basic contract principles, but also functionally impossible under FIRREA's receivership protocols. Given the FDIC's custodial role over IndyMac assets, any lawful assignment to DBNTC would have required specific conveyance out of FDIC receivership. No such conveyance is alleged or evidenced.

¶45E. The trust to which the loan was allegedly assigned—INABS 2006-A—had a closing date of January 1, 2006. Any mortgage transferred in 2011 or 2012 violates

the PSA (Pooling and Servicing Agreement), rendering the assignment void ab initio under New York and Alabama trust law, and void for tax purposes under REMIC structure.

¶45F. These transactions supported an unlawful acceleration and foreclosure, orchestrated without exhaustion of administrative remedies under FIRREA, and despite the fact that Ocwen had issued a 1099-C cancellation of debt form in 2015. Plaintiff therefore asserts that DBNTC lacked both constitutional standing and chain-of-title authority to proceed, and that the post-receivership transfers were manufactured as part of a broader enterprise scheme.

¶45G. Plaintiff formally names Brian Burnett and Wendy Traxler as individual Defendants for their participation in a racketeering enterprise under 18 U.S.C. § 1962(c). Each knowingly executed fraudulent assignment instruments recorded in state land records, submitted to courts as evidence of ownership, and relied upon supporting unlawful enforcement actions. Their conduct satisfies predicate act elements of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1028(a)(3) (fraudulent execution of documents).

45.H. Between February 2011 and February 2012, Mortgage Electronic Registration Systems, Inc. ("MERS"), purporting to act as nominee for Eva bank, executed two assignments of Plaintiff's mortgage into the INABS 2006-A trust, naming Deutsche Bank National Trust Company as trustee. These assignments were signed by Brian Burnett and Wendy Traxler, both of whom have appeared in unrelated foreclosure matters across jurisdictions as surrogate signers. Neither was authorized by Eva bank nor demonstrated legal authority from any successor entity. No assignment from the FDIC—IndyMac's statutory receiver following its 2008 failure—was produced, nor was any interim transfer recorded. The trust's closing date of January 1, 2006, rendered both assignments invalid under the Pooling and Servicing Agreement. These actions are further detailed in Exhibit I – Chain-of-Title Irregularity Matrix and Exhibit J – Named Enterprise Participants, and support Plaintiff's claims under Rule 60(b)(3), FIRREA, and 18 U.S.C. §§ 1341, 1343, 1512, and 1962(c)–(d).

¶46. Entries dated February 9–April 20, 2015, reflect an escalating pattern: modification offers created under the name of a deceased borrower, internal flags warning that the successor was not verified, and repeated mentions of "Litigation Hold" measures instructing staff not to disclose active notes in response to QWRs. These acts obstructed Plaintiff's statutory rights under 12 U.S.C. § 2605 and 12 C.F.R. § 1024.36.

¶47. Multiple entries—such as "Post Mod Prep Complete" and "Execution Packet in Transit"—evidence material servicing activity deliberately withheld during litigation. Payoff calculations were internally recalibrated using balloon balances, yet these recalculated figures were omitted from all disclosures served on Plaintiff.

48 The combination of falsified communications, call log suppression, and the use of deceased borrower names to mask unauthorized modifications demonstrates a unified pattern of fraud-by-silence—deployed in service of the enterprise's objective to suppress regulatory exposure, obstruct borrower relief mechanisms, and falsely portray compliance to the court.

49 Each redacted entry represents not only spoliated evidence under Rule 37(e)(2) but also a predicate act under 18 U.S.C. § 1961(1)—constituting mail fraud, wire fraud, and obstruction of justice when submitted to the court as complete records or concealed during mandated discovery phases.

**Statement of Facts ¶50–¶60 — Spoliation, Controlled Business Arrangement, and Discriminatory Servicing Enterprise**

¶50 Plaintiff asserts that each redacted ledger entry described in ¶30EK–¶30FC constitutes spoliated evidence under Rule 37(e)(2) and a predicate act under 18 U.S.C. § 1961(1). These entries were either submitted to the court as complete records or concealed during mandated discovery phases, thereby constituting mail fraud, wire fraud, and obstruction of justice.

¶51 Plaintiff's February 2015 Qualified Written Request (QWR) triggered mandatory disclosure obligations under 12 U.S.C. § 2605(e). However, Defendants failed to produce unredacted servicing logs, modification records, or payoff

calculations, instead submitting ledger entries with extensive redactions and metadata suppression.

¶52 The redacted entries concealed at least 24 modification approvals, payoff recalculations, and servicing decisions made between January and April 2015. These decisions were never disclosed to Plaintiff or the court, despite being directly responsive to the QWR and concurrent discovery demands.

¶53 Plaintiff asserts that these concealments were not isolated errors but part of a coordinated suppression strategy designed to obstruct judicial review and deprive Plaintiff of his statutory rights under RESPA, TILA, and SCRA.

¶54 Plaintiff further asserts that Deutsche Bank National Trust Company (DBNTC) and Ocwen Loan Servicing operated a Controlled Business Arrangement (CBA) in violation of 12 U.S.C. § 2607(a). Acting as trustee and servicer respectively, these entities shared servicing infrastructure, data logic, and hazard resolution pathways to extract unauthorized fees and suppress borrower participation.

¶55 Ocwen's ledger manipulations—including batch-mode hazard and escrow quotes (¶30BM, ¶30BS, ¶30BT)—were implemented under DBNTC's nominal trustee authority. These entries reflect a coordinated effort to simulate servicing activity while denying Plaintiff access to actual relief or resolution.

¶56 The CBA structure enabled DBNTC and Ocwen to retain servicing compensation without borrower consent or disclosure, violating RESPA § 2607(a) and entitling Plaintiff to treble damages under § 2607(d)(2). See Edwards v. First American Corp., 610 F.3d 514 (9th Cir. 2010).

¶57 Plaintiff asserts that One West Bank, Ocwen Loan Servicing, and PPH Mortgage operated as successive participants in the same discriminatory servicing enterprise. Despite nominal transfers of account ownership, the underlying servicing behavior remained unchanged.

¶58 Trial payment quotes continued to be internally generated without borrower participation (¶30BR–BS), hazard claims remained unresolved or looped (¶30BK–BO), and ledger structures simulating borrower failure persisted across platforms. These practices obstructed Plaintiff's access to loss mitigation, FDIC extinguishment verification, and discovery rights.

¶59 The transfer relationships between One West, Ocwen, and PPH Mortgage were not arms-length transactions but calculated continuations of procedural exclusion. Plaintiff, as an African American borrower, was subjected to differential treatment, including dual-recordkeeping schemes that referenced him internally while attributing actions to deceased parties externally.

¶60 Plaintiff asserts that this conduct violated RESPA § 2607(a), 42 U.S.C. § 1981, and the Constitution's guarantees of equal protection and fair adjudication. Specific ledger notations—such as "Do not disclose," "Litigation QWR hold," and "Use original borrower identity until further authorization"—confirm a coordinated strategy to obstruct inquiry and suppress evidentiary exposure.

¶61 Plaintiff alleges that One West Bank transferred servicing rights to Ocwen Loan Servicing, which in turn transferred or allowed further servicing under the PPH Mortgage label. Despite these formal transitions, the core servicing behavior remained unchanged. Each successor entity perpetuated the same discriminatory, exclusionary, and procedurally defective practices originally initiated by prior actors—specifically:

- Fabrication of trial payment quotes (¶30BE, ¶30BR–BS)

- Suppression and looping of hazard loss claims (¶30BK–BO)

- Simulation of borrower performance failure through batch-coded ledger entries (¶30BM, ¶30BQ, ¶30BU)

Plaintiff asserts this successive servicing structure was not merely administrative, but a deliberate CBA-aligned enterprise designed to frustrate fair participation, obscure extinguishment milestones, and deny equal treatment to an African American borrower. As such, all servicing successors named—including One West Bank, Ocwen Loan Servicing, and PPH Mortgage—acted in concert to violate Plaintiff's rights under 12 U.S.C. § 2607(a), 42 U.S.C. § 1981, and the Constitution's guarantees of equal protection and fair adjudication.

Specific notations such as "Do not disclose," "Litigation QWR hold," "Verify heirship before releasing mod," and "Use original borrower identity until further authorization" confirm a coordinated strategy to obstruct statutory inquiry and limit evidentiary exposure during litigation.

¶62 The loan servicing platform metadata reveals that "user masks" were applied between January and June 2015—directly overlapping Plaintiff's RESPA QWR window and his PSAP-eligible discovery period—effectively cloaking entire data fields during compelled production.

¶63 **For instance, Redacted Entry** #194 (March 20, 2015) reads: "Alt Doc Package prepared. Litigation holds active. No notice pending." This package was never mailed or disclosed in response to Plaintiff's outstanding QWR.

¶64 Redacted Entry #198 (April 14, 2015) stated: "Continue using original name. Successor has not been validated yet. No letter of authority." This entry contradicts Plaintiff's prior filing of heirship and legal standing documentation, further evidencing bad faith.

¶65 Redacted Entry #199 (April 17, 2015), timestamped during Plaintiff's RESPA-compliant QWR week, states: "Suppress call log. No output. No POC allowed." This entry confirms a conscious refusal to fulfill federally mandated disclosure duties.

¶66 These entries reflect more than negligent redaction; they document affirmative acts of litigation subversion intended to mislead Plaintiff, violate time-sensitive obligations under 12 C.F.R. § 1024.36(d), and ensure that exculpatory evidence never entered the court's evidentiary record.

¶67 Audit logs reveal that servicing agent "SampatP" (Praveen Sampat) accessed Plaintiff's file at least 13 times during litigation holds—each time logging borrower communication blocks, toggling "mod status" codes, and invoking redaction tools to mask servicing decisions.

¶68 System comparisons between 2017 disclosures and a 2023 post-closure servicing copy show whole fields excised, including entries tagged "MODAPPROVED," "REOPAYOFF," and "DECEASED OVERRIDE"—material omissions that concealed servicing fraud.

¶69 The hidden logs further reveal that Plaintiff was never told the true terms of any proposed modification—balloon payments were engineered, income was

imputed without documentation, and interest capitalization inflated balances—all absent regulatory notice.

¶70 An entry tagged "Final Approval," dated April 10, 2015, classified the modification as "In Force," despite the absence of Plaintiff's consent, signature, or receipt of any such agreement—constituting material misrepresentation in violation of TILA's disclosure rules.

¶71 Loan ledger audit trails show that "Final Payoff" values were recalculated on four occasions between February and April 2015—each time introducing artificial changes to interest rates, amortization schedules, or signature fields—none of which were disclosed during formal litigation phases.

¶72 Redacted Entry #200, labeled "Lien Reinstated," was entered while Plaintiff's lien dispute remained unresolved, fabricating a reinstatement using retroactive balances and data drawn from concealed, non-responsive modification entries.

¶73 None of these records appeared in any court-mandated discovery release, PSAP-authorized pleading, or Rule 26(f) production—thereby contaminating the procedural integrity of the entire case and erasing Plaintiff's statutory claims from the formal case chronology.

¶74 These cumulative redactions, metadata manipulations, and disclosure refusals meet the legal standard of fraud upon the court under Rule 60(b)(3) and trigger severe spoliation sanctions under Rule 37(e)(2), given the clear intent to withhold electronically stored information (ESI) crucial to Plaintiff's claims.

¶75 Plaintiff formally incorporates this evidentiary record into the operative complaint, supporting claims of systemic fraud, statutory breach, and concealment constituting a racketeering enterprise under 18 U.S.C. § 1962, as substantiated by the exhibits annexed hereto.

¶76 On January 15, 2015, Defendants internally classified Plaintiff's first formal hardship request as a "Home Retention Call" with references to prior modification attempts. This entry, material to Plaintiff's continuity-of-contact rights under RESPA, was later redacted from litigation disclosures, obstructing Plaintiff's ability to validate his escalation efforts.

¶76A The factual allegations in ¶15 through ¶75 are substantiated and organized in Exhibits A through E, which provide chronological servicing log entries, internal modification approvals, statutory response violations, and named predicate acts under 18 U.S.C. §§ 1341, 1343, 1344, 1503, and 1962. These exhibits demonstrate the methodical suppression and manipulation of servicing records used to falsely justify foreclosure actions and lien enforcement under color of authority.

¶77 On February 24, 2015, at 11:26:52 PM, servicing agent Minahshi Littom entered a 15-line redacted record that concluded a chain of concealed modification activity, including:

- An internally approved "Straight Discount Balloon Manual Modification" with a $127,551.78 payoff balance

- A prior payoff quote issued to deceased borrower Priscilla L. Thomason

- A mod flag annotated "Litigation Hold – No notice pending" (Entry #194)

- Plaintiff's pending QWR dated February 17, 2015

This entry—never disclosed—likely functioned as the operational terminus for concealment, encompassing litigation routing, mod voiding, or lien reclassification. Its timing and content support claims under Rule 60(b)(3) and FIRREA.

77A . As established through Exhibits A through E, Defendants systematically concealed internal servicing activity between February and April 2015, including multiple phantom modifications, redacted communications, and use of the deceased borrower's identity to obstruct Plaintiff's RESPA rights. These entries—created during active litigation, regulatory inquiries, and pending QWR deadlines—formed the basis for foreclosure, lien reinstatement, and denial of successor access. The coordination among agents, attorneys, data handlers, and institutional actors evidence not only intentional suppression but a structured pattern of enterprise conduct supporting predicate violations under 18 U.S.C. §§ 1341, 1343, 1344, 1503, 1512, and 1962.

¶77B The following timeline snapshot provides an overview of the fraudulent enterprise's structure, continuity, and impact across two decades. This chronology

captures predicate acts, concealment strategies, and the sustained lack of standing that underlies Defendants' repeated efforts to enforce a lien they were not legally entitled to hold:

¶77C Exhibit F – FIRREA Trigger Grid: The following table outlines violations of 12 U.S.C. § 1833a (FIRREA) stemming from false certifications, forged modification filings, and suppression of servicing data by federally regulated financial institutions. Each act meets the threshold for civil penalties under § 1833a(c)(1) and demonstrates how institutional fraud was committed through systems overseen by the FDIC and GSE-backed platforms. (See in final appendix as Exhibit F)

**PROCEDURAL SUPPRESSION & DISCOVERY MISCONDUCT**

¶78 On April 15, 2015, counsel for Ocwen, Colin T. Dean, responded to Plaintiff's request for call logs by asserting attorney-client privilege and including selectively redacted excerpts. The letter invoked a fifteen-day extension delay and failed to explain redactions involving standard servicing personnel, reinforcing Plaintiff's argument under 12 U.S.C. § 2605(k) that these communications were not privileged.

¶79 On May 13, 2015, Ocwen sent Plaintiff a letter—previously undisclosed during litigation—formally releasing the second mortgage debt and enclosing a 1099-C Cancellation of Debt form. This document, withheld during active foreclosure defenses, raises material questions concerning lien treatment and modification falsification.

¶80 On July 14, 2015, Plaintiff filed Rule 26 and RESPA-based motion to compel disclosure of redacted servicing records, specifically seeking the reason for the discharged second mortgage and objecting to attorney-client privilege assertions over servicing call logs. The motion explicitly challenged the legitimacy of redacting borrower communications containing the script ID: "NON-AUTHORIZED."

¶81 Plaintiff maintains that these redactions—particularly entries where servicing agents identified him as a "non-authorized caller"—were procedurally and substantively improper under 12 U.S.C. § 2605(k), as the communications were with servicing agents and related to loss mitigation.

¶82 Despite multiple filings, full and unredacted call logs were never produced. The withheld records remain central to Plaintiff's ongoing claims of obstruction, denial of statutory access, and misrepresentation during federally protected QWR response periods.

¶83 Entry #200, logged on April 20, 2015, stated "Lien Reinstated"—a critical event predicated entirely upon redacted and undisclosed modification terms, which were retroactively entered and concealed during every court-supervised discovery and PSAP exchange. This entry supports Plaintiff's claims under FIRREA (12 U.S.C. § 1833a) and Rule 60(b)(3).

¶84 Metadata extracted from the servicing environment confirms that servicing agent "SampatP" accessed Plaintiff's account 13 times during litigation holds, toggled mod status fields, and invoked user mask settings to redact borrower identity fields. Comparative log audits from 2017 (during litigation) and 2023 (post-closure) confirm that entire fields—such as "MODAPPROVED," **"DECEASED OVERRIDE," and "REOPAYOFF"—were withheld from Plaintiff and the court.**

¶85 These acts, presented with documentary validation in Exhibits A–E, establish a sustained pattern of predicate conduct including mail fraud (18 U.S.C. § 1341), wire fraud (§ 1343), bank fraud (§ 1344), obstruction of justice (§ 1503), and false identity use (§ 1028A), each committed in furtherance of a racketeering enterprise under 18 U.S.C. § 1962(c).

¶86 Servicing logs from 2015 to 2019 include call outcomes bearing scripted annotations such as:

(a) "Talked with non-authorized caller. Did not disclose account-specific information."

(b) "Customer requested information regarding Second Mortgage, advised unable to locate."

(c) "Call disconnected before verification. Account update pending."

These remarks systematically omitted borrower-facing disclosures and failed to document loss mitigation inquiries—each of which constituted Qualified Written

Requests under 12 U.S.C. § 2605(e), triggering statutory obligations that were knowingly disregarded.

¶87 Plaintiff submitted formal discovery demands and court filings requesting these call logs in native, unredacted format, emphasizing that borrower-servicing communications involving non-attorney agents are not protected under the attorney-client privilege doctrine. Defendants refused compliance and failed to produce a privilege log under Fed. R. Civ. P. 26(b)(5)(A), thereby obstructing adjudication of statutory claims.

¶88 Even after the Eleventh Circuit remanded the case for further adjudication of Plaintiff's RESPA claims, Defendants declined to supplement the call logs with the full servicing matrix or provide a sworn certification of data integrity, in clear violation of discovery norms and judicial directives.

¶89 As a result, Plaintiff was deprived of the ability to trace misapplied payments, identify unauthorized fees, and challenge falsified account status designations that formed the basis of foreclosure actions.

¶90 Servicing data reveals decision codes such as "manual status override," "default escalation," and "internal review for charge-off" applied without borrower notification, and without corresponding documentation in QWR responses.

¶91 Internal workflow metadata shows payments rerouted into suspense accounts and lien balances recalculated based on internally overridden figures—contradicting Ocwen's public certifications and foreclosure representations.

¶92 In July 2015, a system entry flagged the second mortgage as "in review for discharge," aligning with Ocwen's issuance of a 1099-C form. Despite this, no institutional affidavit or testimony was ever filed to confirm discharge, leaving the foreclosure record materially misleading.

¶93 The discharge was never acknowledged in litigation, and no internal records or communications explaining the rationale behind the lien release were disclosed. Plaintiff was thus obstructed from raising defenses or claims based on lien cancellation or fraudulent inducement.

¶94 Logs confirm Plaintiff made at least 12 documented requests regarding hardship assistance, second lien resolution, or loss mitigation between 2011 and

2016. None of these prompted a standardized written response as required under 12 C.F.R. §§ 1024.36 and 1024.41.

¶95 Servicing entries responding to Plaintiff's complaints with phrases like "request ignored" or "no action taken" illustrate a systematic refusal to investigate borrower inquiries in violation of RESPA's investigatory and response duties.

¶96 Each foreclosure notice, loan acceleration, or legal filing occurred during a period where internal servicing documentation had been redacted or withheld, supporting the conclusion that Defendants concealed responsive material to facilitate enforcement without disclosure.

¶97 Discrepancies exist between call logs, RESPA submissions, FDCPA correspondence, and Deutsche Bank foreclosure affidavits—including at least five materially conflicting payment default dates, varying by more than 90 days.

¶98 Defendants never cured these discrepancies or provided a sworn statement affirming the accuracy or completeness of produced call logs, mortgage statements, or modification records.

¶99 These omissions form the basis of Plaintiff's motion for relief under Fed. R. Civ. P. 60(b)(3) (fraud on the court) and warrant sanctions under Rule 37(b) and Rule 37(e)(2) for intentional suppression of electronically stored information.

¶100 These same facts establish predicate acts under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1512(c) (evidence tampering), each qualifying as racketeering activity under 18 U.S.C. § 1961(1) and supporting Plaintiff's claim of an enterprise under § 1962(c).

¶101 Plaintiff incorporates the suppressed call logs and servicing matrix—cited in Exhibits A through G—by reference, including over 20 ignored borrower inquiries and QWRs made between 2011 and 2019.

¶102 Among these, Plaintiff's specific calls requesting clarification on payment applications, billing discrepancies, and second lien status were met with internal notations like "no update available" or "call dropped—no follow-up," further demonstrating deliberate evasion.

¶103 Call suppression intensified during legal milestones—such as foreclosure notices, lien execution, and summary judgment proceedings—when servicing records would have revealed violations or inconsistencies.

¶104 Between 2015 and 2019, Ocwen repeatedly logged "customer not verified" disclaimers even when Plaintiff had passed authentication protocols. This practice allowed Defendants to terminate calls and avoid providing federally mandated disclosures under 12 U.S.C. § 2605(e)(1)(B).

¶105 Internal routing notes bearing labels such as "Do Not Respond – Litigation Hold" and "Forward to Counsel – Monitoring Activity" demonstrate the conscious use of litigation as a pretext to suppress statutory servicing duties and prevent borrower access to responsive documents.

¶106 These patterns extended to escrow audit omissions, force-placed insurance records, and payoff entries—all of which are explicitly within the scope of RESPA and subject to mandatory investigation under 12 C.F.R. § 1024.35(b).

¶107 Plaintiff reaffirms that these acts form a systemic pattern of suppression and fraud, satisfy the continuity and structure requirements of a RICO enterprise, and materially influenced the court's rulings and ultimate disposition of claims.

¶108 As such, the evidence withheld from Plaintiff warrants immediate reconsideration under Rule 60(b)(3), as well as civil RICO damages under 18 U.S.C. § 1964(c), and imposition of remedial sanctions under Rule 37 and 28 U.S.C. § 1927.

¶109 On April 15, 2015, Ocwen's counsel, Colin T. Dean, responded to Plaintiff's QWR-related correspondence by stating: "As stated in our March 31, 2015, letter, copies of the call history reflecting your communications with Ocwen were not readily available and a fifteen-day extension was claimed. Enclosed you will find the requested call history redacted to remove information protected by the attorney-client privilege." This letter marked the beginning of Defendants' privilege-based redaction rationale, which was later used to shield borrower-servicer communications that fell outside the scope of legitimate legal counsel interactions.

¶110 Subsequently, on July 14, 2015, Plaintiff filed a motion under Federal Rule 26 and RESPA, specifically requesting unredacted call logs and internal servicing data. The motion challenged the redactions and stated: "...there can be no attorney-client privilege in Plaintiff's RESPA Call Logs." The motion emphasized that the second mortgage discharge had not been properly documented and requested full servicing transparency.

¶111 On July 14, 2015, Plaintiff filed a discovery motion under Federal Rule 26 and RESPA requesting complete, unredacted servicing records. The motion specifically challenged Defendants' assertion of privilege over the call log and argued that "there can be no attorney-client privilege in Plaintiff's RESPA Call Logs," as they involved borrower-facing servicing personnel and fell under statutory disclosure requirements.

¶112 Defendants did not supplement the record, did not produce a privilege log as required by Rule 26(b)(5)(A), and never sought in camera review. As a result, Plaintiff was denied access to key service interactions, escalating the evidentiary void that would later be used to secure foreclosure rulings based on an incomplete and curated account history.

¶113 These actions laid the procedural groundwork for continued document suppression, resulting in dispositive rulings based on incomplete servicing records and call logs—thereby impairing judicial accuracy and denying Plaintiff a meaningful opportunity to present a complete case.

## POST-ASSIGNMENT FRAUD AND ENFORCEMENT MISREPRESENTATIONS

¶114 On or about January 27, 2016, Defendants executed and recorded a "Corrective Assignment of Mortgage," purporting to transfer interest from MERS as nominee for IndyMac Bank, F.S.B. to Deutsche Bank National Trust Company (DBNTC) as Trustee for the IndyMac INDX Mortgage Trust 2005-AR14. This assignment falsely referenced a 2005 security instrument but misrepresented the chain of titles and omitted Plaintiff's inheritance and successor claims. (Exhibit I)

¶115 The assignment listed Erica Johnson-Seck—long discredited in multiple foreclosure fraud cases—as Vice President for both MERS and One West Bank, despite no documentation confirming her authority in either role at the time of execution. Her dual agency presented a facial conflict and raised questions of robo-signature activity and fraudulent attestation. (Id.)

¶116 The document was notarized in Orange County, California, yet was filed in Alabama probate records as if executed in conformity with local jurisdictional standards. No affidavit of authority or corporate resolution was attached, and the record failed to meet the requirements under Ala. Code § 35-4-50 and § 35-4-62. (Id.)

¶117 At the time of recording, Plaintiff had already submitted heirship documentation to Ocwen and the court confirming ownership rights pursuant to Ala. Code § 35-4-7 and Regulation X. Despite this, the assignment was filed under the deceased borrower's name and omitted any notation of successor interests. (See also ¶26, Exhibit D)

¶118 Between February and March 2016, internal notes (subsequently redacted from servicing logs) referenced DBNTC's status as "Trustee for enforcement purposes only" and flagged "assignment may not support lien reinstatement," underscoring the institution's knowledge of standing issues. These entries were never produced during litigation. (Exhibit J)

¶119 On May 10, 2016, while Plaintiff was finalizing his PSAP-assisted amended complaint, Defendants initiated non-judicial foreclosure correspondence based on the January 2016 assignment. This conduct suppressed Plaintiff's ability to challenge the validity of the assignment contemporaneously and denied him access to procedural protections.

¶120 The fabricated assignment and resulting foreclosure acts form a direct part of Plaintiff's claims under Rule 60(b)(3), Rule 60(d)(3), and Counts V, VII, XXIII, and XXV of this Complaint. The assignment constitutes a false record affecting real property rights, performed knowingly and with intent to obstruct litigation outcomes.

¶121 Following the January 2016 "Corrective Assignment," Plaintiff conducted post-recording audits of MERS (Mortgage Electronic Registration Systems) to

assess the chain of title and beneficiary registration. The public-facing MERS MIN (Mortgage Identification Number) query for Plaintiff's loan returned no active registration under either MERS or Deutsche Bank National Trust Company (DBNTC), contradicting the assignment's claim of current beneficiary status.

¶122 Internal servicing logs, as later reconstructed through FOIA and audit review, revealed that Ocwen marked the loan as "disassociated from MERS registry" as early as 2014—despite continuing to process enforcement actions in MERS' name. This inconsistency violates MERSCORP system rules, investor notification policies, and undermines the assignment's facial validity.

¶123 Further investigation showed that MERS had not authorized the corrective assignment in writing, and no certifying officer had filed a valid corporate resolution empowering Erica Johnson-Seck to act on its behalf for the transaction in question. These omissions rendered the document statutorily defective under Alabama property law and federal evidentiary standards.

¶124 From 2016 through at least 2019, DBNTC repeatedly cited the invalid assignment as the foundation for non-judicial enforcement actions, lien reinstatement communications, and reporting to federal systems. These acts constitute knowing use of false records and materially support Plaintiff's claims under 18 U.S.C. §§ 1001 and 1962(c), as well as 12 U.S.C. § 1833a (FIRREA).

¶125 Plaintiff names Erica Johnson-Seck as a defendant in her individual and representative capacity, based on her execution of materially false documents including the 2016 Corrective Assignment. Johnson-Seck's known history as a robo-signatory in foreclosure fraud cases, paired with her role in Plaintiff's case, reflects a pattern of fabricating records that impair title, obstruct litigation, and defraud courts. Her conduct forms a direct basis for liability under RICO and supports Plaintiff's request for treble damages and injunctive relief.

¶126 Plaintiff further identifies an additional recorded assignment of mortgage executed or notarized by Cynthia W. Williams, an attorney with Sirote & Permutt, P.C., purporting to convey interest in the subject property on behalf of MERS or its nominee-assignees. This assignment conflicts with the previously recorded January 2016 "Corrective Assignment" signed by Erica Johnson-Seck and fails to explain or reconcile standing under the FDIC Receivership framework.

¶127 There is no record that any party to either assignment exhausted administrative remedies required under 12 U.S.C. § 1821(d) for claims derived from IndyMac assets. The existence of multiple, inconsistent assignments—executed by agents lacking clear authority—constitutes strong evidence of title laundering, forgery of judicial instruments, and intentional clouding of public records in furtherance of unlawful lien enforcement. These events support Plaintiff's claims under (Fraud on the Court), (FIRREA), (Forgery), and (Declaratory Relief for Title Nullification).

¶128 On March 1, 2016, Magistrate Judge Moorer referred Plaintiff to the Pro Se Assistance Program (PSAP), initiating a process that would significantly shape—and ultimately limit—the scope of Plaintiff's federal claims. (Doc. 76)

¶129 One day later, the court denied Plaintiff's motions to compel as "premature," stalling access to discovery on loan records and redactions critical to exposing servicing misconduct. (Doc. 77)

¶130 Plaintiff formally submitted PSAP participation forms on April 12, 2016 (Docs. 82, 83), enabling limited drafting assistance through then Attorney Andrew Brashier.

¶131 On May 16, 2016, Brashier withdrew from the docket, disclaiming any formal representation while confirming that he had assisted in drafting the amended complaint. (Doc. 86)

¶132 The amended complaint, submitted June 13, 2016 (Doc. 89), omitted claims under FIRREA, TILA, and key redaction-based allegations—including those related to Qualified Written Requests (QWRs). These omissions materially narrowed the record.

¶133 The court accepted the amended complaint on June 30, 2016 (Doc. 92), and treated it as a final pleading, cutting off Plaintiff's subsequent attempts to amend or supplement.

¶134 Between 2017 and 2023, Plaintiff obtained redacted servicing logs through FOIA and internal servicing audits. These logs revealed deliberate suppression of borrower inquiries, redacted escalation notes, and misclassified call entries under placeholders like "Caller Not Verified" and "No Action Taken." (See Exhibit G)

¶135 Despite repeated QWRs issued from 2011 through 2019, Ocwen (as servicer for Deutsche Bank) failed to provide borrower-facing notes, payoff histories, or internal servicing records, in violation of 12 U.S.C. §§ 2605(e), 2607 and 15 U.S.C. §§ 1692g(b), 1692f.

¶136 When ordered to produce documents in court, Defendants asserted vague privilege claims without submitting a privilege log, further obstructing Plaintiff's statutory access rights under 12 C.F.R. §§ 1024.35–1024.38.

¶137 These omissions created an evidentiary vacuum that Deutsche Bank used to obtain foreclosure judgments and ejectment orders based on a distorted, incomplete record.

¶138 The resulting claim suppression during the PSAP drafting phase—combined with Ocwen's continued redactions and obstruction—form the factual core of Plaintiff's Rule 60(b)(3) and 60(d)(3) allegations of fraud on the court and misrepresentation.

¶139 On June 30, 2016, the court granted Plaintiff's Motion to Amend Complaint (Doc. 92), allowing the PSAP-assisted pleading to proceed. However, the amended complaint omitted statutory claims under FIRREA, QWR-related RESPA violations, and redaction-based misconduct—despite an existing factual foundation.

¶140 The result was a truncated record that preserved surface-level causes of action but excluded the most punitive and enforceable federal claims, limiting both scope and potential damages.

¶141 From July 2016 through April 2017, Plaintiff submitted procedural motions—including for contempt, reconsideration, and amendment—but the court refused to reopen discovery or authorize supplementation of omitted claims.

¶142 On April 14, 2017, Judge Moorer issued a Rule 26(f) Scheduling Order (Doc. 114), reopening limited discovery and setting an April 28, 2017, deadline to file a discovery plan.

¶143 On May 5, 2017, the court issued a Discovery Order (Doc. 116), establishing deadlines: September 5, 2017, for discovery cutoff and October 16, 2017, for dispositive motions.

¶144 In response, Defendants filed multiple Notices of Discovery Service—but deliberately omitted key documents, including redacted servicing entries, payoff quotes, and modification approval records.

¶145 Plaintiff filed motions to stay discovery and compel production, as well as to join third parties involved in modification suppression and lien fabrication schemes. (Docs. 118, 151–153)

¶146 On May 16, 2017, the court denied Plaintiff's motion to stay discovery (Doc. 119), requiring litigation to continue without access to redacted records or third-party disclosures.

¶147 On September 5, 2017, Plaintiff submitted discovery notices, a motion to join parties, and a detailed witness list naming Ocwen servicing personnel linked to redacted entries. (Docs. 151–153)

¶148 Eva Bank and Defendants objected to the witness list and additional discovery, and filed motions to exclude any mod suppression claims or redacted servicing evidence. (Docs. 162, 166–167).

¶149 On September 21, 2017, Plaintiff's Motion for Discovery was denied (Doc. 168), conclusively barring redaction- and modification-related misconduct from judicial reviews during the original proceedings.

¶150 On April 14, 2017, Judge Moorer entered a Rule 26(f) Scheduling Order (Doc. 114), reactivating discovery and setting an April 28 deadline for the discovery plan.

¶151 On May 5, 2017, the court issued a formal Discovery Order (Doc. 116), setting September 5, 2017, as the discovery cutoff and October 16, 2017, as the dispositive motion deadline.

¶152 Defendants filed multiple Notices of Discovery Service but failed to include redacted servicing entries, payoff logs, or modification approvals—all of which were known to be responsive.

¶153 Plaintiff filed motions to stay, compel discovery, and join third parties involved in modification suppression and lien fabrication (Docs. 118, 151–153), seeking full disclosure.

¶154 On May 16, 2017, the court denied Plaintiff's motion to stay discovery (Doc. 119), denying relief before any full record review had occurred.

¶155 On September 5, 2017, Plaintiff submitted renewed discovery notices, party joinder motions, and a detailed witness list naming servicing employees tied to suppressed records (Docs. 151–153).

¶156 Eva Bank and other Defendants objected to these filings (Docs. 162, 166–167) and moved to exclude all references to redactions or mod-related discovery.

¶157 On September 21, 2017, the court denied Plaintiff's Motion for Discovery (Doc. 168), foreclosing all further reviews of suppressed servicing evidence.

¶158 These procedural rulings effectively blocked the factual entry of claims tied to FIRREA, RESPA, and TILA misconduct—despite their presence in underlying servicing records.

¶159 post-litigation, in 2023, Plaintiff obtained over 200 internal servicing log entries through FOIA and direct servicing audit requests—each with metadata, timestamps, and employee IDs.

¶160 These redacted entries spanned 2014–2016 and directly overlapped with Plaintiff's QWR submissions, discovery motions, and procedural objections—corroborating claims previously struck or excluded.

¶161 At least 24 entries involved undisclosed mod approvals, quote revisions, or internally acknowledged payment disputes, none of which were provided to Plaintiff or the court.

¶162 Several entries maintained a dual-track persona, internally referring to Plaintiff by name while externally labeling communications to the deceased borrower—effectively discrediting Plaintiff's heirship without due process.

¶163 Internal servicing notes included: "Do not disclose," "Litigation QWR hold," "Suppress log," and "Use original borrower name"—showing intentional concealment.

¶164 Metadata review confirms "user masks" were applied to entries dated January through June 2015—precisely during Plaintiff's QWR window and PSAP filing assistance.

¶165 Entry #194 (Mar. 20, 2015): "Alt Doc Package prepared. Litigation holds active. No notice pending." No such package was produced or disclosed in RESPA responses.

¶166 Entry #198 (Apr. 14, 2015): "Continue using original name. Successor not validated yet." This entry was made after Plaintiff had provided heirship documentation to the servicer and court.

¶167 Entry #199 (Apr. 17, 2015): "Suppress call log. No output. No POC allowed." This was during Plaintiff's active QWR and while prose pleadings sought those communications.

¶168 System logs confirm violations of 12 C.F.R. § 1024.36(d)—regarding timely and complete responses to borrower requests—and directly implicate RESPA and TILA compliance.

¶169 Document author "Sampat P." accessed the file 13 times during litigation holds, modifying data fields while redactions were applied—an act traceable via metadata timestamps.

¶170 Screenshot comparisons from litigation vs. post-litigation logs show entire fields removed or suppressed during disclosure—including tags like "MODAPPROVED," "DECEASED OVERRIDE," and "FINAL PAYOFF."

¶171 Plaintiff's modification terms were materially different from internal records, involving balloon terms, unauthenticated income assumptions, and retroactive interest imposition—all absent from disclosed documents.

¶172 One record dated April 10, 2015, was labeled "Final Approval / In Force," despite Plaintiff never receiving or executing any such agreement. This entry triggers Truth-in-Lending disclosure failures.

¶173 "Final Payoff" fields were modified on at least four dates (Feb–Apr 2015), showing shifting amortizations, masked signer fields, and falsified balances—none of which were disclosed.

¶174 Entry #200 was backfilled during lien dispute review and labeled "Lien Reinstated"—a retroactive fabrication that distorted Plaintiff's challenge to title and debt enforceability.

¶175 All of these suppressed entries were absent from the original Rule 26(f) disclosures, PSAP-assisted pleadings, and discovery responses—rendering the litigation record artificially constrained and materially incomplete.

¶176 On March 26, 2018, the court partially granted Defendants' motion to dismiss statutory claims under 42 U.S.C. §§ 1981, 1982, and 3605 (Fair Housing Act), limiting the scope of review for post–March 3, 2013, modification events.

¶177 On June 28, 2018, Deutsche Bank National Trust Company (DBNTC) accelerated the mortgage and initiated a nonjudicial foreclosure, despite its knowledge that SSGT Bre Leonna Thomason—co-owner of the property—was an active-duty servicemember entitled to protection under the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. § 3953.

¶178 Backdated to July 14, 2015, Plaintiff had filed a motion under Federal Rule 26 and RESPA seeking disclosure of redacted call logs and internal servicing data withheld by Ocwen Loan Servicing, LLC.

¶179 The motion stated that redacted logs could not be shielded under privilege, as they pertained to borrower communications and servicing—not protected attorney work product.

¶180 Included among the redacted entries were notations such as: "non-authorized 3rd Party Call… Talked with Mr. Thomason. Did not disclose account-specific information. SCRIPT ID: NON-AUTHORIZED."

¶181 Plaintiff asserts these redactions violated 12 U.S.C. § 2605(k), since the conversations involved material RESPA communications and the redactions prevented Plaintiff from rebutting key claims during foreclosure.

¶182 Despite repeated requests, those logs were never fully disclosed. Their continued suppression remains central to Plaintiff's claims of evidentiary obstruction and litigation concealment.

¶183 On November 15, 2018, the Eleventh Circuit dismissed Plaintiff's appeal in Case No. 18-11764-J for failure to prosecute; the dismissal was without prejudice.

¶184 On December 7, 2018, Plaintiff executed a Quitclaim Deed, transferring interest in the subject property to himself, Norcisse Prisca Thomason, and SSGT Bre Leonna Thomason.

¶185 On April 8, 2019, a private law firm filed a Notice of Removal to federal court purporting to represent the FDIC as receiver for IndyMac Bank—without submitting a Legal Services Agreement or supporting authority.

¶185A On April 8, 2019, the FDIC removed Steven Clayton Thomason's state action regarding his mortgage with IndyMac Bank F.S.B. ("IndyMac Bank") to the United States District Court for the Middle District of Alabama. (Exhibit 1.)

¶185B In its Notice of Removal, the FDIC asserted that as Receiver, it had succeeded all rights, titles, powers, and privileges of IndyMac Bank under 12 U.S.C. § 1821(c)(3)(A). (Exhibit 1, ¶5.)

¶185C The FDIC further stated: "Any civil suit in which the FDIC, in any capacity, is a party is deemed to arise under the laws of the United States." See 12 U.S.C. § 1819(b)(2)(A); Castleberry v. Goldome Credit Corp., 408 F.3d 773, 781 (11th Cir. 2005).

¶185D When the FDIC is a party, federal courts have original jurisdiction over the entire action, even if the FDIC is later dismissed. See Pilot Dev., LLC v. Capital South Bank, 2011 WL 13286389 (N.D. Ala. May 31, 2011); Buchner v. FDIC, 981 F.2d 816, 819 (5th Cir. 1993).

¶185E FDIC asserted: "Because FDIC-R is a party to the State Court Action, the entire case must be removed to federal court." (Exhibit 1, ¶10.)

¶185F The Eleventh Circuit joined other circuits in holding: "Jurisdiction over claims against non-FDIC defendants is retained, even if FDIC is later dismissed." Lindley v. FDIC, 733 F.3d 1043, 1058 (11th Cir. 2013).

¶185G Where FDIC is a party, the burden shifts to those challenging jurisdictions. See Lindley, 733 F.3d at 1050–51; Wiggins v. Ellis, 2:12-cv-02705-SGC (N.D. Ala. Feb. 12, 2021).

¶185H FIRREA overrides the well-pleaded complaint rule—any case involving FDIC arises under federal law. See Lindley, supra; Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101–73, § 209.

¶185I Jurisdiction remains with the federal court even after FDIC exits. See Heritage Bank of the S. v. Savoy Group, No. 3:13cv339-WHA (M.D. Ala. Sept. 16, 2013).

¶185J FDIC, as receiver, initiated federal jurisdiction under FIRREA at case inception.

¶185K That jurisdiction remains intact over all related state court actions presently asserted by DBNTC.

¶185L FIRREA governs limitations: 12 U.S.C. § 1821(d)(14)(A)(i) imposes a six-year bar on contract claims, including mortgage foreclosure. See Smith v. FDIC, 61 F.3d 1552 (11th Cir. 1995).

¶185M On March 28, 2011, DBNTC accelerated the mortgage of deceased borrower Priscilla L. Thomason, initiating foreclosure proceedings.

¶185N Over seven years later, on June 28, 2018, DBNTC notified Thomason of a sale set for July 31, 2018—outside the six-year limitation window.

¶185O DBNTC's foreclosure notice, filed beyond FIRREA's statutory bar, violates 12 U.S.C. § 1821(d)(14)(A)(i).

¶185P On November 4, 2014, Ocwen released Plaintiff from any mortgage obligation on the subject property. (Exhibit 2.)

¶185Q Therefore, DBNTC's foreclosure efforts lack legal foundation and must be dismissed under FIRREA, 28 U.S.C. § 2415(a), and 12 U.S.C. § 1821(d)(14).

¶185R Bre Leonna Thomason and Norcisse Prisca Thomason are joint owners of the subject property.

¶185S Alabama law requires joinder of all persons with a title interest for any action affecting real property. See Johnston v. White-Spunner, 342 So.2d 754 (Ala. 1977).

¶185T Failure to join indispensable parties renders proceedings void. See Campbell v. Taylor, 159 So. 3d 4 (Ala. 2014); Davis v. Burnette, 341 So.2d 118 (Ala. 1976).

¶185U Co-owners must be joined to ensure a fair trial and protect constitutional due process. See Jacobs v. Murphy, 245 Ala. 260, 16 So.2d 859 (1944); Culley v. Elford, 187 Ala. 165 (1914).

¶185V As indispensable parties, Bre and Norcisse must be joined to any action brought by DBNTC affecting title or possession.

¶186 This unauthorized 2019 FDIC removal paused default proceedings in state court. Although remanded, Defendant exposure was nullified, and court deadlines were disrupted.

¶187 On May 20, 2019, Judge Myron H. Thompson denied Plaintiff's Rule 60(b)(6) motion for relief from judgment without prejudice. (See Appendix A, pp. 1–6.)

¶188 On March 18, 2020, DBNTC notified Plaintiff of an impending foreclosure sale scheduled for April 21, 2020.

¶189 On April 13, 2020, Plaintiff filed a new complaint in CV-2023-900827.00 in Montgomery County Circuit Court, seeking to halt foreclosure and raise new claims.

¶190 On April 19, 2020, SSGT Bre Leonna Thomason, Alabama National Guard member and co-owner of the subject property, was again ordered to active-duty service.

¶191 Pursuant to the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. § 3953, DBNTC was prohibited from initiating foreclosure against property co-owned by an active-duty service member without first obtaining a court order. No such order was ever entered.

¶192 SSGT Thomason had been on continuous active duty since March 2018 and was entitled to full protections under the SCRA, including post-deployment extension periods.

¶193 On May 24, 2018, the Economic Growth, Regulatory Relief, and Consumer Protection Act was enacted, permanently extending the SCRA's post-service foreclosure protection to one year for nonjudicial proceedings.

¶194 The initiation of foreclosure proceedings in June 2018 by DBNTC, without prior court approval and in violation of federal protections, constituted a statutory breach and structural due process failure.

¶194A On May 20, 2022, in case 2:22-CV-00287, Deutsche Bank National Trust Company's attorney Joseph V. Ronderous filed a false affidavit asserting that SSGT Bre Leonna Thomason was not in the military. This filing was made during active-duty service and directly violated protections under the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. § 3953. The affidavit was used to circumvent judicial foreclosure requirements and suppress statutory defenses.

¶194B On August 30, 2018, Altisource produced a Foreclosure Information Report (Exhibit 41) identifying critical defects in DBNTC's mortgage and title posture. The report revealed omissions in the legal description, survivorship conflicts, and absence of probate documentation. These defects undermine DBNTC's standing and demonstrate constructive notice failures, supporting claims of title laundering and foreclosure fraud.

¶194C During a court proceeding before Judge Hardwick, transcript excerpts (Exhibit 58) show judicial confusion over ownership structure and jurisdiction. Judge Hardwick acknowledged federal litigation and questioned the tenancy status of the parties. His statements support Plaintiff's argument that federal venue was proper and that state adjudication proceeded in violation of 28 U.S.C. § 1446(d).

¶194D On August 22, 2023, DBNTC opposed Plaintiff's motion to recuse Judge Brooke Reid, despite documented bias and prior rulings issued during active federal appeal posture. The filing ignored allegations of procedural suppression and judicial conflict, reinforcing enterprise coordination to preserve void orders and obstruct remedy.

¶194E On August 28, 2023, DBNTC admitted in federal filings that neither Clayton nor Bre Leonna Thomason were parties to the Note, and that MERS assigned the mortgage post-mortem. This admission confirms title transfer occurred outside probate and supports Plaintiff's claims of standing denial and FIRREA violations.

¶194F DBNTC acknowledged mortgage acceleration on June 28, 2018, and referenced Plaintiff's quitclaim deed dated December 7, 2018. Despite this, DBNTC failed to join indispensable co-owners and continued foreclosure proceedings, violating due process and statutory joinder requirements under Rule 19.

¶194G DBNTC recorded its foreclosure deed on October 2, 2021, after Plaintiff's federal filings and during SSGT Thomason's active-duty service. The timing violated SCRA protections and demonstrated disregard for federal tail coverage under 50 U.S.C. § 3953.

¶194H DBNTC opposed SSGT Thomason's Motion to Intervene by citing procedural delay and res judicata, while ignoring her military status, co-ownership, and newly discovered evidence. The filing reflects enterprise efforts to suppress judicial reconsideration and bar statutory redress.

¶194I DBNTC asserted that Plaintiff's foreclosure-related claims were barred under res judicata, citing prior litigation while omitting predicate violations and post-judgment evidence. The filing misrepresented the scope of prior rulings and attempted to preclude intervention based on outdated records.

¶194J DBNTC argued judicial estoppel and claimed that SSGT Thomason's interests were adequately represented in prior suits. The filing ignored her exclusion from litigation, military protections, and co-owner status, reinforcing procedural suppression and due process violations.

¶194K DBNTC opposed intervention under Alabama Rule 24, asserting untimeliness and lack of property interest. The filing disregarded survivorship title, active-duty status, and statutory protections, misapplying intervention standards to block reconsideration of predicate misconduct.

¶194L DBNTC claimed post-judgment intervention was barred, citing unrelated conservatorship cases. The filing failed to account for military activation timelines, ownership status, and newly surfaced evidence, reinforcing jurisdictional narrowing and concealment.

¶194M DBNTC asserted that Ms. Thomason's equity of redemption expired under Alabama's title theory, ignoring federal protections, lien extinguishment records, and survivorship filings. The argument demonstrates coordinated suppression of judicial remedy and constitutional standing.

¶194N DBNTC invoked the collateral attack doctrine to block foreclosure challenge, citing prior adjudications while omitting new evidence of military

violations, falsified affidavits, and redacted servicing logs. The filing exemplifies procedural shielding and enterprise misconduct.

¶194O The Montgomery County Clerk issued a notice confirming that page 24 of Ms. Thomason's Motion to Intervene was omitted from the record. The error occurred during active suppression efforts and reflected material interference with a federally protected co-owner's filing.

¶194P SSGT Bre Leonna Thomason formally moved to intervene, citing her status as legal heir and co-owner. The motion included military service records and affidavits documenting false filings by DBNTC counsel. These filings establish standing, statutory injury, and predicate violations.

¶194Q SSGT Thomason reaffirmed her active-duty status and cited specific SCRA provisions violated by DBNTC's foreclosure. The filing asserted that no judicial foreclosure was obtained and requested exemplary damages for statutory breach and military rights suppression.

¶194R Plaintiff's eviction and foreclosure sale were executed through suppression, coercion, and enforcement of void rulings. These facts support equitable reversal under Rule 60(b)(4) and findings of fraud upon the court under Rule 60(d)(3).

¶194S Plaintiffs moved to recuse Judge Anderson and return the case to Judge Hardwick, citing oral rulings affirming survivorship title. The motion reinforced judicial continuity and challenged forum manipulation and prejudicial conduct.

¶194T Plaintiffs cited Eleventh Circuit precedent supporting Judge Hardwick's authority to decide foreclosure validity. The filing documented forum shopping, judicial bias, and violations of the Alabama Code of Judicial Conduct, reinforcing predicate misconduct.

¶194U In Document 45, filed December 18, 2023, Plaintiffs submitted a supplemental affidavit clarifying that SSGT Bre Leonna Thomason had been continuously serving in the Alabama National Guard since March 2018, including deployment periods overlapping with foreclosure actions. The affidavit included duty orders, DD-214 excerpts, and command verification letters confirming active-duty status during all relevant litigation phases. This filing reinforces statutory

protections under 50 U.S.C. § 3953 and supports Count I (Military Rights Suppression), Count VII (Obstruction), and Count VIII (Constitutional Remedy).

¶194V In Document 46, Plaintiffs filed a Motion to Strike DBNTC's summary judgment exhibits, citing misrepresentation of prior rulings, omission of lien release records, and failure to disclose IRS Form 1099-C. The motion argued that DBNTC's filings relied on outdated and incomplete records, violating Rule 56(c)(4) and undermining judicial integrity. Plaintiffs requested evidentiary sanctions and judicial notice of omitted documents already recorded in Montgomery County. This filing substantiates (Evidence Suppression), Count (Obstruction), and Count (Venue Manipulation).

¶194W In Document 47, Plaintiffs submitted a timeline chart (Exhibit T) mapping foreclosure action, military service periods, lien release dates, and IRS discharge filings. The chart visually demonstrated that DBNTC's foreclosure posture overlapped with protected military service and post-discharge periods, violating SCRA and federal venue statutes. The timeline was supported by certified records and aligns with predicate filings in ¶194A–¶194T and Exhibits AE, AD, and T. This filing reinforces (SCRA Violation), Count IV (Title Suppression), and (Obstruction).

¶194X In Document 48, DBNTC filed a Notice of Settlement, stating that title transfer negotiations were underway while simultaneously opposing Plaintiff's standing in court. The filing claimed that DBNTC was "working toward resolution" but continued to litigate against Plaintiff's ownership and military protections. This contradictory posture demonstrates enterprise coordination to delay proceedings, suppress remedy, and entrench foreclosure outcomes under color of judicial process. It substantiates (Obstruction).

¶194Y In Document 50, p. 227, the Montgomery County Circuit Court granted DBNTC's unopposed Motion to Continue the April 1, 2024, status conference for 45 days. Signed by Judge James H. Anderson on March 27, 2024, the order postponed proceedings during active settlement posture, reinforcing procedural delay tactics and conflicting ownership narratives. This filing aligns with ¶194X and supports Count for (Obstruction Under Color of Law).

¶194Z In Document 52, Plaintiffs filed a Motion for Judicial Notice of Exhibits AE and AD, including the recorded Release of Mortgage and IRS Form 1099-C. The motion requested formal recognition of lien extinguishment and debt discharge, arguing that DBNTC's foreclosure posture was void ab initio. Plaintiffs cited Ala. Code § 35-4-7, 28 U.S.C. § 2415(a), and 12 U.S.C. § 1821(d)(14), asserting that judicial notice was necessary to prevent continued misrepresentation and procedural abuse. This filing substantiates (Title Extinguishment),(Evidence Suppression), and (Constitutional Remedy).

¶194BA Document 36 (Probate Record – Baldwin County) reflects DBNTC's assertion of asset control via state foreclosure proceedings dated September 29, 2021, culminating in a recorded deed and possession order. The foreclosure deed, recorded October 2, 2021, designates DBNTC as assignee of mortgage and holder of note — positions purportedly transferred through an IndyMac-originated servicing chain subject to FDIC oversight. Notice to Vacate issued under Ala. Code § 6-5-251 and subsequent possession judgment (Feb. 8, 2022) rely on statutory redemption waivers and default posture, not judicial merits. The absence of reconcilable inter-party assignment documentation — including contemporaneous recordings, custodial disclosures, or FHLB participation — casts doubt on standing and venue legitimacy. As with ¶194AZ, this further substantiates Prudential Mootness count and Venue Suppression count by exposing layered conflicts between federal receivership doctrine and state-level dispossession action.

¶194BB Document 39 (Writ of Possession – Montgomery County) confirms that DBNTC, acting as Trustee for INABS 2006-A, secured physical control of 901 Seibles Road via county enforcement mandate. The writ authorizes any law enforcement officer in Montgomery County to restore possession to DBNTC and/or its agents, based on prior foreclosure and possession judgment dated February 8, 2022. Contact listed for McGlinchey Stafford, PLLC indicates transactional coordination, but fails to resolve custodial ambiguity stemming from the FDIC–IndyMac asset trail. No independent verification of inter-party assignment (e.g., FHLB execution, escrow release dates, custodial ledger updates) accompanies this judicial writ. When cross-referenced with ¶194AZ and ¶194BA, this record underscores a pattern of procedural displacement cloaked in venue presumptions. The document's unilateral assertion of DBNTC's standing supports

Counts for – Venue Suppression and Prudential Mootness through enforcement without evidentiary reconciliation or merits-based adjudication.

¶194BC Document 40 (Notice of Removal – Montgomery County) formalizes the Thomason Defendants' invocation of federal jurisdiction, filed September 13, 2023, to remove case 03-CV-2021-000589.00 to the U.S. District Court for the Middle District of Alabama. DBNTC's posture as Plaintiff in this newly initiated state action (03-CV-2023-900827.00) occurs post-possession and post-judgment, suggesting renewed venue assertion despite unresolved jurisdictional conflict. The Notice demands cessation of state proceedings per federal removal protocol, signed pro se and entered into both state and federal dockets. This record substantiates Counts for – Venue Suppression and Prudential Mootness by showing DBNTC's continued reliance on state court instruments after federal forum activation, triggering questions of venue duplication, parallel posture abuse, and court coordination failure.

¶194BC Continued Defendant Thomason asserts that the removal of the underlying case was properly executed under 28 U.S.C. §§ 1442 and 1443, as well as FIRREA's exclusive federal jurisdiction under 12 U.S.C. § 1821(d)(6). These statutes carry a congressional mandate for appellate review and preclude remand once the Eleventh Circuit has accepted jurisdiction. Despite this, Montgomery County Circuit Judge James Anderson, Circuit Judge Brooke Reed, and Chief U.S. District Judge Emily C. Marks proceeded with parallel adjudication in state court, knowingly violating abstention principles and federal supremacy. Judge Marks remanded the case multiple times after appellate acceptance, enabling state court proceedings to continue without jurisdiction. This conduct forced the African American Thomason family to defend their property rights on two fronts simultaneously—state and federal—despite statutory protections. Plaintiff asserts that this dual-forum burden constitutes discriminatory treatment under the Fair Housing Act, 42 U.S.C. § 3604, and procedural obstruction under color of law. This paragraph substantiates Counts for Obstruction and Counts for Constitutional Venue Override and Civil Rights Injury.

¶194BD Document 41 (Memorandum Opinion and Order – Middle District of Alabama) confirms the federal court's acceptance of DBNTC's motion to remand, returning case 2:23-cv-543 to Montgomery County Circuit Court. Despite timely

objections filed by Defendants Steven Clayton Thomason and Bre Thomason, the district judge adopted the magistrate's recommendation under 28 U.S.C. § 636(b)(1), concluding that removal was procedurally insufficient to sustain federal jurisdiction. This order effectively nullifies the removal under case number 03-CV-2023-900827.00, permitting DBNTC to resume state-level litigation post-possession. The sequence reveals a procedural whiplash — federal invocation followed by remand under contested grounds — reinforcing – Venue Suppression and Prudential Mootness. The court's decision marks a pivotal inflection in judicial coordination failure, exposing venue entrenchment despite federal asset control assertions and jurisdictional invocation.

¶194BE Document 41 (continued – Memorandum Opinion and Order) expands the procedural timeline. The court acknowledges Deutsche Bank's June 16, 2023, filing against Clayton Thomason in Montgomery County Circuit Court, seeking ejectment and forfeiture of redemption rights over real property at 901 Seibles Road. Despite naming only Clayton, non-party Bre Thomason filed both a motion to stay (citing active-duty military status) and a motion to intervene on August 30, 2023. These filings triggered a state court hearing scheduled for September 6, 2023 — preceding the September 13 Notice of Removal. The federal document outlines the procedural basis for de novo review, referencing Jeffrey S. v. State Bd. of Educ., 896 F.2d 507 (11th Cir. 1990), and LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), signaling that objections must be specific to trigger full review. The procedural entrenchment and refusal to consider active-duty intervention prior to federal jurisdiction further reinforces – Venue Suppression and Prudential Mootness via preclusion of merit-based resolution and displaced party exclusion.

¶194BF Document 41 (page 3 – Memorandum Opinion and Order) captures procedural interplay between state denial and federal invocation. On September 7, 2023, the Montgomery County Circuit Court entered an order denying motions to stay and intervene by Defendants Clayton and Bre Thomason, citing nonappearance. On September 13, 2023, Defendants filed a pro se "Counter Claim/Complaint" styled as a federal removal under 28 U.S.C. § 1446(b)(1), referencing Bre Thomason's active-duty status and proprietary interest. The court construed this filing as a Notice of Removal but later held it untimely. Defendants contested that conclusion, asserting the secondary removal window under § 1446(b)(3) based on receipt of "motion, order, or other paper" revealing federal

basis. The district court dismissed these objections as conclusory and declined to review under the LoConte and Jeffrey S. standards, thereby reinforcing– Venue Suppression and Prudential Mootness through denial of military-status-based intervention, compressed procedural review, and rejection of secondary jurisdictional triggers.

¶194BG Document 41 (page 4 – Memorandum Opinion and Order) finalizes judicial rejection of Defendants' September 13, 2023, federal removal under 28 U.S.C. § 1446(b)(3), citing lack of evidentiary support for Bre Thomason's Active-Duty Orders. The court held that Defendants failed to specify record location or provide citation for the military service documents, rendering their Notice of Removal procedurally deficient. Despite arguing that said orders constituted "other paper" triggering federal jurisdiction, the court concluded removability was not "ascertainable," and further found that Defendants failed to establish timely receipt of such documents. This evidentiary void undercuts the federal posture and permitted venue reversion. Accordingly, this document reinforces – Venue Suppression and Prudential Mootness through record omission, removal timing compression, and judicial reliance on evidentiary formalism to deny military-status invocation and federal override.

194BH Document 41 (page 5 – Final Memorandum Order) closes federal review of case 2:23-cv-543 by formally granting DBNTC's motion to remand and instructing the Clerk to return the case to Montgomery County Circuit Court. The court overrules Defendants' objections, adopts the magistrate's findings, and concludes that removal under 28 U.S.C. § 1446(b)(3) was procedurally deficient due to lack of citation for the Active-Duty Orders. Signed by Chief Judge Emily C. Marks on November 28, 2023, this order finalizes judicial rejection of federal jurisdiction despite military-status invocation and statutory venue challenge. The document substantiates Count VIII – Venue Suppression and Prudential Mootness by evidencing final reversion to state control, refusal to validate federal displacement, and procedural foreclosure through evidentiary omission.

¶194BI Document 41 (page 6 – Memorandum Opinion and Order) acknowledges that Defendants Steven Clayton Thomason and Bre Leonna Thomason filed objections to the magistrate's recommendation, citing active-duty military status, federal removal rights under 28 U.S.C. §§ 1442 and 1443, and FIRREA's exclusive

jurisdiction under 12 U.S.C. § 1821(d)(6). Despite these objections, the district court adopted the magistrate's findings wholesale, concluding that the objections lacked specificity under LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988). The court declined to address the substance of military service invocation or federal venue claims, instead relying on procedural formalism to justify remand. This paragraph substantiates Count VIII – Venue Suppression and Prudential Mootness by documenting judicial refusal to engage statutory defenses, evidentiary dismissal of military status, and procedural foreclosure of federal jurisdiction.

¶194BJ Document 39 (Magistrate Recommendation – Case 2:22-cv-287-ECM-SMD, dated Feb. 27, 2023) reviews DBNTC's federal complaint seeking ejectment, declaratory judgment, quiet title, and permanent injunction against the Thomasons. The Recommendation cites Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Assoc., 947 So.2d 1031 (Ala. 2006), and Ex parte Green, 58 So.3d 135 (Ala. 2010), to affirm that peaceful possession is a jurisdictional prerequisite for quiet title in Alabama — a standard DBNTC failed to meet, as they had not obtained possession at the time of filing. The court notes DBNTC's reliance on a speculative future writ to retroactively satisfy possession, calling such logic "defective" and signaling strategic forum shopping. The Recommendation proposes remand to Montgomery County Circuit Court, concluding that venue in federal court was improperly manufactured. This order directly supports Count VIII – Venue Suppression and Prudential Mootness by documenting procedural pretense, venue constructionism, and tactical evasion of merit-based federal adjudication.

¶194BK Plaintiff incorporates factual allegations contained in ¶1 through ¶275 and supplements Count I with additional predicate acts arising from the same coordinated enterprise, reflecting concealment, obstruction, and procedural suppression carried out through DBNTC, PHH/Ocwen, and associated legal counsel acting in concert with enabling judicial officers.

¶194BL On May 20, 2022, DBNTC's counsel filed a knowingly false affidavit (¶194A) asserting that SSGT Bre Leonna Thomason was not in active military service, in direct violation of 50 U.S.C. § 3953 and constituting a material misrepresentation under 18 U.S.C. § 1001. This act supported the unlawful continuation of foreclosure proceedings and fraudulent injunction procurement.

¶194BM Chief U.S. District Judge Emily C. Marks granted an injunction to the same attorney based on that false affidavit, without affording Plaintiff any hearing or due process. Judge Marks then remanded the case multiple times to state court, even after Eleventh Circuit appellate jurisdiction had attached. This conduct, detailed in ¶194BA–¶194BC and documented in Exhibit AG, enabled continued enforcement of a void foreclosure posture.

¶194BN Montgomery County Circuit Judge James Anderson, Circuit Judge Brooke Reed, and Chief Judge Marks collectively disregarded statutory jurisdiction under FIRREA (12 U.S.C. § 1821(d)(6)) and federal removal statutes (28 U.S.C. §§ 1442, 1443). Despite federal appellate control, these judicial actors permitted state proceedings to continue, knowingly forcing the African American Thomason family to defend title on dual fronts. This constitutes venue manipulation, deprivation of statutory rights, and discriminatory treatment under 42 U.S.C. § 3604. Recorded Release of Mortgage dated November 19, 2014, by MERS as nominee for Eva Bank, certified by Judge of Probate Steven L. Reed

¶194BO Plaintiff asserts that these judicial enablers formed an ancillary extension of the enterprise described in Count I. Their actions were not random errors but formed part of a pattern designed to suppress evidence, override federal jurisdiction, and unlawfully enforce a time-barred lien. This conspiracy violates 18 U.S.C. § 1962(d) and supports enterprise expansion through judicial complicity and color-of-law enforcement.

**Interference with Civil Rights Under 42 U.S.C. § 1981 — Right to Contract**

¶194BP Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein. This Cause of Action arises under 42 U.S.C. § 1981, which guarantees that all persons within the United States shall have the same right "to make and enforce contracts…as is enjoyed by white citizens." Defendants coordinated conduct—including record suppression, venue override, and foreclosure enforcement post-discharge—constitutes discriminatory interference with Plaintiff's protected contractual rights.

¶194BQ The subject mortgage contract, as well as the Title insurance and service agreements, are valid contractual relationships in which Plaintiff—alongside family co-owners Bre Leonna Thomason and Norcisse Prisca Thomason—participated as protected parties under § 1981. These contracts were materially burdened and distorted by Defendants acting under color of law, culminating in foreclosure posture enforcement after the debt was legally extinguished (¶194AU).

¶194BR Defendants suppressed servicing records (¶194AV), withheld contractual disclosures (¶261), and fabricated default timelines (¶260) in an effort to deny Plaintiff meaningful contractual enforcement and factual parity. Judicial enablers—including Judge Anderson, Judge Reed, and Chief Judge Marks—permitted parallel proceedings without jurisdiction, denied evidentiary hearings, and issued remands and injunctions without federal review, imposing litigation costs and structural disadvantage.

¶194BS Plaintiff and family co-owners—who are African American—were forced to litigate against institutional actors across dual forums, despite removal under 28 U.S.C. §§ 1442 and 1443, and FIRREA's exclusive federal jurisdiction. This treatment reflects disparate procedural burdens not imposed on similarly situated white litigants and violates the equal right to contract enforcement guaranteed under § 1981.

¶194BT Defendants' actions—including falsified affidavits (¶194A), suppressed IRS discharge evidence (¶194AU), and discriminatory venue manipulation (¶194BC)—were carried out intentionally and with knowledge of Plaintiff's race and statutory protections. The interference was not incidental; it was part of a broader pattern of concealment, forum fatigue, and litigation obstruction designed to force foreclosure without due process.

**Title Extinguishment and Federal Preemption of Foreclosure**

¶194BU The foreclosure posture asserted by Deutsche Bank National Trust Company (DBNTC) was procedurally and jurisdictionally invalid. On November 19, 2014, Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Eva Bank, executed a Release of Mortgage for the $12,375 lien recorded against 901 Seibles Road. The release was certified by Judge Steven L. Reed and recorded in the Montgomery County Probate Office (¶194AT). Separately, IRS Form 1099-

C dated November 13, 2014 (¶194AU) confirmed cancellation of the debt in the amount of $12,116.30, with fair market value reported and discharge filed under 26 U.S.C. § 6050P. Despite these extinguishment records, DBNTC initiated foreclosure proceedings in 2021 without judicial foreclosure, without notice to active-duty co-owner SSGT Bre Leonna Thomason, and without joinder of co-owner Norcisse Prisca Thomason—violating 50 U.S.C. § 3953 and Alabama joinder law (¶185T–¶185V). No FDIC administrative procedures were followed, and no federal disposition was obtained, despite the asset's origin in the IndyMac servicing chain and its transfer through FDIC receivership. Title remained clouded and unreleased, with federal retention confirmed in Deutsche Bank v. FDIC (9th Cir.), which held that FDIC-held assets are not subject to state-level foreclosure without federal disposition. These facts demonstrate that DBNTC's title claim was unsupported, the foreclosure judgment was void ab initio, and federal law preempted state-level enforcement under FIRREA.

¶194BV Plaintiff asserts that the subject property—901 Seibles Road—was wrongfully encumbered and foreclosed upon under a void judgment issued without jurisdiction, in violation of FIRREA's exclusive federal asset disposition framework (12 U.S.C. § 1821(d)). The foreclosure posture was statutorily moot as of July 11, 2014, and the lien was extinguished by IRS Form 1099-C (¶194AU), recorded release (¶194AT), and servicing concealment (¶194AV).

¶194BW On or about May 20, 2022, Chief U.S. District Judge Emily C. Marks issued an injunction barring Plaintiff's access to federal court, despite the case having been removed under 28 U.S.C. §§ 1442 and 1443 and accepted by the Eleventh Circuit. This injunction violated FIRREA's anti-injunction provision (12 U.S.C. § 1821(j)), which prohibits any court from interfering with FDIC-controlled assets or receivership functions.

¶194BX Plaintiff seeks declaratory judgment confirming that:

- The foreclosure judgment is void ab initio due to lack of jurisdiction and indispensable party omission (¶185T–¶185V)

- The lien was extinguished by federal discharge and asset disposition

- The injunction issued by Judge Marks violated FIRREA and denied Plaintiff access to court under color of law

**Illegal Entry, Ejection, and Unconstitutional Taking**

¶194BY This Cause of Action arises from Defendants' illegal entry into Plaintiff's home, physical ejection from the property, and unconstitutional taking of real property under a void judgment and extinguished lien. On or about June or July 2025, following a possession order issued by Judge James Anderson—without evidentiary hearing, joinder of indispensable parties, or validation of federal jurisdiction—DBNTC and its agents forcibly entered 901 Seibles Road and removed Plaintiff and his family. The entry was executed under color of law despite the following:

- The underlying foreclosure was conducted in 2021 in violation of the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. § 3953, without notice to active-duty co-owner SSGT Bre Leonna Thomason or co-owner Norcisse Prisca Thomason.

- No judicial foreclosure was obtained, and no FDIC administrative procedures were followed, violating 12 U.S.C. § 1821(d)(6) and the Prudential Mootness doctrine.

- Title remained clouded and unreleased, with the FDIC retaining ownership interest in the Thomason property as documented in the Ninth Circuit's ruling in Deutsche Bank v. FDIC, affirming that FDIC-held assets are not subject to state-level foreclosure without federal disposition.

This ejection occurred under a void order and without constitutional due process, violating:

- The Fourth Amendment's protection against unlawful seizure

- The Fifth Amendment's prohibition on takings without just compensation

- 42 U.S.C. § 1983, for deprivation of federally protected rights under color of law

Unlawful Ejection, TILA Violations, Adverse Possession, and Judicial Omission.

¶194BZ On or about June 2025, agents acting on behalf of Deutsche Bank National Trust Company (DBNTC) and under color of law forcibly entered Plaintiff's residence at 901 Seibles Road, broke down the door, and ejected Plaintiff and family members from the premises. No valid warrant was issued. The

underlying foreclosure judgment was void due to lack of jurisdiction, omission of indispensable parties (SSGT Bre Leonna Thomason and Norcisse Prisca Thomason), and statutory mootness under FIRREA (¶185T–¶185V, ¶194AW–¶194BZ). The ejection was executed pursuant to a possession order issued by Judge James Anderson, despite active federal removal posture and unresolved title claims.

¶194CA This conduct violated Plaintiff's Fourth Amendment right to be secure in his home against unreasonable searches and seizures. The entry and ejection were executed without probable cause, without judicial foreclosure, and in violation of clearly established constitutional protections.

¶194CB The seizure and dispossession of Plaintiff's home also violated the Fifth Amendment's Takings Clause. The property was taken for private use under a void judgment, without just compensation, and in direct violation of Armstrong v. United States, 364 U.S. 40 (1960), which prohibits the government from forcing individuals to bear public burdens that should be borne by the public as a whole.

¶194CC Plaintiff asserts that the ejection and dispossession were racially discriminatory and retaliatory, targeting an African American family under color of law and in violation of the Fair Housing Act, 42 U.S.C. § 3604 (see ¶194BC).

¶194CD In Deutsche Bank Nat'l Trust Co. v. FDIC, 547 U.S. 633 (9th Cir. 2014), the United States Court of Appeals for the Ninth Circuit affirmed dismissal of Deutsche Bank's claims against the FDIC on grounds of prudential mootness. The court held that Deutsche Bank, as a general unsecured creditor under 12 U.S.C. § 1821(d)(11)(A)(iii), had no legal entitlement to relief due to insufficient funds in the receivership estate. The panel rejected Deutsche Bank's argument that its claims were "super priority," confirming that even alleged breaches of governing agreements by the FDIC did not elevate its status. This ruling constitutes binding federal interpretation of FIRREA's creditor hierarchy and mootness doctrine. Plaintiff asserts that this determination is controlling upon all federal courts—including those in Alabama—under principles of national uniformity and statutory supremacy. Accordingly, any foreclosure posture or legal claim asserted by DBNTC against Plaintiff is barred as a matter of law and jurisdiction.

**Truth in Lending Act Violations and Promissory Fraud**

¶194CE Eva Bank and its successors engaged in a coordinated scheme to entrap unsophisticated borrowers into a pooling structure through misrepresented loan terms, concealed servicing transfers, and fraudulent inducement. The subject mortgage was originated under false pretenses, violating the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., and Regulation Z, 12 CFR § 1026, as well as Alabama common law doctrines of judicial admission and partial performance.

¶194CF Eva Bank made representations regarding servicing continuity, reinstatement rights, and insurance compliance that were knowingly false at the time of execution. These promises were designed to induce Plaintiff into a transaction that would be immediately sold into a pooling scheme. This conduct constitutes promissory fraud under Alabama law and a predicate act under Count I – Civil RICO.

¶194CG Plaintiff partially performed under the contract by making payments and complying with servicing demands, thereby triggering equitable protections under Alabama law. Defendants accepted this performance while concealing the true nature of the loan's securitization and servicing fragmentation, violating the duty of good faith and fair dealing.

¶194CH Defendants failed to provide accurate disclosures required under TILA and Regulation Z, including:

- Misstatement of the Annual Percentage Rate (APR) (12 CFR § 1026.22)

- Failure to disclose assignment and transfer of servicing rights (12 CFR § 1026.39)

- Omission of rescission rights and high-cost mortgage triggers (12 CFR § 1026.23, § 1026.32)

¶194CI Tolling applies under TILA's statutory framework due to:

- Fraudulent concealment of the pooling structure and servicing transfers

- Judicial admissions by Defendants in related proceedings acknowledging assignment and securitization

- Ongoing suppression of servicing records and call logs (¶194AV, ¶261)

¶194CJ The pooling scheme was designed to trap borrowers into fragmented servicing chains where reinstatement was procedurally impossible, insurance claims were suppressed, and foreclosure was inevitable. This structure disproportionately impacted minority borrowers and violated the consumer protection intent of TILA.

**Adverse Possession and Equitable Title**

¶194CK Plaintiff asserts title to 901 Seibles Road through statutory and common law adverse possession, having continuously, exclusively, and openly maintained dominion over the property for more than 20 years, and under color of title for more than 10 years. Possession has been hostile to the interests of Deutsche Bank and its agents, adverse in intent, and uninterrupted despite attempted foreclosure actions and post-discharge concealments.

¶194CL Plaintiff has maintained actual occupancy of the property dating back to 2004, performing structural repairs, maintaining insurance, and paying taxes in Plaintiff's own name. All possessions have occurred without permission from any mortgagee or servicer, satisfying the criteria under Treadaway v. Hamilton, 116 So. 2d 186 (Ala. 1959), and Sylvest v. Stowers, 276 So. 2d 624 (Ala. 1973).

¶194CM Plaintiff's improvements over the 20-year period include documented flood mitigation, roofing and foundational restoration, electrical work, and stormwater redirection—exceeding a total investment of $180,000.00. These documented expenses, validated by receipts and expert reports, outweigh any alleged interest that DBNTC may assert and support equitable title under Moore v. Lovelace, 413 So. 2d 1100 (Ala. 1982).

¶194CN The City of Montgomery Engineering Department reviewed and approved Plaintiff's restoration plans and flood mitigation structures, confirming that Plaintiff acted as a lawful steward of the property in coordination with municipal authorities. These approvals demonstrate civic engagement, record-backed possession, and structural dominion.

¶194CO Despite Plaintiff's longstanding possession, structural investment, and formal interactions with the City of Montgomery, no ruling was issued on Plaintiff's adverse possession claim by any presiding judge in federal or state forums. Judge James Anderson, Judge Brook Reed, and Chief Judge Emily Marks

failed to adjudicate or acknowledge these facts. Their omission constitutes repeated judicial disregard and discriminatory denial of equitable remedy, especially in light of Plaintiff's race and survivor status.

Specific acts of conspiracy included:

- Docket manipulation, including reclassification and omission of filings from the public record.

- Judge reassignment and remand loops, used to bypass appellate review and reset litigation posture.

- Suppression of discovery, including denial of third-party witness lists, mod approval logs, and payoff quote data.

- Injunctive gag orders, silencing litigation, and barring submission of redacted material.

**Procedural Obstruction, Witness Retaliation, and Conspiracy Against Rights**

¶194CP On April 14, 2017, Judge Terry Moorer issued a Rule 26(f) Scheduling Order (Doc. 114), formally reopening the discovery window and instructing all parties to submit a joint discovery plan by April 28, 2017. This order confirmed that the case was active and eligible for record development.

¶194CQ Within days of the scheduling order, Defendants filed multiple Notices of Discovery Service—none of which included the redacted servicing records, mod approval entries, or payoff quote logs previously requested via Qualified Written Requests and direct motions. Plaintiff was denied access to material servicing data despite Rule 26 compliance.

¶194CR On May 5, 2017, the Court issued a formal Discovery Order (Doc. 116), setting deadlines for discovery (September 5, 2017) and dispositive motions (October 16, 2017). This timeline placed Plaintiff under compulsion to litigate without access to key records that had been redacted, suppressed, or administratively shielded.

¶194CS Plaintiff filed multiple discovery motions (Docs. 118, 151–153), including:

- A motion to compel redacted servicing entries.

- A motion to add third-party defendants tied to mod suppression.

- Witness list naming service personnel referenced in concealed records.

¶194CT Eva Bank objected to Plaintiff's witness list (Doc. 162), and Defendants challenged discovery efforts (Docs. 166–167), arguing procedural irregularity while simultaneously seeking to exclude redacted matters from the record.

¶194CU On September 21, 2017, the Court denied Plaintiff's Motion for Discovery (Doc. 152) via summary ruling (Doc. 168), without addressing the substance of the redacted material or the third-party misconduct raised. This denial functionally sealed off the suppressed acts from fact-finding, obstructing adjudication and enabling Defendants to proceed with litigation under false procedural posture.

¶194CV Plaintiff incorporates Paragraphs 1 through 275 of the Statement of Facts and further alleges that Defendants—including judicial officers acting in official capacity—engaged in deliberate misuse of procedural and injunctive power to obstruct Plaintiff's right to judicial redress and remedy.

¶194CW Plaintiff identifies the following obstructive acts carried out between 2014 and 2025, which suppressed fact-finding, blocked third-party discovery, and prevented adjudication of key statutory claims:

- Misuse of judicial injunctions to silence litigation following FDIC receivership discharge

- Repeated remands designed to circumvent Eleventh Circuit jurisdiction and mute appellate review

- Refusal to rule on discovery motions seeking redacted servicing entries and mod approval logs

- Summary dismissal of claims without merit review, despite new evidence and statutory violations

¶194CX These actions were taken while Plaintiff's appeal rights were active and directly interfered with preservation of record, adversarial response, and access to courts. Obstructive conduct reflects purposeful denial of judicial remedy via extrajudicial control.

¶194CY Under 18 U.S.C. § 1503, obstruction of justice includes any attempt to influence, impede, or prevent the due administration of law. Defendants' actions meet this threshold by:

- Silencing court proceedings through procedural fencing.

- Blocking record development and factual analysis.

- Denying Plaintiff's legal standing and equitable defenses without a hearing.

**Obstruction of Justice and Judicial Suppression**

¶194CZ These obstructive acts occurred while Plaintiff's appeal rights were active and federal removal posture was pending. Defendants used remand tactics, summary rulings, and docket suppression to prevent adjudication of redacted servicing misconduct, mod suppression, and title extinguishment. The timing and coordination of these acts reflect deliberate interference with judicial process.

¶194DA Plaintiff's discovery motions (Docs. 118, 151–153) were denied without substantive review, despite referencing concealed servicing entries, mod approval logs, and third-party misconduct. Judicial officers issued summary rulings (Doc. 168) that sealed off key evidence and prevented adversarial development of the record.

¶194DB Clerks returned filings stamped "denied" without judicial signature, removed exhibits from the docket, and failed to log Plaintiff's Rule 20 joinder submissions. These administrative actions obstructed record preservation and blocked co-owner participation, including filings submitted on behalf of at that time, SSGT Bre Leonna Thomason.

¶194DC Defense counsel filed retaliatory accusations against Plaintiff, including allegations of "unauthorized practice of law," timed to coincide with Plaintiff's efforts to assert co-owner rights and military protections. These accusations were made despite Plaintiff's documented representation by retained counsel in prior proceedings.

¶194DD Judicial officers issued procedural warnings referencing Rule 11 and criminal contempt, alleging that Plaintiff's filings constituted impermissible third-

party representation. These warnings were issued while SSGT Bre Leonna Thomason remained on active duty and her statutory protections under the Servicemembers Civil Relief Act (SCRA) were ignored.

¶194DE The cumulative effect of these actions—procedural fencing, retaliatory filings, docket suppression, and denial of military protections—constitutes a coordinated effort to obstruct justice and suppress Plaintiff's access to remedy. These acts occurred across multiple courts, involved shared actors, and targeted Plaintiff's protected rights under federal law and the Constitution.

**Statement of Facts ¶194DF–¶194DJ — Witness Retaliation**

¶194DF On or about March 2020, Plaintiff and co-owner SSGT Bre Leonna Thomason submitted filings under Rule 20, asserting joint ownership, survivor status, and constitutional protections connected to 901 Seibles Road. These filings included notarized statements, tax records, and military deployment documentation.

¶194DG In direct response to these filings, Defendants—including counsel for Deutsche Bank and Ocwen—filed court documents accusing Plaintiff of engaging in "unauthorized practice of law," despite his documented representation by retained counsel in prior federal proceedings. The accusation appeared strategically timed to suppress further legal assertions.

¶194DH Judicial officers issued procedural warnings referencing Rule 11 and criminal contempt language, alleging that Plaintiff's filings constituted impermissible third-party representation—even as SSGT Bre Leonna Thomason remained on active military duty and her SCRA protections went unacknowledged.

¶194DI The retaliatory filings and procedural threats prompted Plaintiff to temporarily suspend filings and legal pursuit, effectively chilling his First Amendment petition rights and obstructing co-owner claims. No court ever issued a ruling on the substantive property rights raised in those joinder filings.

¶194DJ These events reflect coordinated intimidation under 18 U.S.C. § 1513(e), targeting Plaintiff's lawful participation in judicial proceedings and his attempt to defend property, due process, and servicemember claims. The timing, language,

and institutional alignment demonstrate intent to retaliate against protected speech and survivor advocacy.

**Statement of Facts ¶194DK–¶194DT — Conspiracy Against Rights**

¶194DK Beginning in or around 2015 and continuing through 2025, Defendants—including DBNTC, Ocwen/PHH Mortgage Servicing, Eva Bank, affiliated counsel, and judicial officers acting in official capacity—engaged in coordinated efforts to deny Plaintiff due process, judicial access, and legal standing through repeated procedural suppression, remand tactics, and injunction misuse.

¶194DL Procedural filings and court rulings systematically excluded Plaintiff's co-owners, barred review of redacted servicing entries, and suppressed mod approval documents relevant to Plaintiff's standing, debt position, and title defense. These acts foreclosed Plaintiff's statutory rights under RESPA, FIRREA, SCRA, and constitutional protections without adjudication on the merits.

¶194DM Judicial officers applied summary disposition and sua sponte rulings to prevent Plaintiff from developing factual records or responding to adversarial claims. Clerks removed filings from the docket without explanation, sealed exhibits, and returned documents stamped "denied" with no judicial signature.

¶194DN Defense counsel and affiliated entities filed retaliatory accusations against Plaintiff, including criminal implications for "unauthorized practice of law," despite the presence of legitimate Rule 20 joinder filings and prior attorney representation. These accusations coincided with suppression of witness lists and co-owner testimony, including submissions from active duty servicemember SSGT Bre Leonna Thomason.

¶194DO The coordinated nature of these acts, occurring across multiple courts and involving shared actors and objectives, demonstrates a deliberate conspiracy to deprive Plaintiff of rights guaranteed under the Constitution and federal law. These include the rights to petition the court, defend property, access records, and assert legal standing in proceedings involving foreclosure, title, and asset seizure.

¶194DP From 2012 through 2025, Defendants—including DBNTC, Ocwen/PHH, Eva Bank, affiliated counsel, and court officers—engaged in coordinated acts that deprived Plaintiff of his constitutionally protected rights to due process, judicial

access, and property defense. These acts include suppression of evidence, denial of hearings, and exclusion of co-owners from title adjudication.

¶194DQ Throughout active litigation, Plaintiff's procedural motions were denied without merit review. Court officers issued sua sponte rulings that prevented the development of factual records, ignored standing arguments, and silenced claims tied to redacted servicing activity and mod suppression. Clerks returned filings with "denied" stamps and withheld docket histories.

¶194DR Plaintiff and co-owner Thomason were repeatedly subjected to retaliatory accusations including "unauthorized practice of law," despite procedural compliance with Rule 20 and active counsel representation. These acts suppressed survivor claims and discouraged lawful assertion of rights.

¶194DS Co-owner SSGT Bre Leonna Thomason, an active duty servicemember, was denied protections under the Servicemembers Civil Relief Act (SCRA). Despite notice of her status, neither court rulings nor defense responses acknowledged her statutory standing. These denials reflect systemic disregard for federal protections, completed in concert with enterprise actors and aimed at extinguishing Plaintiff's ability to challenge unlawful foreclosure and redacted misconduct.

¶194DT Plaintiff incorporates Paragraphs 1 through 285 of the Statement of Facts and further alleges that Defendants engaged in a coordinated conspiracy to obstruct justice by rigging procedural outcomes, suppressing critical evidence, manipulating judicial assignments, and using injunctive power to prevent fact-finding into expired claims and redacted misconduct.

**Pattern of Judicial Coordination and Procedural Entrenchment**

¶194DU Between 2017 and 2025, Plaintiff observed a recurring pattern of judicial coordination across federal and state forums that systematically suppressed record development, blocked co-owner participation, and denied adjudication of redacted servicing misconduct. Judges—including Chief Judge Emily C. Marks, Judge James Anderson, and Judge Brooke Reed—issued rulings that:

- Remanded cases despite active federal removal posture and Eleventh Circuit jurisdiction.

- Denied discovery motions without addressing the substance of concealed records.

- Ignored Rule 20 joinder filings submitted on behalf of active-duty co-owner SSGT Bre Leonna Thomason.

- Applied sua sponte dismissal and procedural fencing to prevent factual hearings.

These actions occurred in parallel with defense filings that misrepresented Plaintiff's standing, suppressed military service documentation, and accused Plaintiff of unauthorized legal activity. The coordinated nature of these rulings and filings reflects a deliberate entrenchment of procedural barriers designed to obstruct judicial remedy and insulate enterprise misconduct from review.

**Coordinated Obstruction, Due Process Violations, and Unlawful Seizure**

¶194DV These acts were carried out over a multi-year timeline, across multiple courts and forums, with shared objectives and overlapping participants. Clerks, judicial officers, servicer entities, and defense counsel operated in coordinated fashion to obstruct Plaintiff's pursuit of truth, redress, and constitutional remedy.

¶194DW Under 18 U.S.C. § 371, conspiracy to commit any offense against the United States, or to defraud the United States or its courts, is itself a federal crime. The enterprise conduct described here shows a concerted plan to deny Plaintiff judicial access and prevent adjudication of critical federal claims—including those brought under RICO, FIRREA, RESPA, and constitutional statutes.

¶194DX Beginning in 2011, Plaintiff submitted multiple Qualified Written Requests (QWRs) pursuant to 12 U.S.C. § 2605(e), seeking verification of servicing transfers, chain-of-title documentation, payoff quote accuracy, and ownership data. These were filed both before and after foreclosure initiation.

¶194DY Defendants failed to provide responsive records. Instead, they continued collection activity, initiated foreclosure, and invoked attorney-client privilege to suppress servicing call logs that contained attorney guidance to non-client servicing employees—a misuse of privilege and a direct violation of § 2605(k).

¶194DZ Following the Eleventh Circuit's reversal in Thomason v. One West Bank, No. 13-11987, the case was remanded for discovery. The Middle District failed to allow fact development, denied Plaintiff access to servicing records, and ultimately

issued an injunction that barred further RESPA filings despite the appellate mandate.

¶194EA Internal documents and external regulatory findings demonstrated that Deutsche Bank had no valid claim to the subject mortgage. Published FDIC determinations of Prudential Mootness and Ninth Circuit rulings confirmed that only servicing rights had been transferred—rendering Defendant's foreclosure activity jurisdictionally void and materially deceptive under RESPA.

¶194EB Plaintiff reasserted multiple Qualified Written Requests (QWRs) between 2011 and 2024, seeking verification of servicing transfers, payoff quote accuracy, and ownership data. These requests were ignored or deflected, despite statutory obligations under 12 U.S.C. § 2605(e).

¶194EC Defendants continued collection activity and foreclosure efforts while invoking attorney-client privilege to suppress servicing call logs and internal communications. These logs included attorney guidance to non-client servicing staff, constituting a misuse of privilege and a violation of 12 U.S.C. § 2605(k).

¶194ED Despite the Eleventh Circuit's mandate in Thomason v. One West Bank, the Middle District denied Plaintiff access to discovery, suppressed servicing records, and issued an injunction barring further RESPA filings. These actions directly contradicted the appellate directive and obstructed fact development.

¶194EE FDIC records and Ninth Circuit precedent confirmed that Deutsche Bank held no enforceable interest in the subject mortgage. Only servicing rights had been transferred, and no valid assignment or title conveyance was recorded. Defendant's foreclosure posture was jurisdictionally void and materially deceptive under RESPA and FIRREA.

**Statement of Facts ¶194EF–¶194ET — Procedural Due Process, Equal Protection, and Unlawful Seizure**

¶194EF Plaintiff was repeatedly denied basic procedural due process, including timely notice of hearings, adjudication by a neutral tribunal, and a meaningful opportunity to present statutory defenses. Court orders were issued without merit

review, and injunctions were entered prior to final adjudication, preventing Plaintiff's access to property-related claims.

¶194EG Judicial officers failed to engage Plaintiff's filings on constitutional grounds, including claims under the Servicemembers Civil Relief Act (SCRA), RESPA, and FIRREA. Challenges to venue, standing, service, and assignment were either summarily dismissed or ignored, despite documentation of redacted entries and FDIC determinations supporting Plaintiff's position.

¶194EH Plaintiff and co-owners were labeled "vexatious" without formal findings or hearing and subjected to restrictions not applied to similarly situated litigants. Their Rule 20 joinder filings were met with retaliatory accusations, including threats of criminal sanctions, while other parties freely accessed judicial remedies under comparable circumstances.

¶194EI Defendants and judicial officers manipulated venue, reassigned judges, and routed the case through procedural loops that displaced more neutral or previously assigned jurists (e.g., Judge Thompson, Judge Hardwick). Subsequent assignments to Judges Marks, Brasher, Watkins, and Reid then; Anderson all coincided with rulings adverse to constitutional, statutory, and evidentiary claims.

¶194EJ The court's application of state law defenses and limitation statutes directly contradicted controlling federal provisions, including 12 U.S.C. § 1821(d), 50 U.S.C. § 3931, and 28 U.S.C. § 2415(a). This resulted in unequal treatment, denial of federally protected rights, and exclusion from legal pathways afforded to other litigants.

¶194EK The cumulative procedural irregularities, judicial reassignment patterns, and disregard for co-owner status reflect a broader pattern of unequal treatment, retaliatory adjudication, and systemic gatekeeping. These actions directly injured Plaintiff's ability to pursue redress and protect constitutional property rights.

¶194EL Plaintiff was repeatedly denied basic procedural due process, including timely notice of hearings, adjudication by a neutral tribunal, and a meaningful opportunity to present statutory defenses. Court orders were issued without merit review, and injunctions were entered prior to final adjudication, preventing Plaintiff's access to property-related claims.

¶194EM Judicial officers failed to engage Plaintiff's filings on constitutional grounds, including under the Servicemembers Civil Relief Act (SCRA), RESPA, and FIRREA. Challenges to venue, standing, service, and assignment were either summarily dismissed or ignored, despite documentation of redacted entries and FDIC determinations supporting Plaintiff's position.

¶194EN Plaintiff and co-owners were again in both state and federal courts labeled "vexatious" without formal findings or hearing and subjected to restrictions not applied to similarly situated litigants. Their Rule 20 joinder filings were met with retaliatory accusations, including threats of criminal sanctions, while other parties freely accessed judicial remedies under comparable circumstances.

¶194EO Defendants and judicial officers continue to manipulated venue in state and federal courts, reassigned judges, and routed the case through procedural loops that displaced more neutral or previously assigned jurists (e.g., Judge Thompson, Judge Hardwick). Subsequent assignments to Judges Marks, Brasher, Watkins, and Reid, and Anderson all with ties to Ball and Ball Law firm wherein they were either partners or close allies showing collusion that aligned and coincided with rulings adverse to constitutional, statutory, and evidentiary claims.

¶194EP Again and Again the court's application of state law defenses and limitation statutes directly contradicted controlling federal provisions, including 12 U.S.C. § 1821(d), 50 U.S.C. § 3931, and 28 U.S.C. § 2415(a). This resulted in unequal treatment, denial of federally protected rights, and exclusion from legal pathways afforded to other litigants.

¶194EQ The cumulative procedural irregularities, judicial reassignment patterns, and disregard for co-owner status reflect a broader pattern of unequal treatment, retaliatory adjudication, and systemic gatekeeping. These actions directly injured Plaintiff's ability to pursue redress and protect constitutional property rights.

¶194ER On or about June 9, 2025, Plaintiff was forcibly ejected from his homestead property at 901 Seibles Road by agents of the Montgomery County Sheriff's Department, acting in coordination with Altisource Relocation Services and Jubilee Movers. The ejection occurred under threat of arrest and without presentation of a valid writ of possession, warrant, or enforceable judgment from a court of competent jurisdiction.

¶194ES At the time of the seizure, Plaintiff had active federal litigation pending before the Eleventh Circuit, including unresolved claims under FIRREA, RESPA, and the Servicemembers Civil Relief Act (SCRA). Co-owner SSGT Bre Leonna Thomason's military status had been formally noticed, yet no judicial ruling addressed her protections under 50 U.S.C. § 3931.

¶194ET The underlying state court orders relied upon by Defendants were issued without resolving jurisdictional defects, including standing, assignment validity, and federal preemption. These defects rendered the orders void ab initio under Valley v. Northern Fire & Marine Ins. Co., 254 U.S. 348 (1920), and subsequent federal precedent.

**Statement of Facts ¶194EU–¶194FP — Unlawful Seizure, Civil Conspiracy, Injunction Abuse, and Emotional Harm**

¶194EU On or about June 9, 2025, enforcement agents acting under color of law removed Plaintiff's personal belongings, legal documents, and property from 901 Seibles Road. These actions were taken despite actual or constructive notice of ongoing federal proceedings, unresolved title claims, and active statutory defenses. No warrant was issued, no hearing was held, and no judicial review occurred prior to the seizure and while on Appeals in both State and Federal courts.

¶194EV The removal violated Plaintiff's rights under the Fourth Amendment (unreasonable seizure), the Fifth and Fourteenth Amendments (due process), and 42 U.S.C. § 1983. The coordinated execution of state power in defiance of federal protections constitutes a constitutional tort and demands judicial remedy.

**Supporting Count XX: Civil Conspiracy to Interfere with Judicial Access and Chill Legal Advocacy (42 U.S.C. § 1985(2))**

¶194EW From 2015 through 2025, Defendants—including DBNTC attorneys, Judges Brooke Reid and James Anderson, court clerks, private counsel, and state enforcement agents—engaged in a coordinated campaign to obstruct Plaintiff's access to judicial remedy, retaliate against his legal advocacy, and suppress fact-finding related to fraudulent foreclosure and judicial misconduct.

¶194EX This conspiracy manifested through a pattern of acts including:

- Reassignment of cases away from impartial judges (e.g., Judge Thompson, Judge Hardwick)

- Use of gag orders and vexatious litigant designations to block filings

- False accusations of unauthorized practice of law for joint filings signed by all co-owners under Rule 20

- Interference with licensed legal support and contractor rights through judicial channels

- Solicitation of ex parte input from former law partners to deny Plaintiff's participation in unrelated civil matters

- Transmission of threats through intermediaries, including Attorney Evans Brittan.

¶194EX Cont. On or about December 6, 2024, Plaintiff requested that the Montgomery County Civil Clerk recall a writ of possession that had been issued in error and was void ab initio due to unresolved jurisdictional defects and active federal litigation. The clerk refused, stating: "I'm not going to do anything unless Judge Anderson tells me to." This refusal:

- Contravened the clerk's ministerial duty under Alabama Rule of Civil Procedure 69.

- Reflected improper deference to judicial authority in the face of procedural error.

- Constituted willful obstruction of Plaintiff's access to remedy and due process.

- Reinforced the conspiracy to suppress Plaintiff's legal advocacy and enforce void orders.

¶194EY At the time of the seizure, Plaintiff's property was subject to active federal litigation and unresolved statutory defenses, including:

- No valid writ of possession entered by a court of competent jurisdiction.

- Pending federal claims under FIRREA, RESPA, and the SCRA before the Eleventh Circuit.

- Formal notice of SSGT Bre Leonna Thomason's active-duty military status.

- No evidentiary hearing, judicial warrant, or procedural review authorizing enforcement.

These conditions rendered the seizure legally baseless and constitutionally infirm.

¶194EZ Plaintiff's legal activity—including filings on behalf of himself and underrepresented parties—was lawful, protected, and conducted in good faith. Defendants acted with specific intent to chill this activity, marginalize Plaintiff's legal voice, and eliminate avenues of redress.

¶194FA These acts meet the criteria of 42 U.S.C. § 1985(2), which prohibits conspiracies to deter testimony, interfere with judicial proceedings, or intimidate legal actors. The coordinated targeting of Plaintiff—including his role in reversing discriminatory insurance denials for elderly African American homeowners—renders the conspiracy retaliatory and race-adjacent, triggering strict scrutiny.

¶194FB The conspiracy was executed under color of law and involved both state actors and private entities. It resulted in material harm to Plaintiff's legal standing, professional reputation, and ability to advocate for constitutional and consumer protections.

¶194FC The cumulative effect of these acts was to silence Plaintiff's litigation efforts, obstruct judicial access, and suppress evidence of enterprise misconduct. These injuries are ongoing and demand constitutional and statutory remedy.

**Abuse of Injunction Power and Restraint of Legal Access**

**(U.S. Const. Amend. I & XIV; 42 U.S.C. § 1983)**

¶194FD Judicial officers—including Judges Emily Marks, James Anderson, and Brooke Reid—issued and enforced injunctions that barred Plaintiff from filing motions, seeking hearings, or participating in property-related proceedings. These orders were issued without evidentiary hearings, factual findings, or proportionality review.

¶194FE The injunctions were reaffirmed and extended despite Plaintiff's submission of newly discovered evidence, statutory defenses under FIRREA and SCRA, and active federal litigation. No judicial findings were made regarding the legitimacy of Plaintiff's filings or the necessity of the restraints imposed.

¶194FF These injunctions functioned as content-based restrictions on legal speech, punishing Plaintiff for asserting federal jurisdiction, challenging foreclosure fraud, and filing Rule 20 joinder motions with co-owners. The suppression of legal advocacy violated Plaintiff's First Amendment right to petition the government and his Fourteenth Amendment right to due process.

¶194FG Court clerks, acting in coordination with DBNTC counsel, enforced the injunctions by rejecting filings, removing documents from the docket, and denying Plaintiff access to judicial process. These acts were carried out under color of law and reflect institutional misuse of procedural authority.

¶194FH The cumulative effect of these injunctions was to silence Plaintiff's litigation efforts, obstruct judicial access, and prevent adjudication of federal claims. The judicial process was transformed into a mechanism of suppression rather than a forum for justice.

¶194FI These facts support Plaintiff's claim that judicial injunctions were weaponized to suppress legal speech, deny access to court, and retaliate against protected advocacy. The misuse of judicial authority constitutes a constitutional injury and demands remedy under 42 U.S.C. § 1983.

**Supporting Count XXI: Intentional Infliction of Emotional Distress (IIED)**

¶194FJ Beginning in 2020 and continuing through 2025, Defendants—including Judge Emily Marks, Judge James Anderson, Judge Brooke Reid, DBNTC counsel, and court clerks—used judicial injunctions to restrain Plaintiff's ability to file motions, seek hearings, and participate in property-related proceedings. Judge Marks issued an injunction barring Plaintiff from initiating filings in state court, despite unresolved federal questions and procedural defects in foreclosure filings. The injunction was issued without hearing, factual findings, or proportionality review.

¶194FK The injunction was later reaffirmed and extended by Judges Anderson and Reid, even after Plaintiff filed motions requesting review, submitted newly discovered evidence, and cited statutory bases for removal and federal jurisdiction. No hearings were granted, and no findings were made regarding the legitimacy of Plaintiff's filings.

¶194FL The injunction functioned as a content-based restriction on legal speech, violating Plaintiff's First Amendment right to petition the government and his Fourteenth Amendment right to due process. It chilled Plaintiff's access to court, punished lawful advocacy, and obstructed efforts to secure representation and challenge wrongful orders.

¶194FM Court clerks enforced the injunction by rejecting filings, removing documents from the docket, and denying access to judicial processes. These acts were carried out under color of law and in coordination with DBNTC counsel, transforming judicial authority into a mechanism of suppression.

¶194FN Plaintiff incorporates Paragraphs 1 through 330 and alleges that Defendants—including DBNTC attorneys, foreclosure agents, judicial officers, and law enforcement personnel—engaged in extreme and outrageous conduct with intent or reckless disregard for the emotional harm caused.

¶194FO Defendants knowingly executed foreclosure and ejectment actions without lawful authority, relying on void judgments and fabricated assignments. These actions were taken despite unresolved jurisdictional defects and active federal litigation.

¶194FP Plaintiff was threatened with criminal charges for lawful filings, including Rule 20 joinder motions and federal removal petitions. These threats were issued in court and through filings designed to intimidate and suppress Plaintiff's legal voice.

¶194FQ Judicial officers circulated reprimands targeting Plaintiff's attorney, David Sawyer, and used these to isolate Plaintiff from legal representation. Court clerks reinforced this isolation by blocking filings and removing documents from the docket.

¶194FR Plaintiff's professional reputation was deliberately sabotaged through block-listing, docket manipulation, and procedural penalties. These actions prevented Plaintiff from securing work, legal support, and economic recovery.

¶194FS Plaintiff suffered severe emotional distress, including:

- Loss of home and personal stability.

- Reputational harm and financial hardship.

- Isolation from legal assistance and community support

- Ongoing fear and exhaustion from retaliatory litigation and enforcement threats

¶194FT These injuries were the direct result of Defendants coordinated misconduct and demand recognition under both tort law and constitutional principles. The emotional toll was foreseeable, intentional, and compounded by the systemic nature of the suppression.

¶194FU The conduct described herein was not incidental—it was part of a broader campaign to silence Plaintiff, obstruct justice, and protect institutional interests. The use of judicial power to inflict personal harm constitutes a constitutional injury.

¶194FV These facts support a claim for intentional infliction of emotional distress and reinforce the pattern of retaliatory adjudication, procedural sabotage, and enterprise coordination that underlies Plaintiff's broader constitutional claims.

¶194FW The cumulative effect of these acts was to deprive Plaintiff of not only property and legal access, but also dignity, stability, and professional viability. These injuries are ongoing and demand judicial remedy.

¶194FX Plaintiff's emotional distress is compounded by the knowledge that judicial officers and enforcement agents acted with full awareness of the harm being caused, and with deliberate intent to suppress Plaintiff's litigation efforts.

¶194FY These acts reflect a systemic abuse of process, where legal mechanisms were weaponized to inflict harm rather than deliver justice. The emotional and reputational damage sustained by Plaintiff is inseparable from the procedural violations documented throughout this complaint.

¶194FZ These facts transition into the enterprise-level conspiracy described in Count XXI, where the suppression of Plaintiff's legal rights evolved into a coordinated effort to silence advocacy, obstruct judicial access, and protect fraudulent foreclosure activity.

**Abuse of Injunction Power and Restraint of Legal Access**

**(U.S. Const. Amend. I & XIV; 42 U.S.C. § 1983)**

¶194GA From 2018 through 2025, Defendants—including DBNTC attorneys, Judges Emily Marks, Brooke Reid, and James Anderson, state enforcement agencies, and judicial clerks—engaged in a coordinated conspiracy to suppress Plaintiff's legal advocacy, obstruct judicial access, and enforce foreclosure rulings known to be jurisdictionally defective.

¶194GB This conspiracy was executed through:

- Judicial reassignment patterns that routed Plaintiff's cases to hostile forums.

- Ex parte communications between DBNTC counsel and judicial officers.

- Procedural penalties issued in retaliation for Plaintiff's protected filings

- Suppression of evidence and docket manipulation to favor foreclosure outcomes.

¶194GC Plaintiff's legal representation was directly targeted:

- Attorney David Sawyer's firm was warned away from the case.

- Judicial reprimands were circulated to discourage future counsel.

- Plaintiff was sanctioned $7,500 for lawful federal removal.

- Thomason was blacklisted among judges, ensuring prejudicial treatment.

¶194GD These acts meet the statutory criteria of 42 U.S.C. § 1985(3), which prohibits conspiracies to suppress protected activity and deny equal protection under color of law. The coordinated retaliation against Plaintiff's advocacy and litigation efforts reflects discriminatory animus and systemic suppression.

¶194GE The enterprise conduct also satisfies the elements of civil RICO under 18 U.S.C. § 1962(d), as Defendants operated in concert to further a fraudulent foreclosure scheme, silence opposition, and protect institutional interests through judicial manipulation and procedural sabotage.

¶194GF The cumulative effect of these acts was to deprive Plaintiff of constitutional protection, professional standing, and access to fair adjudication.

These injuries are ongoing and demand judicial remedy under both civil rights and racketeering statutes.

**Supporting Count XXI: Conspiracy to Violate Constitutional Rights**

**(42 U.S.C. § 1985(3); 18 U.S.C. § 1962(d); Due Process Violations)**

**Statement of Fact ¶194GG — Coordinated Suppression of Legal Advocacy and Judicial Access**

¶194GG Between 2012 and 2025, Defendants—including attorneys for Deutsche Bank National Trust Company (DBNTC), Judges Emily Marks, Brooke Reid, and James Anderson, state enforcement agencies, and judicial clerks—engaged in coordinated actions under color of law that suppressed Plaintiff's protected legal activity, obstructed access to judicial process, and retaliated against lawful filings. These actions included judge reassignment patterns, docket manipulation, procedural penalties, and reputational targeting. The cumulative effect of these acts deprived Plaintiff of meaningful access to the courts, undermined his ability to assert statutory defenses, and interfered with due process and equal protection rights guaranteed under the U.S. Constitution.

¶194GH Attorney David Sawyer, who represented Plaintiff in federal proceedings, was subjected to reputational sabotage through judicial reprimands circulated by court officers and DBNTC counsel. These reprimands were used to discourage future representation and isolate Plaintiff from legal support.

¶194GI Plaintiff was sanctioned $7,500 for removing the case to federal court, despite citing valid jurisdictional grounds under FIRREA and SCRA. The sanction was issued without hearing and served as a retaliatory penalty for asserting federal rights.

¶194GJ DBNTC attorneys engaged in verbal intimidation, including recorded statements targeting Plaintiff's professional standing and warning against continued litigation. These threats were issued in court and through intermediaries, reinforcing the enterprise's intent to suppress Plaintiff's advocacy.

¶194GK Judicial officers and clerks coordinated to blacklist Plaintiff, ensuring that future filings were routed to hostile forums and subjected to heightened scrutiny.

This included judge reassignment patterns and docket manipulation designed to prevent neutral adjudication.

¶194GL The conspiracy extended beyond individual cases, affecting Plaintiff's broader legal participation. Judicial sanctions and procedural barriers were applied not based on merit, but as retaliation for Plaintiff's role in exposing discriminatory insurance practices and advocating for minority homeowners.

¶194GM These acts reflect a coordinated enterprise effort to silence Plaintiff, obstruct judicial access, and protect fraudulent foreclosure activity. The alignment of judicial officers, court clerks, and DBNTC counsel demonstrates a pattern of racketeering conduct and constitutional suppression under color of law.

**Supporting: Fraud Upon the Court and Material Misrepresentations**

**(Fed. R. Civ. P. 60(b)(3) and (4); Hazel-Atlas Doctrine)**

¶194GN From 2012 through 2025, Defendants—including Deutsche Bank, One West Bank, Ocwen Loan Servicing, counsel of record, and judicial officers—engaged in a pattern of material misrepresentations and procedural concealment that corrupted the integrity of judicial proceedings and deprived Plaintiff of fair adjudication.

¶194GO Specific misrepresentations included:

- False claims of legal standing to enforce the note and mortgage

- Fabricated or incomplete assignment chains

- Improper service of process to Plaintiff and co-owners

- Misuse of FDIC identity without valid Legal Services Agreement or post-receivership authorization

¶194GP These misrepresentations were repeated across state and federal courts, despite prior rulings and FDIC correspondence confirming jurisdictional bars. Defendants invoked invalid privileges to suppress discovery, including call logs and servicing communications that would have revealed attorney coordination and procedural fraud.

¶194GQ Judicial officers—including Judges Marks, Reid, and Anderson—adopted these falsehoods as foundational fact, issuing rulings and injunctions without requiring evidentiary proof or adjudicating Plaintiff's statutory defenses under FIRREA, SCRA, and 28 U.S.C. § 2415(a).

¶194GR Plaintiff's evidence includes:

- The 2012 FDIC letter (Exhibit 31), confirming no valid assignment or jurisdiction existed

- Concealed call logs showing attorney instructions to servicers

- Fabricated SCRA certifications and redacted disclosures

- Ejection orders executed despite unresolved jurisdictional defects and active federal litigation

¶194GS The misapplication of the "vexatious litigant" label was used to block Plaintiff's valid federal defenses and prevent judicial review of fraud-based claims. These acts reflect not mere error, but deliberate deception designed to suppress truth and protect enterprise misconduct.

¶194GT Under Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), and Fed. R. Civ. P. 60(b)(3) and (4), fraud upon the court renders resulting judgments void ab initio. The pattern of deception documented herein meets that threshold and demands judicial remedy.

**Federal Court Complicity, Judicial Misconduct, Racial Targeting, Retaliation and Suppression of Statutory Defenses**

¶194GU Between 2012 and 2025, judicial officers in the U.S. District Court for the Middle District of Alabama—including Chief Judge Emily C. Marks—along with federal clerks and administrative staff, failed to uphold constitutional and statutory obligations by suppressing Plaintiff's federally governed defenses. Despite valid jurisdictional claims under FIRREA, FDIC receivership protocols, and the

Servicemembers Civil Relief Act (SCRA), Plaintiff's filings were dismissed without merit review, hearings were denied, and procedural sanctions were imposed. Federal judges adopted state court foreclosure rulings without addressing unresolved federal questions, and clerks removed or blocked filings that challenged jurisdiction, standing, and enterprise misconduct. These failures violated the judicial oath under 28 U.S.C. § 453, the Fifth and Fourteenth Amendments, and the federal preemption doctrine requiring adjudication of federally controlled claims.

¶194GV Despite clear federal jurisdiction under FIRREA, FDIC oversight, and SCRA protections for co-owner SSGT Bre Leonna Thomason, federal courts declined to adjudicate Plaintiff's claims. Hearings were denied, filings were dismissed on procedural grounds, and no merit review occurred.

¶194GW Court clerks processed DBNTC's filings without scrutiny, while Plaintiff's motions were delayed, rejected, or removed from the docket. These discrepancies reflect institutional bias and procedural sabotage under color of federal authority.

¶194GX Judicial officers sanctioned Plaintiff $7,500 for removing his case to federal court, despite valid statutory grounds under FIRREA and SCRA. The penalty was imposed without hearing and served as a retaliatory measure to chill Plaintiff's pursuit of jurisdictional review.

¶194GY Attorney David Sawyer, who represented Plaintiff in federal proceedings, was reprimanded and blacklisted across the Middle District and Montgomery County courts. These actions discouraged legal representation and reinforced institutional suppression.

¶194GZ The cumulative effect of these failures violated the judicial oath under 28 U.S.C. § 453, the Fifth and Fourteenth Amendments' guarantees of due process and equal protection, and the federal preemption doctrine requiring adjudication of federal defenses.

**Systemic Judicial Misconduct & Ethics Violations**

**(28 U.S.C. §§ 453, 455; U.S. Const. Amend. V & XIV)**

¶194HA Between 2012 and 2025, federal judicial actors failed to uphold constitutional and statutory duties by suppressing valid federal defenses, refusing to adjudicate jurisdictional claims, and retaliating against Plaintiff's lawful filings.

¶194HB These failures included:

- Dismissals without merit review

- Sanctions for federal removal

- Refusal to engage FIRREA, FDIC, and SCRA defenses

- Reprimands and blacklisting of Plaintiff's legal counsel

¶194HC These acts violated:

- 28 U.S.C. § 453 – judicial oath requiring impartial adjudication

- Fifth Amendment – denial of fair process

- Fourteenth Amendment – unequal treatment and suppression of legal access

- Federal preemption doctrine – failure to engage federally governed claims

¶194HD Plaintiff incorporates Paragraphs 1 through 380 and documents a pattern of misconduct by Judges Emily Marks, Brooke Reid, and James Anderson, designed to suppress Plaintiff's legal claims, obstruct judicial access, and protect DBNTC's foreclosure posture.

¶194HE Case reassignments were manipulated to ensure Plaintiff's filings landed before judge's hostile to his claims. Neutral jurists such as Judge Thompson and Judge Hardwick were displaced through procedural remands and reassignment loops.

¶194HF Injunctions were issued not to preserve judicial order, but to suppress litigation rights. These orders were entered without hearings, factual findings, or proportionality review, and were reaffirmed despite new evidence and unresolved federal questions.

¶194HG Clerks and court administrators contributed to systemic suppression by:

- Blocking filings and altering case indexing

- Delaying rulings to exhaust Plaintiff's legal resources

- Facilitating ex-parte communications between DBNTC counsel and judicial officers

¶194HH Judges Marks, Reid, and Anderson issued rulings contrary to established precedent, ignored federal jurisdiction mandates under FIRREA and FDIC oversight, and enforced void judgments despite Plaintiff's presentation of material fraud evidence.

¶194HI Judicial officers failed to recuse themselves despite documented conflicts of interest, prior affiliations with foreclosure counsel, and rulings that reflected bias and retaliatory intent. These failures violated neutrality standards under 28 U.S.C. § 455.

¶194HJ The cumulative effect of these violations created a rigged litigation environment where Plaintiff's defenses were never given equal adjudication, and judicial suppression became a strategic tool rather than an impartial function.

**Violation of Fair Housing & Racial Targeting (Fair Housing Act – 42 U.S.C. §§ 3601–3619; U.S. Const. Amend. XIV) Judicial Entrenchment, Suppression of Evidence, and Procedural Targeting**

¶194HK Judicial officers—including Judges Emily Marks, Brooke Reid, and James Anderson—issued rulings that disregarded Plaintiff's statutory defenses under FIRREA, SCRA, and RESPA. These rulings adopted foreclosure narratives advanced by DBNTC without requiring evidentiary proof, despite Plaintiff's submission of FDIC correspondence, IRS discharge records, and recorded title releases. No hearings were held to evaluate jurisdictional defects, and no findings were entered to reconcile federal preemption claims.

¶194HL Evidence submitted by Plaintiff—including redacted servicing logs, Qualified Written Requests, and call transcripts—was excluded from consideration. Court clerks removed exhibits from the docket, sealed filings without explanation, and failed to index supplemental affidavits submitted in support of federal claims. These omissions obstructed fact development and prevented judicial review of enterprise misconduct.

¶194HM Plaintiff was repeatedly subjected to procedural targeting, including:

- Reassignment of cases to judges with prior affiliations to foreclosure counsel

- Denial of motions without written explanation

- Rejection of filings based on content rather than format

- Threats of contempt and sanctions for asserting federal jurisdiction

These actions reflect a pattern of judicial entrenchment designed to suppress Plaintiff's litigation posture, insulate institutional actors from scrutiny, and prevent adjudication of claims rooted in federal law and constitutional protections.

¶194HN Plaintiff incorporates Paragraphs 1 through 390 and documents that Defendants—including DBNTC attorneys, foreclosure agents, judicial officers, and state housing regulators—engaged in racially discriminatory enforcement practices that targeted Plaintiff's property and suppressed his legal challenges.

¶194HO Plaintiff's foreclosure and ejectment proceedings occurred within a broader pattern of racial targeting, where financial institutions disproportionately denied fair housing protections to Black homeowners and pursued expedited enforcement against minority property owners.

¶194HP DBNTC and its affiliates targeted Plaintiff's home despite:

- Active federal defenses under FIRREA and SCRA

- Clear evidence of fraudulent title claims

- Plaintiff's documented advocacy for elderly African American homeowners, making him a known legal opponent of discriminatory housing practices

¶194HQ Discriminatory enforcement manifested through:

- Court refusals to investigate title fraud

- Judicial alignment with foreclosure attorneys despite procedural violations

- Interference with Plaintiff's contractor licensing, blocking post-foreclosure economic recovery

¶194HR Under 42 U.S.C. § 3605, it is unlawful for financial institutions and judicial bodies to engage in discriminatory housing practices, including:

- Unequal application of foreclosure defenses based on race

- Denial of procedural fairness in housing-related litigation

- Targeted suppression of minority property owners through fraudulent legal mechanisms

¶194HS Judicial officers and regulators failed to investigate DBNTC's fraudulent actions and instead protected foreclosure rulings, reflecting systemic racial bias and violating Equal Protection guarantees under the Fourteenth Amendment.

¶194HT These acts were not incidental—they were part of a coordinated pattern of discriminatory enforcement that denied Plaintiff equal access to housing-related legal remedies and economic recovery.

**Retaliation Against Plaintiff's Federal Complaints**

**(42 U.S.C. § 1983; U.S. Const. Amend. I; Judicial Retaliation Doctrine)**

¶194HU Plaintiff incorporates Paragraphs 1 through 400 and documents that Defendants—including Judges Emily Marks and Brooke Reid, DBNTC attorneys, and judicial clerks—engaged in retaliatory conduct in response to Plaintiff's protected federal filings challenging foreclosure fraud and judicial misconduct.

¶194HV Plaintiff exercised his First Amendment right to petition the government by filing legitimate federal complaints invoking FIRREA, FDIC oversight, and constitutional protections. These filings were grounded in statutory law and supported by evidentiary documentation.

¶194HW In response, Defendants retaliated by:

- Imposing a $7,500 sanction for federal removal

- Suppressing filings through injunctions and clerk interference

- Issuing judicial warnings and threats to deter continued litigation

- Circulating reprimands against Plaintiff's attorney, David Sawyer

¶194HX These acts were carried out under color of law and designed to punish Plaintiff for asserting federal jurisdiction and exposing institutional misconduct. The retaliation chilled Plaintiff's access to legal remedies and undermined his ability to secure representation.

**Judicial Retaliation, Appellate Obstruction, Federal Preemption Violations, and FDIC Suppression**

¶194HY Judicial officers blocked Plaintiff's filings based on his prior complaints rather than engaging in the merits. Injunctions were used to restrain Plaintiff's legal actions, despite unresolved jurisdictional questions and active federal defenses under FIRREA and SCRA.

¶194HZ These retaliatory actions reflect a systematic effort to suppress Plaintiff's voice, punish lawful advocacy, and obstruct judicial access. The pattern of suppression violated core constitutional protections and triggered liability under 42 U.S.C. § 1983.

**State Court Obstruction of Appeals & Procedural Sabotage**

**(U.S. Const. Amend. V & XIV; Alabama Rules of Appellate Procedure)**

**Appellate Suppression and Judicial Retaliation**

¶194IA On multiple occasions between 2023 and 2025, Plaintiff attempted to file appellate briefs and supporting motions challenging foreclosure enforcement, jurisdictional defects, and suppression of statutory defenses. These filings were either rejected by clerks, delayed past procedural deadlines, or removed from the docket without explanation. In several instances, Plaintiff received confirmation of submission, yet no docket entry was created, and no ruling was issued.

¶194IB Judges Brooke Reid and James Anderson issued summary dismissals of Plaintiff's appeals without addressing the underlying federal claims. These dismissals occurred despite active litigation in federal court, unresolved questions of title and standing, and documented violations of FIRREA and SCRA. The rulings were entered without hearings, written findings, or acknowledgment of Plaintiff's co-owner status and military protections. These actions reflect retaliatory adjudication and procedural suppression under color of law.

¶194IC On July 22, 2025, between 11:21 and 11:22 AM, Plaintiff received a phone call from (470) 598-4763. The caller, whose voice and accent suggested South Asian or Middle Eastern origin, identified himself as an officer or agent involved in the attempted reclamation of Plaintiff's homestead. He stated that, based on the complaint received, they were discontinuing enforcement efforts related to the

property, which had allegedly been purchased under the void ejection order issued by Judge James Anderson. This call confirms that third-party actors are now acknowledging legal defects in the foreclosure and ejection process and are withdrawing enforcement in response to Plaintiff's litigation.

¶194ID Alabama state courts—including Judges Brooke Reid and James Anderson, and associated clerks—engaged in procedural obstruction that prevented Plaintiff's appeals from being timely filed, reviewed, or adjudicated on the merits.

¶194IE Plaintiff lawfully pursued appeals challenging:

- Fraudulent foreclosure enforcement

- Jurisdictional defects under FIRREA and FDIC oversight

- Improper injunctions and suppression of statutory defenses

¶194IF State court clerks obstructed appellate review by:

- Delaying docketing beyond procedural deadlines

- Selectively interfering with filings, preventing motions from reaching judges

- Summarily dismissing appeals without addressing unresolved jurisdictional questions

¶194IG These acts ensured that:

- Fraudulent foreclosure orders remained enforceable

- DBNTC's illegal ejectment proceeded without appellate scrutiny

- Plaintiff's legal standing was undermined through procedural attrition

¶194IH Under Alabama's appellate rules, litigants are entitled to:

- Timely docketing and scheduling of appeals

- Fair review of lower court rulings

- Proper service and transparency in appellate decisions

¶194II The procedural sabotage documented herein reflects active judicial interference—not clerical error. It was designed to shield DBNTC's fraudulent

foreclosure from meaningful appellate challenge and suppress Plaintiff's access to remedy.

¶194IJ These acts violated Plaintiff's Fifth and Fourteenth Amendment rights to due process and equal protection, and contravened Alabama's own appellate procedure standards.

**Federal Preemption Violations & Jurisdictional Overreach**

**(U.S. Const. Art. VI, Cl. 2; 28 U.S.C. §§ 1331, 1367, 1442; FIRREA & SCRA)**

**Appellate Rights Suppression and Procedural Entrenchment**

¶194IK Plaintiff's appellate filings were repeatedly routed to judges with prior involvement in adverse rulings, despite clear conflicts and pending federal jurisdiction. Neutral appellate review was obstructed through reassignment loops, docket manipulation, and refusal to engage the merits of Plaintiff's statutory defenses. These patterns ensured that appeals were reviewed by judicial officers predisposed to uphold foreclosure outcomes.

¶194IL Clerks and court administrators delayed docketing of Plaintiff's appeals, withheld scheduling notices, and failed to transmit filings to assigned judges. In several instances, motions were marked "received" but never entered into the record. These omissions prevented timely adjudication and exhausted Plaintiff's procedural remedies.

¶194IM Judges Reid and Anderson issued orders denying appellate relief without addressing federal preemption, FDIC asset control, or SCRA protections for co-owner SSGT Bre Leonna Thomason. These rulings were entered without hearings, factual findings, or acknowledgment of Plaintiff's standing. The cumulative effect was to suppress appellate review and entrench foreclosure judgments known to be jurisdictionally defective.

¶194IN Alabama state courts—including Judges Brooke Reid and James Anderson—issued and enforced rulings that directly contradicted federal law, violating the Supremacy Clause and exceeding jurisdictional boundaries.

¶194IO Plaintiff's mortgage and foreclosure dispute involved:

- FDIC-controlled assets following the failure of IndyMac Bank

- Active federal defenses under FIRREA and SCRA

- Removal to federal court under 28 U.S.C. §§ 1442 and 1331

¶194IP Despite these federal mandates, Alabama courts:

- Refused to acknowledge FIRREA jurisdiction

- Dismissed SCRA defenses protecting co-owner SSGT Bre Leonna Thomason

- Upheld foreclosure rulings without engaging federal removal arguments

¶194IQ These actions violated the Supremacy Clause, which requires:

- Federal statutes to override conflicting state rulings

- Judicial recognition of federal preemption when applicable

- Deference to federal oversight in disputes involving FDIC assets and military protections

¶194IR Judges Reid and Anderson enforced wrongful state rulings despite:

- Ongoing federal proceedings

- Prior rulings affirming FDIC control

- Procedural violations that prevented Plaintiff's claims from reaching appellate review

¶194IS These acts reflect jurisdictional overreach and deliberate disregard for federal law, resulting in enforcement of void judgments and suppression of Plaintiff's federally protected defenses.

¶194IT Plaintiff's injuries stem directly from the state courts' refusal to honor federal preemption, rendering their rulings constitutionally infirm and legally void.

**Suppression of FDIC Asset Determinations & Banking Fraud**

**(12 U.S.C. § 1821(d); 18 U.S.C. §§ 1001, 1014; Civil RICO Violations)**

¶194IX Defendants—including DBNTC, Ocwen Loan Servicing, MERS, judicial officers, and Alabama banking regulators—engaged in coordinated suppression of FDIC asset determinations that invalidated their foreclosure claims.

¶194IY FDIC records confirmed that IndyMac's assets were unrecoverable and non-transferable, rendering DBNTC's claimed ownership void from inception. These records were concealed from the court and from Plaintiff.

¶194IZ Despite these findings, Defendants:

- Suppressed FDIC correspondence and asset determinations

- Fabricated title assignments to obscure the break in ownership

- Manipulated servicing records to simulate continuity

- Filed pleadings misrepresenting ownership status

**Statement of Facts ¶194JA–¶194JP — FDIC Suppression, Banking Fraud, and Procedural Sabotage**

¶194JA Judicial officers refused to recognize FDIC oversight and allowed foreclosure enforcement to proceed without adjudicating the legitimacy of asset transfers. These rulings were issued despite Plaintiff's presentation of Exhibit 31 and related evidence confirming federal asset control and title extinguishment.

¶194JB MERS-originated title documents were used to create the illusion of lawful assignment, despite MERS lacking authority to transfer ownership. These documents were accepted by courts without evidentiary scrutiny, enabling enforcement of void claims.

¶194JC Under 12 U.S.C. § 1821(d), FDIC asset determinations supersede all conflicting state claims and mandate federal jurisdiction when asset transfers are disputed. Defendants' suppression of these records violated federal banking law and preempted state-level foreclosure enforcement.

¶194JD The concealment and fabrication of records constitute banking fraud under 18 U.S.C. §§ 1001 and 1014, as DBNTC attorneys knowingly submitted false statements and misrepresented material facts in judicial proceedings to secure enforcement of void foreclosure judgments.

¶194JE Judicial complicity in accepting and enforcing these falsehoods supports Plaintiff's Civil RICO claim, demonstrating that Defendants operated as an enterprise to shield fraudulent foreclosure actions from legal scrutiny and suppress federally protected defenses.

¶194JF Plaintiff's injuries—including loss of property, reputational harm, and suppression of federal defenses—stem directly from this coordinated banking fraud and judicial enforcement of void claims. These injuries are ongoing and demand constitutional and statutory remedy.

**Procedural Due Process Violations & Denial of Meaningful Review**

**(U.S. Const. Amend. V & XIV; 42 U.S.C. § 1983; Federal Rules of Civil Procedure)**

¶194JG Plaintiff incorporates Paragraphs 1 through 440 and documents that Defendants—including Judges Emily Marks and Brooke Reid, state court clerks, and DBNTC attorneys—engaged in coordinated manipulation of judicial procedures designed to suppress Plaintiff's defenses, block evidentiary hearings, and enforce foreclosure judgments without meaningful review.

¶194JH Courts repeatedly:

- Refused to acknowledge controlling federal statutes, including FIRREA, SCRA, and FDIC preemption doctrine

- Plaintiff's discovery requests into servicing fraud, title irregularities, and false certifications

- Issued dispositive rulings without full evidentiary hearings or findings of fact

¶194JI Clerks obstructed filings by:

- Delaying docket entries and introducing indexing errors

- Misrouting motions to prevent judicial review

- Enforcing injunctions that suppressed valid defenses before they were adjudicated

¶194JJ DBNTC attorneys contributed to suppression by:

- Misrepresenting procedural posture to block hearings

- Leveraging judicial bias to reinforce summary rulings

- Exploiting dismissal tactics that prevented merits-based adjudication

¶194JK These acts denied Plaintiff the fundamental protections of procedural due process, which require:

- Neutral adjudication

- Proper notice and opportunity to be heard

- Equal treatment under procedural standards

¶194JL Judicial rulings favored foreclosure enforcement overdue process, issuing final orders while suppressing Plaintiff's statutory defenses, legal representation, and evidentiary submissions.

¶194JM The cumulative manipulation of court procedures ensured that DBNTC's fraudulent claims were never rigorously tested—violating Plaintiff's Fifth and Fourteenth Amendment rights and triggering civil liability under 42 U.S.C. § 1983.

**Judicial Misconduct and Collusive Dynamics**

¶194JN The state court record reflects that Judge James Anderson repeatedly disregarded both state and federal law, acting as an enabler of foreclosure counsel rather than an impartial adjudicator. Despite Plaintiff's voluminous filings—including statutory defenses and jurisdictional challenges—Judge Anderson refused to acknowledge Plaintiff's arguments on the record, issuing orders and judgments without merit review. In multiple cases, including one involving fellow homeowner Sylvia Derico, Judge Anderson continued proceedings without jurisdiction, even after Derico had formally withdrawn her complaint. That case also involved Evans Brittan, a former law partner of Judge Emily Marks at Ball & Ball Law Firm, reinforcing a pattern of favoritism and institutional protection.

In Plaintiff Thomason's matter, Judge Anderson presided over foreclosure enforcement in kangaroo court fashion, holding Plaintiff over for systematic judgment while actively suppressing statutory defenses under FIRREA, SCRA, and federal removal doctrines. Attorneys Sebrina Martin and Jessie Hefner, previously engaged to represent Plaintiff, abandoned their duties mid-litigation, further reflecting collusive dynamics tied to judicial suppression. Attorney Martin, who had previously agreed to represent Plaintiff, was alleged to be present in court only for a "workout deal," not litigation support—despite representations to the contrary.

Moreover, Attorney Bottcher, representing DBNTC, allegedly remarked that Attorney Martin would never represent Plaintiff, confirming coordination to isolate Plaintiff from competent legal assistance. Bottcher's conduct culminated in an offer to sell Plaintiff's home back to him, despite DBNTC lacking legal title, valid assignment, or standing—an act reflective of material misrepresentation and bad-faith enterprise conduct.

¶194JO In the course of the alleged "workout agreement" referenced by DBNTC counsel, Attorney Bottcher acknowledged that the Thomason family possessed valid federal claims under the Truth in Lending Act (TILA) and other statutory violations. Rather than engage those claims judicially, Bottcher insisted they be waived as a condition of any proposed settlement—effectively leveraging procedural suppression to extinguish federally protected rights outside adjudication. The attempt to resell Plaintiff's home—despite DBNTC's lack of valid title—while simultaneously demanding waiver of federal lending claims, reflects not negotiation, but exploitation under color of foreclosure power.

¶194JP The cumulative procedural manipulation outlined herein denied Plaintiff a meaningful opportunity to contest fraudulent foreclosure enforcement. Despite presenting a series of federally protected defenses, Plaintiff was confronted with judicial rulings issued without hearings, blocked filings, and denial of discovery access. Clerks' mis-indexed, misrouted, and delayed critical documents; attorneys misrepresented procedural posture to suppress adjudication; and judges enforced injunctions and dismissal tactics that insulated DBNTC's claims from factual scrutiny. At every turn, the mechanisms of judicial process were leveraged not to assess the truth, but to entrench enforcement of void claims. This systemic sabotage—executed under color of law—extinguished Plaintiff's ability to meaningfully assert his property rights, federal defenses, and constitutional protections.

¶194JQ Plaintiff incorporates Paragraphs 1 through 450 and documents that Judges Emily Marks and Brooke Reid, state court clerks, and DBNTC attorneys engaged in systemic concealment and misrepresentation of judicial records. These actions undermined transparency, obstructed public access, and suppressed Plaintiff's ability to challenge wrongful foreclosure actions.

¶194JR Specific acts of concealment included:

- Alteration of case indexing and docket timelines to distort procedural history

- Blocking Plaintiff's filings from public record via injunction enforcement and docket suppression

- Denial of discovery and FOIA-related access to banking records and foreclosure documents

¶194JS DBNTC attorneys and judicial clerks facilitated these efforts by:

- Mislabeling filings to prevent appellate tracking

- Suppressing evidentiary documents related to asset transfers and title chain fabrication

- Ensuring foreclosure orders were enforced before challenges could reach public review

¶194JT These acts violated transparency principles under 5 U.S.C. § 552 (FOIA), which mandates public access to government records and judicial filings. Indexing manipulation and record alteration also violate the Federal Records Act, obstructing administrative oversight and public accountability.

¶194JU Plaintiff was repeatedly denied access to rulings and motions essential to understanding and challenging foreclosure enforcement—including missing entries, altered timestamps, and concealed injunctions.

¶194JV Public accountability was systematically denied, ensuring DBNTC's fraudulent foreclosure claims remained shielded from correction and scrutiny. The opacity was strategic and coordinated—not incidental.

¶194JW These violations inflicted direct harm on Plaintiff by preventing fair appellate review, shielding misconduct from discovery, and dismantling his ability to seek legal remedy under constitutional and administrative law.

¶194JX Between 2018 and 2025, Plaintiff documented a recurring pattern of record suppression and judicial indexing manipulation across multiple Alabama circuit courts. Filings submitted by Plaintiff—including motions, affidavits, and statutory defenses—were routinely omitted from public dockets, mis indexed to unrelated case numbers or sealed without justification. In contrast, foreclosure pleadings submitted by DBNTC attorneys were promptly entered, timestamped, and

advanced through procedural milestones. This disparity in record handling created a distorted litigation history that favored enforcement outcomes and concealed Plaintiff's objections from appellate and public review. The manipulation of docket visibility and procedural labeling obstructed transparency, undermined judicial neutrality, and reinforced the enterprise's broader strategy of suppressing statutory defenses under color of law.

¶194JY Plaintiff was repeatedly denied access to key filings and orders centrally to the adjudication of his foreclosure defense. Judicial clerks and court administrators selectively suppressed entries—omitting rulings, sealing motions without justification, and failing to properly serve Plaintiff with updated case activity. Attempts to retrieve missing records through court access portals and clerk inquiries were stonewalled or redirected.

¶194JZ Beyond Plaintiff's matter, Alabama circuit courts exhibited systemic indexing manipulation tied to financial foreclosure litigation. Timeline distortions, false labeling of procedural posture, and omission of hearing dockets created artificial consistency in favor of financial actors. In Plaintiff's case, injunctions and rulings were issued without documentation or public posting, and subsequent filings appeared to backfill judicial records to match enforcement outcomes already executed. These patterns confirm deliberate circumvention of judicial transparency safeguards and reinforce the enterprise's broader suppression strategy.

**Constructive Fraud & Suppression of Statutory Defenses**

**(28 U.S.C. § 2415(a); 12 U.S.C. § 1821(d); Color of Law Doctrine)**

¶194KA Plaintiff incorporates Paragraphs 1 through 460 and documents that Defendants—including DBNTC attorneys, judicial officers, and affiliated foreclosure agents—concealed material facts regarding jurisdiction, note ownership, assignment validity, and statutory time bars. These omissions suppressed Plaintiff's ability to assert key federal defenses and obstructed adjudication of claims under FIRREA and SCRA.

¶194KB Defendants failed to disclose critical facts, including:

- The 2012 FDIC letter invalidating post-IndyMac asset enforcement

- Gaps in the chain of title and ownership claims

- Timing constraints under FIRREA and 28 U.S.C. § 2415(a)

- Absence of proper authorization under FDIC receivership protocols

¶194KC Courts accepted foreclosure pleadings despite these omissions, relying on incomplete filings and misrepresented ownership assertions. Judicial officers declined to adjudicate Plaintiff's FIRREA-based challenges, allowing void judgments to proceed under suppressed statutory contexts.

¶194KD Plaintiff was materially harmed by these concealments, resulting in loss of federal defenses, denial of jurisdictional review, and foreclosure enforcement on invalid claims. The pattern of silence operated as constructive fraud, depriving Plaintiff of constitutionally and statutorily protected remedies.

¶194KE These acts constitute concealment under color of law and trigger legal liability under doctrines governing equitable suppression, constructive fraud, and procedural deception.

**Void Enforcement and Coercive Waiver**

**(Rule 60(b)(4); Rule 60(d)(3); U.S. Const. Amend. V & XIV)**

¶194KF The concealed FDIC asset determinations—particularly the 2012 ruling invalidating post-IndyMac enforcement—directly impacted Plaintiff's ability to assert jurisdictional defenses under 12 U.S.C. § 1821(d). Rather than engage these preemption claims, courts and counsel omitted them from the record, allowing foreclosure posture to advance without statutorily mandated review.

¶194KG Timeline constraints under 28 U.S.C. § 2415(a)—which govern enforcement windows for federally controlled assets—were never disclosed to Plaintiff, despite counsel and judicial officers possessing documents showing the foreclosure timeline had lapsed. Suppressing these facts deprived Plaintiff of one of his strongest procedural defenses.

¶194KH These omissions were strategic. DBNTC counsel, judicial actors, and foreclosure agents operated under color of law to conceal jurisdictional voids and timeline expirations. As a result, Plaintiff suffered loss of possession, procedural standing, and access to federally protected remedies. Their silence amounted to a calculated breach of duty and operated as constructive fraud.

¶194KI Plaintiff incorporates Paragraphs 1 through 470 and documents that the trial court order entered on April 2, 2025—upon which DBNTC's foreclosure enforcement and ejectment posture relied—was declared void ab initio by the Alabama Court of Civil Appeals. All subsequent enforcement mechanisms were rendered jurisdictionally defective.

¶194KJ Despite the absence of a valid judgment, a writ of possession was executed, forcibly removing Plaintiff from his homestead. This enforcement disregarded constitutional rights, active defenses under FIRREA and SCRA, and binding federal jurisdictional doctrine.

¶194KK Judicial officers, including Judge James Anderson, knowingly continued enforcement against Plaintiff based on the void judgment. The record shows Anderson disregarded voluminous filings, jurisdictional protests, and constitutional defenses, operating as a rubber-stamp agent of DBNTC's foreclosure counsel. This mirrored conduct from prior proceedings, including the Sylvia Derico case, where Anderson advanced foreclosure interests even after the complaint had been withdrawn.

¶194KL In Plaintiff's case, enforcement included attempted resale of his property by Attorney Bottcher, who—despite DBNTC's lack of valid title—offered to "return" the home to Plaintiff on the condition that his family waive Truth in Lending Act (TILA) claims and other statutory remedies. Bottcher's proposal followed Attorney Sebrina Martin's abandonment of Plaintiff despite prior representations to the contrary, reflecting coordinated suppression and coercive waiver tied to enterprise conduct.

**Supporting Violation of Judicial Transparency & Public Accountability**

**(5 U.S.C. § 552; Federal Records Act Violations; Due Process)**

**Eviction and Foreclosure Executed Under Void Authority**

¶194KM Plaintiff's eviction and the foreclosure sale were executed not under judicial neutrality, but through coordinated suppression, coercion, and enforcement of void rulings. The underlying trial court judgment—declared void ab initio by the Alabama Court of Civil Appeals—was used to justify ejectment and property transfer despite unresolved federal defenses under FIRREA and SCRA. Judicial

officers, including Judge James Anderson, disregarded Plaintiff's jurisdictional challenges, statutory filings, and constitutional objections, enabling DBNTC's enforcement posture without lawful authority. These facts support equitable reversal under Rule 60(b)(4) and factual findings of fraud upon the court under Rule 60(d)(3).

**Material Misrepresentation and Title Defects**

¶194KN On or about August 30, 2018, Altisource produced a Foreclosure Information Report (Exhibit 41 / Document 16), prepared prior to the contested foreclosure, revealing critical defects in DBNTC's mortgage and title posture. The report identified:

- An incomplete legal description omitting directional references and measurements from the vesting deed (e.g., "Southeast quarter" and 268.95-foot right-of-way)

- Absence of probate documentation despite the death of Priscilla L. Thomason, raising succession-of-interest concerns

- A lien recorded at Book/Page 04413/0015 eliminated due to address mismatch, suggesting the foreclosure encumbered the wrong parcel or violated constructive notice standards

- Multiple recordings of the Bond for Title (Bk/Pg 2075/0673 and 2081/0650) with survivorship language conflicting with DBNTC's recorded interest. These discrepancies cast doubt on DBNTC's standing, reveal material disruption of chain of title, and support Plaintiff's argument for title invalidation, servicing misconduct, and violation of FIRREA's regulatory and evidentiary mandates.

**Jurisdictional Suppression, Procedural Sabotage, and Void Enforcement**

¶194KO On May 20, 2022, in case 2:22-CV-00287, DBNTC's attorney Joseph V. Ronderous filed a false affidavit against SSGT Bre Leonna Thomason, stating she was not in the military. This misrepresentation was intended to circumvent foreclosure protections under the Servicemembers Civil Relief Act (SCRA) and enabled enforcement of a void foreclosure posture.

¶195 On January 23, 2025, Plaintiff filed the operative Counterclaim/Complaint in Montgomery County Circuit Court. FDIC and Ocwen were properly served but failed to file responsive pleadings or motions to dismiss.

¶196 On May 29, 2025, Plaintiff perfected service of a pending Default Judgment Hearing against FDIC and Ocwen. The hearing remains calendared before Judge James Anderson.

¶197 On July 16, 2025, Plaintiff filed an Emergency Motion pursuant to Federal Rule of Appellate Procedure 8(a)(2), requesting:

- Immediate stay of state actions

- Reinstatement of possession

- Suspension of all enforcements pending federal appeal

- Other equitable relief to prevent further irreparable harm

¶198 Deutsche Bank National Trust Company initiated three ejectment actions against Plaintiff:

- CV-2022-900161.00 (filed Feb 9, 2022; dismissed May 5, 2022)

- 2:22-CV-00287 (filed May 12, 2022; dismissed Mar 14, 2023)

- CV-2023-900827.00 (filed Jun 16, 2023; still active)

¶199 On September 13, 2023, SSGT Bre Leonna Thomason removed the state case to federal court under 50 U.S.C. § 514. The case was remanded without appellate review (First Removal).

¶200 On August 13, 2024, Plaintiff filed a second removal under 28 U.S.C. §§ 1442 and 1443 and submitted counterclaims against Ocwen and FDIC (Second Removal).

¶201 On August 16, 2024, Judge Anderson instructed the state clerk to remove the case from the active docket.

¶202 On December 3, 2024, Federal Judge Emily Marks issued a second remand order, returning the case to Montgomery County Circuit Court.

¶203 On December 4, 2024, Plaintiff filed a Notice of Appeal in the Eleventh Circuit, invoking federal jurisdiction under §§ 1442 and 1443.

¶204 On December 5, 2024, the Eleventh Circuit assigned Case No. 24-13965.

¶205 On January 23, 2025, Plaintiff filed a third removal, again asserting federal jurisdiction and perfecting service upon Ocwen and the FDIC.

¶206 On January 24, 2025, Judge Marks remanded for a third time to state court without substantive ruling on jurisdictional claims.

¶207 On January 26, 2025, Plaintiff filed a second Eleventh Circuit Notice of Appeal (Exhibit 7).

¶208 On January 27, 2025, the Eleventh Circuit accepted Case No. 24-10236.

¶209 On February 11, 2025, Judge Anderson issued a writ of ejection despite active federal appeals. The order was concealed and later filed on February 17, 2025 (Exhibit 9).

¶210 On February 18, 2025, Plaintiff filed a State Notice of Appeal (Exhibit 10), having just discovered the concealed ejectment order.

¶211 On March 19, 2025, Alabama Civil Court of Appeals dismissed the appeal as from a non-final judgment, ignoring federal removal status (Exhibit 11).

¶212 On February 20, 2025, DBNTC's counsel submitted payment for the Writ of Possession (Exhibit 12).

¶213 On March 10, 2025, a Writ of Possession was issued (Exhibit 13), despite federal appellate review.

¶214 On March 13, 2025, Plaintiff filed a Rule 62 motion to recall the writ (Exhibit 14).

¶215 On April 2, 2025, Judge Anderson issued a second ejection order, which was again withheld from Plaintiff.

¶216 On April 15, 2025, Plaintiff filed a second State Notice of Appeal, assigned Case No. CL-2025-0281 (Exhibit 15).

¶217 On the same day, the Eleventh Circuit confirmed jurisdiction in both appeals, rejecting DBNTC's motions to dismiss or sanction (Newsom, Luck, Grant, JJ.) (Exhibit 16).

¶218 On April 22, 2025, Plaintiff paid $451 for appellate record preparation (Exhibit 17).

¶219 On April 25, 2025, Plaintiff moved for default judgment against FDIC and Ocwen in the amount of $1 million (Exhibit 18).

¶220 On May 13, 2025, Alabama Civil Court issued a Deficiency Notice despite Plaintiff's proof of payment (Exhibit 19).

¶221 On June 5–6, 2025, DBNTC coordinated final physical ejection. Montgomery County Sheriff's Office entered without notice, removed property to the roadside, and detained Plaintiff's pets.

¶222 Plaintiff's attempts to halt the order were denied. Captain Johnson of the Sheriff's Office contacted Judge Anderson, who disclaimed jurisdiction. Captain Johnson apologized but enforced the order.

¶223 On June 16, 2025, Alabama Civil Court of Appeals ruled that the April 2, 2025, ejection order was void. The trial court lacked jurisdiction and acted prematurely. See Ex parte Wynn, 227 So. 3d 534 (Ala. Civ. App. 2017).

¶224 The appellate court stated: "The trial court's void April 2, 2025, order is the subject of the present appeal; a void order cannot support appeal." See Riley v. Hughes, 17 So. 3d 643, 649 (Ala. 2009). It ordered dismissal and barred further filings pending issuance of a certificate of judgment.

¶225 Under 28 U.S.C. § 1446(d), once notice of removal is filed, the state court is prohibited from further proceedings unless and until the case is formally remanded. At least two federal removal cases filed by Plaintiff were pending before the Eleventh Circuit on appeal, rendering subsequent state court actions—including ejectment orders—void ab initio. See Ackerman v. ExxonMobil Corp., 734 F.3d 237 (4th Cir. 2013); Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875 (1st Cir. 1983).

¶226 Judge Emily Marks entered an injunction against Plaintiff and repeatedly disregarded procedural safeguards associated with federal removal and appellate jurisdiction. This conduct reflects apparent collusion between federal and state court actors, resulting in the denial of Plaintiff's right to judicial relief and retaliation for asserting federally protected claims under the Fair Housing Act and constitutional law.

¶227 Appellees coordinated actions led to the unlawful entry, search, and seizure of Plaintiff's home and personal belongings, violating the Fourth Amendment of the United States Constitution.

¶228 Appellees' actions deprived Plaintiff of property without due process or just compensation, in violation of the Fifth Amendment.

¶229 Plaintiff was denied equal protection of the laws and access to federal remedies, in violation of the Fourteenth Amendment.

¶230 Plaintiff asserts claims under 42 U.S.C. § 1985(2) and (3), alleging that court officials and opposing counsel conspired to obstruct justice and intimidate Plaintiff from pursuing federally protected litigation, consistent with the protections established in the Ku Klux Klan Act.

¶231 State and federal court officials retaliated against Plaintiff for pursuing lawful reclamation and federal litigation, in violation of 42 U.S.C. § 3617 of the Fair Housing Act. See Hidden Village LLC v. City of Lakewood, Ohio, 734 F.3d 519 (6th Cir. 2013).

¶232 The enforcement of physical ejectment during active federal appellate review constitutes obstruction of due process and justice in violation of 18 U.S.C. § 1509.

¶233 Pursuant to 12 U.S.C. § 1821(d)(13)(D), FIRREA bars state courts from adjudicating claims or disputes relating to assets of failed banks under FDIC receivership. Plaintiff's mortgage and property interests fall within this category. Nonetheless, Montgomery County Circuit Court proceeded to authorize foreclosure and ejectment in direct violation of FIRREA's mandatory claims protocol.

¶234 Any state court order issued without jurisdiction over failed bank assets is legally void and unenforceable. Courts lack authority to cure jurisdictional defects

retroactively, rendering the foreclosure orders and related writs issued by the state court null and subject to vacatur.

¶235 The FDIC's regulatory determinations concerning IndyMac Bank preclude foreclosure proceedings unless administratively reviewed under FIRREA. The state court refused to recognize the FDIC's exclusive jurisdiction and permitted enterprise actors—including DBNTC and its counsel—to circumvent federal banking law.

¶236 FIRREA's statutory framework mandates that any party asserting rights over a failed bank asset must submit to FDIC review before any judicial proceeding may commence. DBNTC's foreclosure efforts lacked this prerequisite and were allowed to proceed unlawfully by state court officials.

¶237 Judicial orders issued in violation of FIRREA must be vacated. The Circuit Court lacked jurisdiction under FIRREA, and 28 U.S.C. § 1446(d) barred all state action while federal appeals remained pending. The foreclosure and ejectment orders must be rescinded.

¶238 Plaintiff respectfully requests that all foreclosure-related orders and writs be vacated due to statutory jurisdictional violations and unauthorized adjudication over federally protected assets under FIRREA.

¶239 Plaintiff further requests that all state court proceedings be stayed until resolution of his federal appeals by the Eleventh Circuit Court of Appeals.

¶240 Plaintiff seeks immediate recall of the Writ of Possession and reinstatement of lawful possession of the subject property.

¶241 Plaintiff requests permission to re-enter and secure the property, which includes:

¶242 Resuming efforts to pump and drain flooding

¶243 Continuing repairs and restoration efforts interrupted by unlawful ejectment

¶244 Returning assistance animals previously removed and detained during the seizure

¶245 Securing interim possession rights through posting of bond pending final adjudication

¶246 Plaintiff requests that this Court declare void any state court orders or enforcement actions initiated during pending federal appellate jurisdiction.

¶247 Plaintiff requests that a Single Judge may issue such relief or schedule an expedited hearing for review of these urgent matters.

¶248 Plaintiff respectfully requests such further equitable and legal relief as this Court deems just and proper.

¶249 Plaintiff affirms that these requests arise from irreparable harm and procedural sabotage during ongoing federal oversight.

¶250 The Rule 8 Emergency Motion was filed following a pattern of obstruction in Montgomery County Circuit Court where one non-final judgment was issued, followed by a void judgment dated April 2, 2025—both during active federal appeals. Despite perfected service and proof of record payment, the court refused to hear Plaintiff's Default Judgment Motion against FDIC and Ocwen (Exhibits 17 & 18).

¶251 On June 16, 2025, the Alabama Civil Court of Appeals ruled the April 2, 2025, ejectment order to be a nullity, citing lack of jurisdiction due to unresolved appeal CL-2025-0144. The appellate court reaffirmed that void orders cannot support enforcement or appeal. See Ex parte Wynn, 227 So. 3d 534 (Ala. Civ. App. 2017); Riley v. Hughes, 17 So. 3d 643 (Ala. 2009).

¶252 On July 15, 2025, Plaintiff experienced coordinated retaliation involving the City of Montgomery Police Department. Officers responded to a false criminal trespass report initiated by Mr. Mason Lesenbre, regional manager of Altisource, who falsely alleged that Plaintiff had illegally entered his own home.

253 The responding officer confirmed that Mr. Mason Lesenbre was not present, observed no evidence of forced entry, reviewed Plaintiff's deed, and verified Plaintiff's lawful residence since 2004. The officer concluded the matter was civil in nature, and the false report was closed without charges. This incident reflects enterprise misconduct designed to provoke intimidation and law enforcement scrutiny without probable cause.

¶254 Plaintiff subsequently filed a formal Notice of Property Reclamation, asserting lawful possession under color of title, invoking federal removal posture,

and citing unlawful ejection amid active appeals. The Notice was served on enterprise actors and filed with the Circuit Court, which ignored the filing without docket entry or hearing.

¶255 These events collectively illustrate deliberate procedural sabotage. Circuit Court officials, enterprise actors, and defense counsel disregarded federal removal protocol, suppressed appellate jurisdiction, and obstructed adjudication of Plaintiff's valid claims—including motions for default judgment against federally regulated entities.

¶256 Plaintiff reaffirms that Rule 8 filing, active federal appeals, unlawful seizure of property, and retaliatory law enforcement maneuvers establish predicate acts under:

- Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(d))

- Fair Housing Act retaliation (42 U.S.C. § 3617)

- Servicemembers Civil Relief Act (50 U.S.C. § 3953)

- Obstruction of justice (18 U.S.C. § 1509)

- Conspiracy to intimidate litigants (42 U.S.C. § 1985(2)–(3))

¶257 Based on the full factual chronology, Plaintiff invokes federal jurisdiction and venue under 18 U.S.C. § 1965(b), 28 U.S.C. §§ 1441–1443, 50 U.S.C. § 3953 Plaintiff asserts causes of action rooted in sustained retaliatory coordination and unlawful dispossession.

**Servicing Misrepresentation and Standing Obfuscation**

¶258 On July 21, 2025, counsel for PHH Mortgage Services issued a letter acknowledging receipt of Plaintiff's Qualified Written Request (QWR) dated July 14, 2025. The letter, authored by David Bottcher of McCalla Raymer Leibert Pierce, LLC, directed all future correspondence to outside counsel and identified Deutsche Bank National Trust Company (DBNTC) as "the investor" in the subject mortgage loan.

Notably:

- The letter did not assert DBNTC's status as the holder of the note or mortgage

- No substantive response was issued by PHH as required under 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.36.

¶259 Under RESPA, the mortgage servicer—not its legal counsel—is required to issue a timely and substantive response to borrower inquiries. Bottcher's appearance and redirection constitute procedural gatekeeping and statutory evasion. Furthermore, the designation of DBNTC as "investor" rather than "holder" undermines any claim of lawful enforcement authority.

¶260. This distinction is reinforced by the Ninth Circuit's ruling in Deutsche Bank Nat'l Trust Co. v. FDIC, 744 F. App'x 612 (9th Cir. 2018), which declared DBNTC's claims prudentially moot and relegated it to general unsecured creditor status under 12 U.S.C. § 1821(d)(11)(A)(iii).

"DBNTC's claims were prudentially moot under FIRREA receivership provisions, and it held no enforceable priority or possession." — Deutsche Bank Nat'l Trust Co. v. FDIC, 744 F. App'x 612, 613 (9th Cir. 2018)The servicer's failure to respond directly, coupled with its reliance on a legally disqualified proxy, evidence systemic misrepresentation, standing obfuscation, and enterprise structuring designed to evade statutory accountability.

261. On or about July 11, 2025, Plaintiff physically reclaimed possession of the subject property at 901 Seibles Road, Montgomery, Alabama, pursuant to a voided judgment under appeal in the Alabama Civil Court of Appeals. Agents affiliated with Altisource—a contractor of Defendant DBNTC—requested a five-day delay to remove metal boarding and stalls, during which DBNTC allegedly attempted to sell the property to an international buyer from India. On the fifth day, Plaintiff observed the arrival of a truck carrying two individuals identified as Indian nationals, reportedly assigned to install perimeter fencing and erect "No Trespassing" signage. Plaintiff successfully barred access to the property, asserting legal possession and informing both individuals that no valid ejection existed. Plaintiff contends that the attempted fencing and signage—executed during appellate proceedings—constitutes unlawful reclassification of the property as transferred.

**Venue Manipulation and Judicial Integrity Violation – McGlinchey Stafford's Enterprise Role**

¶ 262. In 2021, the law firm McGlinchey Stafford, representing Deutsche Bank and associated services, orchestrated the removal of the state foreclosure case from Judge Hardwick, who had presided since 2012. This maneuver coincided with the firm's parallel efforts to bypass Judge Myron Thompson in the federal forum, who had likewise presided over related constitutional claims since 2012. The result was the installation of Judge Marks, who subsequently issued an injunction that violated 12 U.S.C. § 1821(j) and facilitated enterprise suppression.

¶ 263. This dual-forum manipulation—executed by the same firm and attorneys—constitutes coordinated venue shopping designed to evade judicial scrutiny and suppress federal claims. Deutsche Bank and its counsel concealed the applicability of federal law, including FIRREA and RESPA, to maintain control over the forum and avoid adjudication under statutes they could not prevail against.

¶ 264. In March 2024, the Judicial Conference of the United States adopted a new policy to combat judge shopping, mandating district-wide random assignment for civil actions seeking injunctive or declaratory relief. This policy directly addresses the tactics used by McGlinchey Stafford in this matter and affirms the need for venue reassignment to a neutral forum. "The policy applies to cases seeking to bar or mandate state or federal actions, including challenges to laws, orders, or policies. It promotes random case assignment across the district to prevent litigants from targeting specific judges."

**Judicial Conference Announcement, March 12, 2024**

¶ 265. Accordingly, Plaintiff has filed this action in the Northern District of Georgia (Atlanta Division) and will remove the related state case to the same venue. This action aligns with the Judicial Conference's 2024 policy and seeks to restore judicial integrity, neutralize enterprise forum control, and ensure impartial adjudication of federal claims.

**Tacit Warning from Law Enforcement Confirms Procedural Misconduct**

¶ 266. On or about [insert date], two uniformed deputies from the Montgomery County Sheriff's Office arrived at Plaintiff's residence and delivered a copy of an ejection order issued by Judge James Anderson. The deputies informed Plaintiff

that they would return on Tuesday, [insert date], to forcibly remove him from the property.

¶ 267. Plaintiff notes that the deputies' demeanor and unsolicited advance notice strongly suggest that someone within the Sheriff's Office recognizes the procedural irregularities and ethical concerns surrounding the planned ejection. The order had not been previously served through lawful channels, nor was it accompanied by any docketed notice, writ of possession, or opportunity to be heard.

¶ 268. Plaintiff believes this warning was intentionally provided to give him time to seek federal relief and reflects internal discomfort with the enterprise's tactics. This moment confirms that the misconduct is not merely legal—it is visible and troubling to those tasked with enforcing it. The deputies' actions serve as tacit acknowledgment that the ejection order, and the manner in which it is being enforced, violates both procedural norms and constitutional protections.

¶ 269. On July 28, 2025, Plaintiff removed the related state court action to the United States District Court for the Northern District of Georgia (Atlanta Division) pursuant to 28 U.S.C. §§ 1443, 1442, the Fair Housing Act, and the Federal Deposit Insurance Act (FDIA). This removal was necessary to invoke federal jurisdiction over constitutional violations, enterprise structuring, and systemic suppression of Plaintiff's rights.

¶ 270. Plaintiff's removal includes all claims arising under federal law, including violations of the Fair Housing Act, FDIA asset determinations, and civil rights deprivations under color of law. The removal also incorporates this RICO action, which exposes coordinated misconduct by servicers, defense counsel, and judicial actors. Upon removal, all state court proceedings are stayed, and any further action by state court actors constitutes unlawful interference with federal jurisdiction and obstruction of justice under 18 U.S.C. §§ 1512 and 1962(d).

**COUNT I – Civil Racketeering (RICO)**

****18 U.S.C. §§ 1962(c) and (d)****

**Against:** DBNTC, Ocwen/PHH, Altisource, McCalla Raymer, McGlinchey Stafford, Sirote & Permutt, Jubilee Movers, and affiliated counsel and judicial collaborators

A. Legal Standard

Under **18 U.S.C. § 1962(c)**, it is unlawful for any person associated with an enterprise engaged in interstate commerce to conduct its affairs through a pattern of racketeering activity.

Under **§ 1962(d)**, it is unlawful to conspire to violate any provision of § 1962.

### B. Jury Instruction Alignment

To prevail under RICO, Plaintiff must show:

| Element | Evidence Provided |
|---|---|
| Existence of an enterprise | Exhibit J – Named Enterprise Participants |
| Pattern of racketeering activity | Predicate Matrix; ¶30EK–¶30FC; ¶194–¶261 |
| Conduct of enterprise affairs | Coordinated suppression, foreclosure, and fraud |
| Injury to business or property | Loss of home, legal costs, emotional harm |

C. Incorporated Factual Allegations

Plaintiff incorporates ¶¶ 1–275, including:

- ¶¶ 31–50, ¶¶ 58–74, ¶¶ 84–101, ¶¶ 135–175, ¶¶ 186–187, ¶¶ 193–261

- **Predicate Evidence Matrix** (see subsection below)

- **Exhibit I – Chain-of-Title Irregularity Matrix**

- **Exhibit J – Named Enterprise Participants**

D. Pattern of Racketeering Activity

Defendants engaged in a structured pattern of racketeering activity involving:

- **Mail Fraud** – 18 U.S.C. § 1341
- **Wire Fraud** – 18 U.S.C. § 1343
- **Bank Fraud** – 18 U.S.C. § 1344
- **Obstruction of Justice** – 18 U.S.C. § 1503
- **Document Falsification / Identity Misuse** – 18 U.S.C. § 1028A

These acts were executed via servicing platforms engineered to conceal internal logic while emitting falsified records to courts, agencies, and counterparties.

### E. Enterprise Structure

The enterprise operated across state and federal forums and included:

- Loan services (Ocwen / PHH)
- Debt owners and trustees (DBNTC)
- Legal counsel operating across dual forums
- Clerks and judicial officers enabling sealings, removals, injunctions, and ejections without adjudication

See **Exhibit J – Named Enterprise Participants**, including:

- Brian Burnett and Wendy Traxler (robo-signers for MERS)
- Colin T. Dean and Praveen Sampat (Ocwen litigation and data suppression)
- Judge Emily Marks (judicial enabler of suppression)

- Chris Bottcher (servicer counsel gatekeeper)

F. Predicate Evidence Matrix

**| Actor / Entity | Role in Enterprise | Conduct | Statutory Violations | Supporting Evidence |**

|--------------------------|------------------------------------------|-------------------

| Eva Bank | Originator / Title Suppressor | Originated mortgage in fraud; misrepresented payoff logic; refused lien release | §1343§1962(c) § 1833a (FIRREA) | ¶45D, ¶194KN, Exhibit I |

| Jack Lavette| Counsel for Eva Bank | Defended payoff logic; concealed lien release obligations | § 1343, § 1962(d), § 1833a | ¶45D, Exhibit J |

| PHH Mortgage Corp. | Servicer / Suppression Platform | Redacted servicing logs; evaded QWR; simulated quote logic § 1343, § 1962(c), § 2605(e), § 2605(f) | ¶134–175, ¶258–259 |

| DBNTC | Trustee / Standing Fabricator | Executed foreclosure without authority; used void assignments | § 1341, § 1343, § 1962(c), § 1833a | ¶45A–45H, ¶196–198 |

| MERS | Registry / Identity Laundering | Enabled robo-signing and title laundering | § 1341, § 1028A, § 1962(c) | Exhibit I, Exhibit J|

| Altisource | Resale / Fencing Actor | Attempted resale during appeal; coordinated with servicers | § 1343, § 1962(c), § 3953 | ¶194KN, Exhibit J |

| Jubilee Movers | Ejection Agent | Participated in unlawful seizure during active appeal | § 1343, § 3953, § 1983 | ¶194KO |

| Christopher Bottcher | Servicer Counsel / Gatekeeper | Suppressed QWR response; obstructed RESPA compliance, obstructed justice, ordered illegal ejection while appeal is ongoing, continued state court proceedings without jurisdiction, instructed Altisource to call in bogus criminal complaint on Thomason, denied SSgt Bre Leonna Thomason SCRA Protections, Colluded with Judge Brooke Reid to remove case from Hardwick to Judge Anderson, Colluded with Judge Emily Marks to sanction Thomason violating right to petition the court | § 1343, § 2605(e), § 1962(c) | ¶258–259, Exhibit J |

| Joseph V. Ronderos | Litigation Counsel / FDIC Removal Actor | Removed case under FDIC logic without FIRREA exhaustion, File False Affidavit denying SSGT Bre Leonna Thomason Military Status violated Fierra Statutes Administrative Procedures | § 1343, § 1833a, § 1962(d) | ¶194KO, Exhibit J |

| T. Dylan Reeves | Litigation Counsel / Procedural Enabler | Filed foreclosure pleadings; concealed assignment defects | § 1343, § 1962(d) | Exhibit J |

| Natalie V. Walker | Assignment Coordinator / Former DA | Filed foreclosure pleadings; concealed procedural defects | § 1343, § 1833a, § 1962(c)–(d) | ¶194KN, Exhibit J |

| Enslen L. Crowe | Bankruptcy Counsel / False Claimant | Filed false tax debt claim; attempted relief from stay; conduct refuted | § 1343, § 152(2), § 1962(d) | ¶194KO, Exhibit J |

| Cynthia W. Williams | Foreclosure Counsel / Assignment Signer| Executed void assignments; concealed title defects , violated Fierra Administrative Procedures | § 1341, § 1343, § 1833a, § 3953 | ¶45D, Exhibit J

| Tiffany & Bosco, P.A. | Foreclosure Firm | Filed and defended foreclosure posture; coordinated litigation strategy | § 1343, § 1962(d) Violated Fierra Administrative Procedures | Exhibit J |

| McGlinchey Stafford PLLC | Servicer Defense Firm | Filed foreclosure pleadings; suppressed servicing logic | § 1343, § 1962(d), § 1833a | Exhibit J |

| Sirote & Permutt, P.C. | Foreclosure Firm / Assignment Fabricator | Executed assignments; concealed title defect, violated Fierra Administrative Procedures | § 1341, § 1343, § 1962(c), § 1833a | Exhibit J |

| Morris & Lavette, P.C. | Eva Bank Defense Firm | Defended payoff logic; concealed lien release obligations | § 1343, § 1962(d), § 1833a | Exhibit J |

G. **Damages Ledger – RICO Violations**

| Category of Injury | Approx. Incidents | Est. Damage per Incident | Subtotal |
|---|---|---|---|
| Fraudulent foreclosure and ejectment | 1 | $250,000 | $250,000 |
| Suppression of evidence and logs | 200+ | $1,000 | $200,000 |

| Procedural sabotage and denial of access | 5 | $50,000 | $250,000
|

| Emotional and constitutional harm | 1 | $100,000 | $100,000
|

| **Total RICO Damages Exposure | | $800,000

Subject to treble damages under 18 U.S.C. § 1964(c) → $2.4 million

H. Relief Requested

Plaintiff respectfully requests:

- Declaratory judgment that Defendants violated **18 U.S.C. §§ 1962(c) and (d)**
- Treble damages pursuant to **§ 1964(c)** totaling no less than **$2.4 million**
- Costs and attorney fees
- Injunctive relief prohibiting further enterprise coordination or enforcement
- Vacatur of all foreclosure-related orders and writs
- All other relief the Court deems just and proper

**COUNT II – Mail Fraud as RICO Predicate**

**18 U.S.C. § 1341; 18 U.S.C. §§ 1961(1), 1962(c), 1964(c)**

****Against:** DBNTC, Ocwen/PHH, McCalla Raymer, Altisource, Sirote & Permutt, Jubilee Movers, Tiffany & Bosco, McGlinchey Stafford, Morris & Lavette, and affiliated counsel including Christopher Bottcher, Joseph Ronderos, Natalie Walker, Enslen Crowe, Cynthia Williams, Jack Lavette**

A. Incorporated Paragraphs

Plaintiff incorporates ¶¶ 84, 126, 145–147, 157–160, 172–173, 197–202, 209–212, 232–234, 241–245

See also:

Appendix III – Predicate Evidence Matrix

Exhibit I – Chain-of-Title Irregularity Matrix

B. Factual Basis

Defendants used mailings to execute a fraudulent foreclosure scheme and conceal regulatory violations. These mailings were instrumental—not incidental—to property seizure and suppression of defenses.

C. Specific Instances

- Default and acceleration notices (¶157–158)
- Forged chain-of-title documents (¶232, ¶173)
- Foreclosure auction notices and writs (¶172–173, ¶198)
- Ejection orders mailed during active appeals (¶209–211)
- Return of pleadings citing sealed injunctions (¶199–200, ¶231–233)
- Gag orders mailed to justify foreclosure advancement (¶220, ¶241)

D. Resulting Harm

- Property loss and unlawful eviction
- Denial of military protection and discovery access
- Loss of standing and financial injury

E. Damages Ledger – Mail Fraud Violations

| Category of Injury | Approx. Incidents | Est. Damage per Incident | Subtotal |
|---|---|---|---|
| Mailings used to execute foreclosure | 5 | $50,000 | $250,000 |
| Mailings used to suppress pleadings | 3 | $25,000 | $75,000 |
| Mailings used to eject during appeal | 2 | $50,000 | $100,000 |
| Emotional and constitutional harm | 1 | $75,000 | $75,000 |
| Total Mail Fraud Damages Exposure | | | $500,000 |

Subject to treble damages under 18 U.S.C. § 1964(c) → $1.5 million

F. Relief Requested

Plaintiff respectfully requests:

- Finding of mail fraud under **18 U.S.C. § 1341**
- Declaratory relief invalidating mail-facilitated foreclosure actions
- Injunction against further mail-based enforcement
- Treble damages under **§ 1964(c)** totaling no less than **$1.5 million**
- Costs and attorney fees
- All other relief the Court deems just and proper

**COUNT III – Wire Fraud as RICO Predicate**

**18 U.S.C. § 1343; 18 U.S.C. §§ 1961(1), 1962(c), 1964(c)**

**Against: DBNTC, Ocwen/PHH, One West Bank, CIT Bank, McGlinchey Stafford, McCalla Raymer, Altisource, Sirote & Permutt, Tiffany & Bosco, Morris & Lavette, and affiliated counsel including Christopher Bottcher, Joseph Ronderos, Natalie Walker, Enslen Crowe, Cynthia Williams, Jack Lavette**

A. Incorporated Paragraphs

Plaintiff incorporates ¶¶ 31–35, 88–94, 135–138, 160–175, 193–194, 202–204, 210–212, 232–233, 258–260

See also:

Appendix III – Predicate Evidence Matrix

Exhibit I – Chain-of-Title Irregularity Matrix

B. Factual Basis

Defendants used electronic communications to transmit false information that impacted Plaintiff's rights and standing.

C. Specific Instances

- Electronic submission of forged title documents (¶232, ¶173)
- Online misrepresentations via CM/ECF and state portals (¶135–138, ¶160–166, ¶244–245)
- Emailed foreclosure notices during active duty (¶177–194)
- Electronic denial of court access (¶199–202, ¶210–212)
- Suppression of metadata and logs via servicing platforms (¶164–175)
- Misleading communications with regulators and FDIC (¶199)

D. Intent and Continuity

Defendants' electronic communications were designed to advance a long-running scheme of foreclosure fraud, evidentiary suppression, and forum manipulation. The conduct spanned over a decade, targeted the same Plaintiff and property, and violated military exemptions and borrower protections under federal law.

E. Resulting Injury

- Denial of due process and service access
- Destruction or concealment of evidence under RESPA, TILA, and SCRA
- Ejection based on procedurally defective documents
- Obstruction of judicial review via electronic court systems and servicer databases

F. Damages Ledger – Wire Fraud Violations

| Category of Injury | Approx. Incidents | Est. Damage per Incident | Subtotal |
|---|---|---|---|
| Forged title documents submitted electronically | 3 | $50,000 | $150,000 |
| Suppression of logs and metadata | 100+ | $1,000 | $100,000 |
| Emailed foreclosure notices during active duty | 2 | $50,000 | $100,000 |
| Electronic denial of court access | 3 | $25,000 | $75,000 |
| Misleading communications with regulators | 1 | $50,000 | $50,000 |
| Emotional and constitutional harm | 1 | $75,000 | $75,000 |
| Total Wire Fraud Damages Exposure | | | $550,000 |

Subject to treble damages under 18 U.S.C. § 1964(c) → $1.65 million

G. Relief Requested

Plaintiff respectfully requests:

- Finding of wire fraud under **18 U.S.C. § 1343**

- Declaratory and injunctive relief nullifying wire-transmitted fraudulent proceedings

- Treble damages under **§ 1964(c)** totaling no less than **$1.65 million**

- Costs and attorney fees

- All other relief the Court deems just and proper

**COUNT IV – Violation of the Servicemembers Civil Relief Act (SCRA)**

****50 U.S.C. §§ 3953, 3937****

****Against:** DBNTC, Ocwen/PHH, Altisource, McCalla Raymer, Tiffany & Bosco, McGlinchey Stafford, and affiliated counsel including Joseph Ronderos, Christopher Bottcher, Natalie Walker, Cynthia Williams**

**A. Legal Standard**

Under **50 U.S.C. § 3953**, foreclosure against property owned by an active duty servicemember is prohibited without a court order.

Under **§ 3937**, protections extend to co-owned property and mandate procedural safeguards.

**B. Factual Allegations**

Plaintiff incorporates ¶¶ 1–275, including:

- ¶185R–¶185V: Co-ownership and indispensable party status under Alabama law

- ¶190–¶194: SSGT Bre Leonna Thomason's active-duty status and statutory protections

- ¶194A–¶194B: False affidavit denying military service and title defects

- ¶258–¶261: Timeline manipulation, redacted logs, and servicing misconduct

**C. Violations**

- DBNTC initiated foreclosure in June 2018 without court approval, violating SCRA (¶194)

- SSGT Thomason was on continuous active duty since March 2018 (¶192)

- The Economic Growth Act of 2018 extended post-service protections to one year

- DBNTC's attorney **Joseph Ronderos** filed a false affidavit denying military status (¶194A)

- Altisource's title report revealed fatal defects in legal description and chain of title (¶194B)

**D. Resulting Harm**

- Foreclosure and ejectment executed in violation of federal military protections

- Suppression of co-owner rights and due process

- Procedural sabotage and denial of statutory defenses

**E. Damages Ledger – SCRA Violations**

| Category of Injury | Approx. Incidents | Est. Damage per Incident | Subtotal |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Foreclosure during active duty | 1 | $100,000 | $100,000 |
| False affidavit denying military status | 1 | $50,000 | $50,000 |
| Suppression of co-owner rights | 1 | $50,000 | $50,000 |
| Emotional and constitutional harm | 1 | $75,000 | $75,000 |
| Total SCRA Damages Exposure | | | $275,000 |

**F. Joint RICO Exposure and Treble Damages**

Although SCRA violations are not standalone RICO predicates, the conduct used to violate the SCRA—such as mail fraud, wire fraud, and obstruction of justice—is independently actionable under **18 U.S.C. § 1962(c)**. Therefore, Plaintiff pursues these violations jointly under RICO.

| Basis for Treble Damages | Statute | Calculation |
|---|---|---|
| Mail fraud (false affidavits, notices) | 18 U.S.C. § 1341 | Included in Count II |
| Wire fraud (electronic suppression) | 18 U.S.C. § 1343 | Included in Count III |
| Obstruction of justice (court access denial) | 18 U.S.C. § 1503 | Included in Count |
| Treble Damages Under RICO | § 1964(c) | $275,000 × 3 = $825,000 |

**G. Relief Requested**

Plaintiff respectfully requests:

- Declaratory judgment that foreclosure and ejectment violated the Servicemembers Civil Relief Act

- Vacatur of all related orders and writs

- Injunctive relief prohibiting further enforcement against co-owned military-protected property

- Damages under 50 U.S.C. § 3953(c) totaling no less than $275,000, or $825,000 if pursued jointly under RICO

- Costs and attorney fees

- All other relief the Court deems just and proper

**Subject to statutory damages under 50 U.S.C. § 3953(c)**

If pursued jointly under RICO → **Treble damages = $825,000

**COUNT 5 – Violations of RESPA and FDCPA Through Servicing Misrepresentation and Evidence Tampering**

**(12 U.S.C. §§ 2605(f), 2607; 15 U.S.C. § 1692f — Misrepresentation, Servicing Concealment, and Deceptive Collection Practices)**

Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein. These allegations form the evidentiary foundation for this Cause of Action, committed by Defendants acting individually and in concert, under color of statute and industry position.

Legal Basis

- RESPA Violations:

- 12 U.S.C. § 2605(f): Failure to correct servicing errors and withholding of servicing records

- 12 U.S.C. § 2607(a): Illegal kickbacks or fee manipulations concealed through redacted logs

- FDCPA Violations:

- 15 U.S.C. § 1692f: Use of unfair or unconscionable means to collect discharged debt without statutory basis

**Supporting Factual Allegations**

- ¶194AV: Redacted PHH servicing logs omitted all references to Form 1099-C debt cancellation, masking statutory discharge under 26 U.S.C. § 6050P and simulating collection on an extinguished obligation.

- ¶258: Timeline of foreclosures and servicing transfers aligns with redacted call log periods, evidencing strategic suppression of debt termination indicators.

- ¶259: Contradictions between RESPA logs, FDCPA disclosures, and DBNTC foreclosure affidavits reveal material inconsistencies across service platforms.

- ¶260: At least five conflicting "default dates" appear across DBNTC filings, each varying by over 90 days—directly impacting RESPA penalties and limitations accrual.

- ¶261: Defendant's refusal to produce native servicing matrix or unredacted logs deprived Plaintiff of evidence essential under 12 U.S.C. §§ 2605(f), 2607 and 15 U.S.C. § 1692f.

-¶262. Courts declined to compel production despite clear evidentiary mandates and Plaintiff's citation of controlling Eleventh Circuit precedent requiring servicers to disclose borrower-facing logs in RESPA litigation.

**Relief Sought – Count 5**

Plaintiff respectfully demands the following:

- Statutory damages totaling approximately $900,000, pursuant to 12 U.S.C. §§ 2605(f) and 2607, based on calculated violations including failure to produce

servicing records, inaccurate default representations, uncorrected documentation discrepancies, and RESPA disclosure suppression

- Declaratory judgment confirming servicing misrepresentation and concealment of discharge indicators in violation of federal statute

- Attorney fees and litigation costs under 12 U.S.C. § 2605(f)(3) and 15 U.S.C. § 1692k

- Injunctive relief enjoining further servicing, foreclosure posture, or collection actions related to the extinguished debt.

**📊 Damages Ledger – RESPA Violations Under 12 U.S.C. §§ 2605(f), 2607**

| Violation Category | Statute | Approx. Incidents | Estimated Damage per Incident | Subtotal |
|---|---|---|---|---|
| Failure to produce servicing matrix & unredacted logs | § 2605(f) | 36 | $2,500 | $90,000 |
| Contradictory default dates across 90+ day gaps | § 2605(f), § 2607 | 5 | $25,000 | $125,000 |
| Call log redactions masking statutory discharge | § 2605(f), § 2607 | 60 | $5,000 | $300,000 |
| Failure to notify borrower of servicer identity changes | § 2605(b), § 2605(f) | 18 | $2,500 | $45,000 |
| Misrepresentation of servicing status post-discharge | § 2605(f), § 2607 | 40 | $3,000 | $120,000 |
| RESPA fee manipulation via call log omissions | § 2607(a) | 40 | $4,000 | $160,000 |
| Ongoing attempts to collect discharged debt (overlap) | § 2605(f), § 2607 | 15 | $4,000 | $60,000 |

**Total Statutory Damages Exposure: $900,000.00**

This ledger clarifies that monetary relief isn't speculative—it's built from verifiable omissions, document discrepancies, and legally enforceable penalties.

**COUNT 6 – Simulated Servicing and Debt Discharge Suppression**

(26 U.S.C. § 6050P; 12 U.S.C. § 2605; 15 U.S.C. § 1692e, § 1692f — Servicing Reenactment, Redaction Concealment, and Debt Resurrection)

Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein. This Cause of Action arises from Defendants coordinated attempt to simulate ongoing servicing activities and to collect, report, and foreclose upon a debt that had been legally discharged and reported to the Internal Revenue Service.

Legal Basis

- IRS Debt Discharge Violations:

- 26 U.S.C. § 6050P: Requires creditors to report canceled debts exceeding $600 and prohibits continued collection

- Code G (Creditor policy to discontinue collection) invoked in Exhibit AE

- RESPA / FDCPA Breach:

- 12 U.S.C. § 2605: Misrepresentation of servicing status post-discharge

- 15 U.S.C. § 1692e, § 1692f: False, deceptive, and unfair means to collect extinguished deb

📎 Supporting Factual Allegations

- ¶194AU: IRS Form 1099-C dated November 13, 2014, reported cancellation of $12,116.30 relating to 901 Seibles Road. Identifiable Event Code G confirms creditor (Ocwen/PHH) chose to discontinue collection.

- ¶194AV: PHH servicing logs were redacted in discovery and omit all references to debt discharge or servicing reversal. These omissions contradict IRS reporting and suggest reenacted collection efforts.

- ¶258–¶261: Call log redactions, contradictory default dates, refusal to produce native records, and inconsistencies across affidavits confirm simulated servicing on a non-existent obligation.

**Relief Sought**

Plaintiff demands:

- Declaratory judgment confirming discharge of debt and unlawful reenactment of servicing activity

- Statutory damages under 26 U.S.C. § 6050P, 12 U.S.C. § 2605(f), and 15 U.S.C. § 1692k

- Injunctive relief prohibiting further collection, servicing, or enforcement of the discharged obligation

- Attorney fees and costs per statute

**COUNT 6 – Monetary Relief Summary**

**Cause of Action:**

**Fraudulent Foreclosure and Enterprise Structuring**

**(Violations of 18 U.S.C. §§ 1962(c), 1962(d); 42 U.S.C. §§ 1983, 1985; RESPA, TILA, FDCPA)**

Damage Sought:

- Compensatory Damages: $1,000,000

Loss of property, emotional distress, litigation costs, and restoration expenses tied to unlawful foreclosure

- Punitive Damages: $2,500,000

To deter future enterprise misconduct and retaliatory litigation targeting African American homeowners

- Treble Damages (RICO): $3,000,000

Under 18 U.S.C. § 1964(c), for predicate acts including mail fraud, obstruction, and simulated servicing

- Statutory Damages (RESPA/TILA/FDCPA): $25,000

For QWR violations, failure to validate debt, and deceptive servicing practices

- Attorney's Fees and Costs: TBD

To be calculated upon final judgment or settlement, pursuant to 42 U.S.C. § 1988 and applicable fee-shifting statutes

Total Relief Requested (Preliminary Estimate):

$6,525,000 + Attorney's Fees and Costs

**Exhibit – Count Six Damages Matrix**

**Cause of Action: Fraudulent Foreclosure & Enterprise Structuring**

**Statutes Invoked: 18 U.S.C. §§ 1962(c), 1962(d); 42 U.S.C. §§ 1983, 1985; RESPA; TILA; FDCPA**

Damage Category:

- Compensatory Damages – $1,000,000

Statutory Basis: 42 U.S.C. §§ 1983, 1985

Factual Basis: Unlawful foreclosure, emotional distress, restoration costs, loss of use and enjoyment of property

- Punitive Damages – $2,500,000

Statutory Basis: Federal common law; RICO

Factual Basis: Retaliatory litigation, servicer misconduct, racial targeting of African American homeowners

- Treble Damages (RICO) – $3,000,000

Statutory Basis: 18 U.S.C. § 1964(c)

Factual Basis: Mail fraud, wire fraud, obstruction, simulated servicing, venue manipulation

- Statutory Damages – $25,000

Statutory Basis: RESPA (12 U.S.C. § 2605), TILA (15 U.S.C. § 1640), FDCPA (15 U.S.C. § 1692k)

Factual Basis: QWR violations, failure to validate debt, deceptive communications, gatekeeping

- Attorney's Fees & Costs – TBD

Statutory Basis: 42 U.S.C. § 1988; Fee-shifting statutes

Factual Basis: To be calculated post-judgment or settlement

Total Relief Requested (Preliminary):

$6,525,000 + Attorney's Fees and Costs

**COUNT 7 – Obstruction Under Color of Law – FIRREA Violations and Regulatory Breach**

**Statute Invoked: 12 U.S.C. § 1833a**

**Incorporates: ¶16–¶74; Exhibit F**

Cause of Action:

Defendants knowingly submitted and relied upon materially false instruments in federally regulated financial contexts, including:

- Fraudulent loan modification approvals and fabricated loss mitigation histories

- Inflated lien claims and default records contradicting servicing logs

- False payoff statements misrepresenting balances and status to government-sponsored entities and trust counterparts

These actions occurred while assets were held within FDIC receivership or subject to federal mortgage servicing oversight. FIRREA authorizes civil penalties up to $1,000,000 per violation for such misconduct, especially when documents were concealed, redacted, or contradicted by internal records long after judgment was entered.

**Exhibit – Count Seven Damages Matrix**

**Damage Category:**

- Civil Penalties (FIRREA) – $3,000,000

  Statutory Basis: 12 U.S.C. § 1833a

  Factual Basis: Three discrete violations involving:

  • Fabricated loan modification approvals

  • Inflated lien/default records

  • False payoff statements to GSEs and trusts

- Compensatory Damages – $750,000

Statutory Basis: Federal common law; 42 U.S.C. § 1983

Factual Basis: Loss of equity, reputational harm, and obstruction of restoration rights during FDIC receivership

- Punitive Damages – $1,500,000

Statutory Basis: Federal common law

Factual Basis: Willful concealment, redaction, and contradiction of servicing records post-judgment

- Attorney's Fees & Costs – TBD

Statutory Basis: 42 U.S.C. § 1988; FIRREA fee provisions

Factual Basis: To be calculated post-judgment or settlement

Total Relief Requested (Preliminary):

$5,250,000 + Attorney's Fees and Costs

**COUNT 8 False Statements, Procedural Suppression, and Due Process Injury) (18 U.S.C. § 1001; 42 U.S.C. § 1983.**

- **Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein.** This Cause of Action arises from Defendants coordinated pattern of misrepresentation, redaction, and record suppression committed under color of law, with the intent and effect of depriving Plaintiff of due process, military protections, and federal statutory rights.
- Legal Basis
- Federal Obstruction & Deprivation of Rights:
- 18 U.S.C. § 1001: False statements made knowingly and willfully to a federal tribunal
- 42 U.S.C. § 1983: Civil liability for deprivation of constitutional rights under color of law
- Procedural Fraud Elements (Rule 9(b)):
- Misrepresentation of military status in sworn affidavit (¶194A)

- Redacted call logs suppressing federal discharge data (¶194AV)
- Judicial inaction and improper injunction issuance without due process
- Supporting Factual Allegations
- ¶194A: On May 20, 2022, DBNTC's attorney filed a sworn affidavit falsely stating that SSGT Bre Leonna Thomason was not in military service, attempting to circumvent SCRA foreclosure prohibitions under 50 U.S.C. § 3953.
- ¶194AV: PHH servicing logs were redacted in discovery and omit all references to debt discharge confirmed by IRS Form 1099-C, simulating collection on a legally extinguished obligation.
- ¶258–¶261: Defendant's refusal to produce unredacted logs, contradictory servicing statements, and manipulation of default timelines constitute procedural suppression.
- ¶194AW–¶194AZ: FDIC receivership and asset disposition confirm foreclosure posture was time-barred and jurisdictionally void. COUNT VII – Obstruction Under Color of Law
- (18 U.S.C. § 1001; 42 U.S.C. § 1983; Rule 9(b) — False Statements, Procedural Suppression, and Due Process Injury)
- Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein. This Cause of Action arises from Defendants coordinated pattern of misrepresentation, redaction, and record suppression committed under color of law, with the intent and effect of depriving Plaintiff of due process, military protections, and federal statutory rights.
- Legal Basis
- Federal Obstruction & Deprivation of Rights:
- 18 U.S.C. § 1001: False statements made knowingly and willfully to a federal tribunal
- 42 U.S.C. § 1983: Civil liability for deprivation of constitutional rights under color of law
- Procedural Fraud Elements (Rule 9(b)):
- Misrepresentation of military status in sworn affidavit (¶194A)
- Redacted call logs suppressing federal discharge data (¶194AV)
- Judicial inaction and improper injunction issuance without due process
- Supporting Factual Allegations
- ¶194A: On May 20, 2022, DBNTC's attorney filed a sworn affidavit falsely stating that SSGT Bre Leonna Thomason was not in military service, attempting to circumvent SCRA foreclosure prohibitions under 50 U.S.C. § 3953.

- ¶194AV: PHH servicing logs were redacted in discovery and omit all references to debt discharge confirmed by IRS Form 1099-C, simulating collection on a legally extinguished obligation.
- ¶258–¶261: Defendant's refusal to produce unredacted logs, contradictory servicing statements, and manipulation of default timelines constitute procedural suppression.
- ¶194AW–¶194AZ: FDIC receivership and asset disposition confirm foreclosure posture was time-barred and jurisdictionally void.
- Judicial Inaction:
- Judge Anderson and Judge Reed (Montgomery County Circuit Court) took no action to sanction false affidavits or redacted evidence, despite being presented with documented violations of military protections and servicing fraud.
- Chief U.S. District Judge Emily C. Marks granted an injunction to the same attorney who submitted the false affidavit, without conducting a proper evidentiary hearing or affording Plaintiff due process. The injunction was issued in the same case where statutory violations and concealment had already been documented.
- Judicial Inaction:
- Judge Anderson and Judge Reed (Montgomery County Circuit Court) took no action to sanction false affidavits or redacted evidence, despite being presented with documented violations of military protections and servicing fraud.
- Chief U.S. District Judge Emily C. Marks granted an injunction to the same attorney who submitted the false affidavit, without conducting a proper evidentiary hearing or affording Plaintiff due process. The injunction was issued in the same case where statutory violations and concealment had already been documented.

COUNT 8 Continued :– False Statements, Procedural Suppression, and Due Process Injury

(18 U.S.C. § 1001; 42 U.S.C. § 1983; Rule 9(b))

Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein.

This Cause of Action arises from Defendants coordinated pattern of misrepresentation, redaction, and record suppression committed under color

of law, with the intent and effect of depriving Plaintiff of due process, military protections, and federal statutory rights. These actions include:

• Filing a sworn affidavit falsely denying military service status (¶194A), in violation of 50 U.S.C. § 3953 and 18 U.S.C. § 1001.

• Redacting servicing logs to conceal debt discharge confirmed by IRS Form 1099-C (¶194AV), simulating collection on a legally extinguished obligation.

• Refusing to produce unredacted records and manipulating default timelines (¶258–¶261), constituting procedural suppression.

• Continuing foreclosure posture despite FDIC receivership and time-barred asset disposition (¶194AW–¶194AZ).

• Securing judicial injunctions without evidentiary hearings, despite documented statutory violations, resulting in due process injury under 42 U.S.C. § 1983.

As a direct and proximate result of these actions, Plaintiff has suffered the following damages:

• $78,000 in unlawful servicing fees, interest accrual, and property encumbrance due to simulated collection on discharged debt.

• $42,500 in lost rental value, security costs, and property restoration expenses, including tenancy by Plaintiff's brother who relocated from Pittsburgh to assist with property reclamation.

• $150,000 in emotional distress, reputational harm, and civil rights injury stemming from judicial inaction and retaliatory conduct.

• $500,000 in punitive damages for Defendants' malicious and fraudulent conduct under color of law.

**Total damages claimed under this Cause of Action: $770,500.** Plaintiff reserves the right to amend this amount upon further discovery and evidentiary development.

**COUNT 9 – Interference with Civil Rights Under 42 U.S.C. § 1981 (Right to Contract)**

(Unlawful interference with protected contractual relationships based on race; dual-forum imposition; discriminatory litigation obstruction)

¶194BP. Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein.

This Cause of Action arises under 42 U.S.C. § 1981, which guarantees that all persons within the United States shall have the same right "to make and enforce contracts…as is enjoyed by white citizens." Defendants coordinated conduct—including record suppression, venue override, and foreclosure enforcement post-discharge—constitutes discriminatory interference with Plaintiff's protected contractual rights.

¶194BQ. The subject mortgage contract, as well as the associated homeowner's insurance and service agreements, are valid contractual relationships in which Plaintiff—alongside family co-owners Bre Leonna Thomason and Norcisse Prisca Thomason—participated as protected parties under § 1981. These contracts were materially burdened and distorted by Defendants acting under color of law, culminating in foreclosure posture enforcement after the debt was legally extinguished (¶194AU).

¶194BR. Defendants suppressed servicing records (¶194AV), withheld contractual disclosures (¶261), and fabricated default timelines (¶260) in an effort to deny Plaintiff meaningful contractual enforcement and factual parity. Judicial enablers—including Judge Anderson, Judge Reed, and Chief Judge Marks—permitted parallel proceedings without jurisdiction, denied evidentiary hearings, and issued remands and injunctions without federal review, imposing litigation costs and structural disadvantage.

¶194BS. Plaintiff and family co-owners—who are African American—were forced to litigate against institutional actors across dual forums, despite removal under 28 U.S.C. §§ 1442 and 1443, and FIRREA's exclusive federal jurisdiction. This treatment reflects disparate procedural burdens not imposed on similarly situated white litigants and violates the equal right to contract enforcement guaranteed under § 1981.

¶194BT. Defendants' actions—including falsified affidavits (¶194A), suppressed IRS discharge evidence (¶194AU), and discriminatory venue

manipulation (¶194BC)—were carried out intentionally and with knowledge of Plaintiff's race and statutory protections. The interference was not incidental; it was part of a broader pattern of concealment, forum fatigue, and litigation obstruction designed to force foreclosure without due process.

As a direct and proximate result of Defendants' interference with Plaintiff's civil rights under 42 U.S.C. § 1981, Plaintiff has suffered the following damages:

• $65,000 in litigation costs, duplicative filings, and procedural delays caused by dual-forum imposition and jurisdictional obstruction.

• $85,000 in contractual injury, including lost equity, insurance coverage gaps, and servicing distortions that undermined Plaintiff's ability to enforce valid agreements.

• $120,000 in economic harm and civil rights injury arising from race-based obstruction, forum fatigue, and denial of equal access to judicial remedy.

• $400,000 in punitive damages for intentional and malicious interference with federally protected rights under § 1981.

**Total damages claimed under this Cause of Action: $670,000.** Plaintiff reserves the right to amend this amount upon further discovery and evidentiary development.

**COUNT 10 – Quiet Title and Declaratory Relief Under the Federal Quiet Title Act**

**(28 U.S.C. § 2409a; FIRREA § 1821(j); FDIC Asset Protection Doctrine)**

¶194BU. Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein.

This Cause of Action arises under the Federal Quiet Title Act, 28 U.S.C. § 2409a, and seeks declaratory relief to remove clouded title claims asserted by Defendants under a void judgment and extinguished lien posture.

¶194BV. Plaintiff asserts that the subject property—901 Seibles Road—was wrongfully encumbered and foreclosed upon under a void judgment issued without jurisdiction, in violation of FIRREA's exclusive federal asset

disposition framework (12 U.S.C. § 1821(d)). The foreclosure posture was statutorily moot as of July 11, 2014, and the lien was extinguished by IRS Form 1099-C (¶194AU), recorded release (¶194AT), and servicing concealment (¶194AV).

¶194BW. On or about May 20, 2022, Chief U.S. District Judge Emily C. Marks issued an injunction barring Plaintiff's access to federal court, despite the case having been removed under 28 U.S.C. §§ 1442 and 1443 and accepted by the Eleventh Circuit. This injunction violated FIRREA's anti-injunction provision (12 U.S.C. § 1821(j)), which prohibits any court from interfering with FDIC-controlled assets or receivership functions.

¶194BX. Plaintiff seeks declaratory judgment confirming that:

- The foreclosure judgment is void ab initio due to lack of jurisdiction and indispensable party omission (¶185T–¶185V)

- The lien was extinguished by federal discharge and asset disposition

- The injunction issued by Judge Marks violated FIRREA and denied Plaintiff access to court under color of law

As a direct and proximate result of Defendants' unlawful foreclosure posture, lien assertion, and judicial interference with federal asset protections, Plaintiff has suffered the following damages:

• $92,000 in property encumbrance, restoration costs, and title remediation expenses resulting from wrongful foreclosure and clouded title.

• $38,000 in litigation costs and procedural delays caused by improper injunctions and venue obstruction.

• $110,000 in economic harm and reputational injury stemming from denial of access to court and suppression of federal discharge records.

• $250,000 in punitive damages for knowing violation of FIRREA's anti-injunction provision and intentional interference with federally protected property rights.

**Total damages claimed under this Cause of Action: $490,000.** Plaintiff reserves the right to amend this amount upon further discovery and evidentiary development.

Relief Sought

- Declaratory judgment quieting title to 901 Seibles Road in favor of Plaintiff

- Removal of all recorded claims, liens, or foreclosure instruments asserted by DBNTC or its agents

- Injunctive relief barring further foreclosure or servicing posture on the discharged debt

- Costs and attorney fees under 28 U.S.C. § 2409a and constitutional enforcement statutes.

****COUNT 11 – Fourth and Fifth Amendment Violations: Illegal Entry, Ejection, and Unconstitutional Taking****

**(U.S. Const. Amend. IV, V; 42 U.S.C. § 1983; Armstrong v. United States, 364 U.S. 40 (1960))**

¶194BY. Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein. This Cause of Action arises from Defendants' illegal entry into Plaintiff's home, physical ejection from the property, and unconstitutional taking of real property under a void judgment and extinguished lien.

¶194BZ. On or about [insert date], agents acting on behalf of DBNTC and under color of law forcibly entered Plaintiff's residence at 901 Seibles Road, broke down the door, and ejected Plaintiff and family members from the premises. No valid warrant was issued, and the underlying foreclosure judgment was void due to lack of jurisdiction, indispensable party omission, and statutory mootness (¶185T–¶185V, ¶194AW–¶194AZ).

¶194CA. This conduct violated Plaintiff's Fourth Amendment right to be secure in his home against unreasonable searches and seizures. The entry and ejection were executed without probable cause, without judicial authority, and in violation of clearly established constitutional protections.

¶194CB. The seizure and dispossession of Plaintiff's home also violated the Fifth Amendment's Takings Clause. The property was taken for private use under a void judgment, without just compensation, and in direct violation of *Armstrong v. United States*, 364 U.S. 40 (1960), which prohibits the government from forcing individuals to bear public burdens that should be borne by the public as a whole.

¶194CC. Plaintiff asserts that the ejection and dispossession were racially discriminatory and retaliatory, targeting an African American family under color of law and in violation of the Fair Housing Act (¶194BC).

**Relief Sought**

Plaintiff seeks the following monetary and equitable relief:

- **Declaratory judgment** confirming violations of the Fourth and Fifth Amendments

- **Compensatory damages** totaling **$750,000**, including:

  - $250,000 for physical damage to real property and personal belongings

  - $200,000 for emotional distress, humiliation, and trauma from forced ejection

  - $150,000 for loss of use and enjoyment of the home

  - $150,000 for costs of temporary housing, relocation, and disruption of family life

- **Punitive damages** totaling **$1,000,000** under 42 U.S.C. § 1983, based on:

  - Callous disregard for constitutional rights

  - Racially discriminatory and retaliatory conduct

  - Abuse of power under color of law

- **Nominal damages** of **$1.00** to vindicate constitutional rights even if actual damages are disputed

- **Attorney fees and litigation costs** under 42 U.S.C. § 1988, estimated at **$125,000**

**Jury Instruction Basis for Damages**

Plaintiff's damages are consistent with federal jury instructions for constitutional violations, including:

- Compensatory damages for actual harm, emotional injury, and property loss

- Punitive damages where Defendants acted with reckless or callous indifference

- Nominal damages to affirm the violation of rights

- Attorney fees as a prevailing civil rights plaintiff.

**COUNT 12 – Truth in Lending Act Violations and Promissory Fraud Through Pooling Scheme Entrapment**

**(15 U.S.C. § 1601 et seq.; 12 CFR § 1026 (Regulation Z); Alabama Common Law – Judicial Admission and Partial Performance)**

Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein. This Cause of Action arises under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., and its implementing regulation, 12 CFR § 1026 (Regulation Z), as well as Alabama common law doctrines of judicial admission and partial performance. Plaintiff asserts that Eva Bank and its successors engaged in a coordinated scheme to entrap unsophisticated borrowers into a pooling structure through misrepresented loan terms, concealed servicing transfers, and fraudulent inducement.

¶194CF. Eva Bank originated the subject mortgage with representations regarding servicing continuity, reinstatement rights, and insurance compliance that were knowingly false at the time of execution. These promises were made with no intent to perform and were designed to induce Plaintiff into a transaction that would be immediately sold into a pooling

scheme. This conduct constitutes promissory fraud under Alabama law and a predicate act under Count 1 – Civil RICO.

¶194CG. Plaintiff partially performed under the contract by making payments and complying with servicing demands, thereby triggering equitable protections under Alabama law. Defendants accepted this performance while concealing the true nature of the loan's securitization and servicing fragmentation, violating the duty of good faith and fair dealing.

¶194CH. Defendants failed to provide accurate disclosures required under TILA and Regulation Z, including:

- Annual Percentage Rate (APR) misstatements (12 CFR § 1026.22)

- Failure to disclose assignment and transfer of servicing rights (12 CFR § 1026.39)

- Omission of rescission rights and high-cost mortgage triggers (12 CFR § 1026.23, § 1026.32)

¶194CI. Plaintiff asserts that tolling applies under TILA's statutory framework due to:

- Fraudulent concealment of pooling structure and servicing transfers

- Judicial admissions by Defendants in related proceedings acknowledging assignment and securitization

- Ongoing suppression of servicing records and call logs (¶194AV, ¶261)

¶194CJ. The pooling scheme was designed to trap borrowers into fragmented servicing chains where reinstatement was procedurally impossible, insurance claims were suppressed, and foreclosure was inevitable. This structure disproportionately impacted minority borrowers and violated the consumer protection intent of TILA.

**Relief Sought**

Plaintiff seeks the following monetary and equitable relief:

- **Declaratory judgment** confirming violations of TILA, Regulation Z, and Alabama common law

- **Rescission** of the original mortgage contract and restitution of payments made under fraudulent inducement, totaling **$185,000**

- **Statutory damages** under 15 U.S.C. § 1640(a), including:

  - Actual damages of **$185,000** for payments made and economic harm

  - Additional statutory damages of **$8,000** for disclosure violations under § 1640(a)(2)(A)(i)–(iv)

  - Enhanced damages of **$16,000** for high-cost mortgage violations under § 1640(a)(4)

- **Treble damages** under RICO predicate integration, totaling **$555,000**

- **Punitive damages** under Alabama fraud doctrine, totaling **$250,000**

- **Attorney fees and litigation costs** under 15 U.S.C. § 1640(a)(3), estimated at **$125,000**

**Jury Instruction Basis for Damages**

Plaintiff's damages are consistent with federal jury instructions and statutory entitlements under TILA and Alabama law, including:

- Actual damages for economic loss and reliance injury

- Statutory damages for disclosure failures and high-cost triggers

- Treble damages for predicate fraud under RICO

- Punitive damages for intentional misrepresentation and concealment

- Attorney fees and costs as a prevailing consumer protection plaintiff.

**COUNT 13 – Adverse Possession and Equitable Title Through Documented Maintenance and Municipal Endorsement**

**(Ala. Code § 6-5-200; Moore v. Lovelace, 413 So. 2d 1100; Sylvest v. Stowers, 276 So. 2d 624)**

¶194CK. Plaintiff hereby re-alleges and incorporates by reference the factual allegations contained in ¶1 through ¶275 as though fully set forth herein. This Cause of Action arises under Alabama's statutory and common law doctrines of adverse possession. Plaintiff has acquired title to 901 Seibles Road through continuous, exclusive, and hostile possession for over 20 years, and color of title for over 10 years, coupled with documented municipal endorsement and substantial improvements.

¶194CL. Plaintiff has maintained uninterrupted possession of the subject property since [insert earliest occupancy date], satisfying the 20-year common law requirement. This possession has been actual, exclusive, visible, and adverse to the interests of DBNTC and its predecessors.

¶194CM. Plaintiff has held color of title and paid property taxes for more than 10 years, meeting the statutory standard under Ala. Code § 6-5-200. Improvements include over **$180,000.00** in documented maintenance, restoration, and flood mitigation.

¶194CN. All restoration work has been reviewed and approved by the City of Montgomery Engineering Department, confirming Plaintiff's dominion, structural engagement, and civic compliance.

¶194CO. Neither the federal district court nor state courts—including Judge Anderson, Judge Reed, or Chief Judge Marks—have acknowledged or ruled upon these facts. Their refusal to consider this evidence constitutes judicial omission and repeated discriminatory disregard of Plaintiff's equitable interest.

"Plaintiff's continuous possession, substantial restoration investment, and municipal endorsements—outlined in Count 13 (¶194CK–¶194CO)—further confirm dominion and quiet title standing. These facts function not merely as defenses but as affirmative claims of ownership under Alabama law and federal doctrine."

Relief Sought

Plaintiff seeks the following monetary and equitable relief:

- **Declaratory judgment** establishing Plaintiff's title through adverse possession

- **Expungement** of all competing claims, foreclosure instruments, and encumbrances

- **Restitution and offset** of DBNTC's asserted interest based on superior equity and investment, totaling **$180,000.00**

- **Compensatory damages** for restoration costs, municipal compliance, and structural engagement, totaling **$180,000.00**

- **Punitive damages** for judicial omission and discriminatory disregard of equitable title, totaling **$250,000.00**

- **Attorney fees and litigation costs** under Alabama law and equitable restitution doctrine, estimated at **$85,000.00**

**Jury Instruction Basis for Damages**

Plaintiff's damages are consistent with Alabama jury instructions and equitable restitution doctrine, including:

- Restoration and maintenance costs as compensable equity

- Punitive damages for discriminatory judicial omission

- Attorney fees under equitable quiet title and adverse possession claims.

**Predicate Act Matrix – Linking Count 13 to Count 1 (Civil RICO)**

**(18 U.S.C. § 1961(1); 18 U.S.C. § 1962(c); Ala. Code § 6-5-200)**

**| Predicate Act Category | Statutory Basis | Conduct Alleged in Count 13 | RICO Relevance**

| Document Suppression | 18 U.S.C. § 1512(c) (constructive) | Judicial omission of municipal endorsements and restoration records | Supports enterprise concealment and obstruction of equitable title |

| Mail/Wire Fraud | 18 U.S.C. §§ 1341, 1343 | Servicer communications denying Plaintiff's dominion despite municipal approval | Constitutes racketeering activity under § 1961(1)(B) |

| Civil Rights Violation| 42 U.S.C. § 1982| Discriminatory disregard of African American homeowner's equitable interest | Predicate act under § 1961(1)(A); supports racial targeting theory |

| **Real Property Fraud| Ala. Code § 6-5-101 Misrepresentation of title status and foreclosure instruments despite adverse possession | State-law fraud integrated into RICO pattern

**Enterprise Theory**

Defendants operated a mortgage servicing and foreclosure enterprise that systematically ignored adverse possession claims, suppressed municipal endorsements, and targeted minority homeowners for dispossession. Count 13 demonstrates **long-term dominion and civic compliance**, which Defendants actively concealed and denied.

**Link to Count 1 – Civil RICO**

Count 13 provides **evidentiary and equitable support** for Count 1 by establishing:

- Pattern of concealment and obstruction

- Predicate acts under § 1961(1)

- Enterprise continuity and discriminatory targeting

- Financial injury and restoration investment suppressed by judicial omission.

**COUNT 14 – Obstruction of Justice Under 18 U.S.C. § 1503**

**(Against Judicial Officers, Ocwen/PHH, Deutsche Bank National Trust Company, and Associated Counsel)**

¶194CV. Plaintiff incorporates Paragraphs 1 through 275 of the Statement of Facts and further alleges that Defendants, including judicial officers acting in official capacity, engaged in deliberate misuse of procedural and injunctive power to obstruct Plaintiff's right to judicial redress and remedy.

¶194CW. Specifically, Plaintiff identifies the following obstructive acts carried out between 2014 and 2025, which suppressed fact-finding, blocked third-party discovery, and prevented adjudication of key statutory claims:

- Misuse of judicial injunctions to silence litigation following FDIC receivership discharge

- Repeated remands designed to circumvent Eleventh Circuit jurisdiction and mute appellate review

- Refusal to rule on discovery motions seeking redacted servicing entries and mod approval logs

- Summary dismissal of claims without merit review, despite new evidence and statutory violations

¶194CP. On April 14, 2017, Judge Terry Moorer issued a Rule 26(f) Scheduling Order (Doc. 114), which formally reopened the discovery window and instructed all parties to submit a joint discovery plan by April 28, 2017. This order served as judicial confirmation that the case was active and eligible for record development.

¶194CQ. Within days of the scheduling order, Defendants filed multiple Notices of Discovery Service—none of which included the redacted servicing records, mod approval entries, or payoff quote logs previously requested via Qualified Written Requests and direct motions. Plaintiff was denied access to material servicing data despite Rule 26 compliance.

¶194CR. On May 5, 2017, the Court issued a formal Discovery Order (Doc. 116) setting deadlines for discovery (September 5, 2017) and dispositive motions (October 16, 2017). This timeline placed Plaintiff under compulsion to litigate without key records that had been redacted, suppressed, or administratively shielded.

¶194CS. Plaintiff filed multiple discovery motions (Docs. 118, 151–153), including:

- A motion to compel redacted servicing entries

- A motion to add third-party defendants tied to mod suppression

- A witness list naming servicer personnel referenced in concealed records

¶194CT. Eva Bank objected to Plaintiff's witness list (Doc. 162), and Defendants challenged discovery efforts (Docs. 166–167), arguing procedural irregularity while simultaneously seeking to exclude redacted matters from the record.

¶194CU. On September 21, 2017, the Court denied Plaintiff's Motion for Discovery (Doc. 152) via summary ruling (Doc. 168), without addressing the substance of the redacted material or the third-party misconduct raised. This denial functionally sealed off the suppressed acts from fact-finding, obstructing adjudication and enabling Defendants to proceed with litigation under false procedural posture.

**Relief Sought**

Plaintiff seeks the following monetary and equitable relief:

- **Declaratory finding** that obstruction of justice occurred under 18 U.S.C. § 1503

- **Vacatur** of injunctions and orders procured via suppressive means

- **Sanctions** under 28 U.S.C. § 1927 and Rule 11, totaling **$75,000** for excessive litigation costs and procedural abuse

- **Compensatory damages** totaling **$250,000** for denial of access to court, suppression of evidence, and procedural coercion

- **Punitive damages** totaling **$500,000** for intentional obstruction by judicial officers and enterprise counsel

- **Attorney fees and litigation costs** estimated at **$125,000** under civil rights and obstruction enforcement doctrine

- **Injunctive relief** barring continued use of procedural tools to suppress redress

**Jury Instruction Basis for Damages**

Plaintiff's damages are consistent with federal jury instructions for obstruction of justice, including:

- Compensatory damages for actual harm and litigation injury

- Punitive damages for intentional interference with judicial process

- Attorney fees under civil enforcement statutes

- Sanctions under Rule 11 and 28 U.S.C. § 1927 for bad faith litigation conduct.

**Predicate Act Matrix – Linking Count 14 to Count 1 (Civil RICO)**

**(18 U.S.C. § 1961(1); 18 U.S.C. § 1962(c); 18 U.S.C. § 1503)**

| Predicate Act Category | Statutory Basis | Conduct Alleged in Count 14 | RICO Relevance |
|---|---|---|---|
| Obstruction of Justice | 18 U.S.C. § 1503 | Judicial misuse of injunctions, remands, and discovery suppression | Direct predicate act under § 1961(1); supports enterprise suppression theory. |
| Document Suppression | 18 U.S.C. § 1512(c) | Concealment of servicing logs, mod approvals, and payoff quotes | Supports pattern of concealment and obstruction. |

| Civil Rights Violation| 42 U.S.C. § 1983| Denial of access to court and procedural parity | Predicate act under § 1961(1)(A); supports racial targeting and exclusion |

| Litigation Fraud | Rule 11 / § 1927 | Procedural abuse and bad faith filings to obstruct adjudication | Enterprise conduct designed to suppress redress and mute appellate review |

**Link to Count 1 – Civil RICO**

Count 14 provides direct support for Count 1 by establishing:

- A pattern of obstruction and suppression

- Enterprise coordination between judicial officers and servicer counsel

- Financial injury and procedural coercion

- Predicate acts under § 1961(1) and enterprise continuity under § 1962(c).

**COUNT 15 – Witness Retaliation and Intimidation Under 18 U.S.C. § 1513(e)**

**(Against Deutsche Bank National Trust Company, Ocwen Loan Servicing, Eva Bank, Defense Counsel, and Judicial Officers in Official Capacity)**

¶194CZ. Plaintiff incorporates Paragraphs 1 through 275 of the Statement of Facts and further alleges that Defendants engaged in retaliatory actions aimed at intimidating Plaintiff and affiliated parties who filed lawful claims and exercised statutory rights.

¶194DA. Following Rule 20 filings joined by all co-owners, Defendants falsely accused Thomason of "unauthorized practice of law," despite the presence of attorney representation in federal proceedings and procedural compliance with Rule 20 joinder requirements.

¶194DB. These accusations were strategically lodged during active litigation and coordinated discovery efforts, with the apparent goal of deterring Thomason and co-owner SSGT Bre Leonna Thomason from asserting survivor rights, military protection, and possession claims.

¶194DC. Thomason was issued implied threats of criminal sanctions for continuing to contest property seizure and foreclosure posture—despite the property being subject to FDIC receivership protocol and the prior debt discharge filed with the IRS.

¶194DD. SSGT Bre Leonna Thomason was on active military duty during the alleged misconduct. Her SCRA protections were disregarded by the Court and Defendants, with judicial rulings and defense filings failing to acknowledge her servicemember status.

¶194DE. These acts violate 18 U.S.C. § 1513(e), which prohibits retaliatory conduct intended to interfere with the lawful participation of any person in court proceedings or the assertion of rights protected by law. The timing, nature, and institutional alignment of these actions reflect a deliberate campaign of intimidation and retaliation.

**Relief Sought**

Plaintiff seeks the following monetary and equitable relief:

- **Formal judicial finding** of witness retaliation and denial of lawful participation

- **Vacatur** of sanctions, orders, or referrals procured via retaliatory filings

- **Injunctive relief** barring further intimidation or retaliatory use of procedural tools

- **Sanctions** under Rule 11 and 28 U.S.C. § 1927 totaling **$50,000** for bad faith filings and procedural weaponization

- **Compensatory damages** totaling **$300,000** for emotional distress, reputational harm, and litigation coercion

- **Punitive damages** totaling **$750,000** for deliberate retaliation against military personnel and protected witnesses

- **Attorney fees and costs** estimated at **$100,000** under federal retaliation enforcement doctrine

- **Referral** to appropriate disciplinary and law enforcement bodies for further investigation

**Jury Instruction Basis for Damages**

Plaintiff's damages are consistent with federal jury instructions for retaliation claims, including:

- Emotional distress and reputational harm

- Punitive damages for intentional interference with protected rights

- Attorney fees under civil enforcement statutes

- Sanctions for procedural abuse and witness intimidation.

**Predicate Act Matrix – Linking Count 15 to Count 1 (Civil RICO)**

**(18 U.S.C. § 1961(1); 18 U.S.C. § 1962(c); 18 U.S.C. § 1513(e))**

| **Predicate Act Category** | **Statutory Basis** | **Conduct Alleged in Count 15** | **RICO Relevance** |
|---|---|---|---|
| Witness Retaliation | 18 U.S.C. § 1513(e) | Threats, false accusations, and procedural intimidation of co-owners and military personnel | Direct predicate act under § 1961(1); supports enterprise suppression theory |

| Military Rights Violation| 50 U.S.C. § 3931 (SCRA) | Disregard of active-duty status and SCRA protections | Supports civil rights violation and enterprise targeting |

| **Procedural Weaponization**| Rule 11 / § 1927 | Use of filings to intimidate and suppress lawful participation | Enterprise conduct designed to silence protected parties |

| **Civil Rights Violation**| 42 U.S.C. § 1983 | Denial of access to court and retaliation against protected speech | Predicate act under § 1961(1)(A); supports racial and military targeting |

**Link to Count 1 – Civil RICO**

Count 15 reinforces Count 1 by establishing:

- A pattern of retaliation and intimidation

- Enterprise coordination across servicers, counsel, and judicial officers

- Financial injury and reputational harm

- Predicate acts under § 1961(1) and enterprise continuity under § 1962(c).

**COUNT 16 – Conspiracy to Obstruct Justice Under 18 U.S.C. § 371**

**(Against Deutsche Bank National Trust Company, Ocwen/PHH, Eva Bank, Court Clerks, Defense Counsel, and Judicial Officers acting in Official Capacity)**

¶194DP. Plaintiff incorporates Paragraphs 1 through 280 by reference and asserts that Defendants engaged in a coordinated conspiracy to deprive Plaintiff of rights secured under the United States Constitution and federal law, including rights to due process, equal protection, legal standing, property defense, and judicial access.

¶194DR. Under 18 U.S.C. § 241, it is unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person in the free exercise of rights secured by the Constitution or laws of the United States.

Plaintiff alleges that the actors named herein jointly pursued a pattern of suppression across jurisdictions, timelines, and procedural mechanisms for the express purpose of undermining these rights.

¶194DS. These actions were not isolated or incidental but constitute a systemic and deliberate strategy to obstruct justice, prevent the Plaintiff from defending his property, and silence survivor claims tied to regulatory, statutory, and constitutional remedies.

¶194DQ. The Defendants executed this conspiracy through:

- Procedural manipulation (e.g., docket restrictions, remands, judge-swapping)

- Injunction misuse and summary rulings excluding co-owner testimony

- Retaliatory sanctions and criminal threats against lawful filings

- Suppression of redacted evidence and third-party misconduct records

¶194DU. Specific acts of conspiracy included:

- Docket manipulation, including reclassification and omission of filings from the public record

- Judge reassignment and remand loops, used to bypass appellate review and reset litigation posture

- Suppression of discovery, including denial of third-party witness lists, mod approval logs, and payoff quote data

- Injunctive gag orders, silencing litigation, and barring submission of redacted material

¶194DV. These acts were carried out over a multi-year timeline, across multiple courts and forums, with shared objectives and overlapping participants. Clerks, judicial officers, servicer entities, and defense counsel operated in coordinated fashion to obstruct Plaintiff's pursuit of truth, redress, and constitutional remedy.

¶194DW. Under 18 U.S.C. § 371, conspiracy to commit any offense against the United States, or to defraud the United States or its courts, is itself a federal crime. The enterprise conduct described here shows a concerted plan to deny Plaintiff judicial access and prevent adjudication of critical federal claims—including those brought under RICO, FIRREA, RESPA, and constitutional statutes.

Relief Sought

- Declaratory judgment affirming conspiracy to obstruct justice

- Order Overturning the Denial of military protection under the Servicemembers Civil Relief Act

- Declaratory judgment affirming that Plaintiff's rights were violated in a coordinated conspiracy

- Vacatur of orders and injunctions procured through unconstitutional suppression

- Sanctions under 28 U.S.C. § 1927, Rule 11, and applicable statutory remedies

- Referrals to law enforcement or disciplinary authorities for federal rights violations

- Award of damages sufficient to compensate for injury and deter future misconduct

- Vacatur of rulings, injunctions, and orders issued during coordinated suppression

- Sanctions under 28 U.S.C. § 1927 and Rule 11

- Referrals to federal disciplinary, judicial oversight, and law enforcement bodies

- Compensatory and punitive damages as determined at trial, not less than $5,000,000 in aggregate, subject to trebling under applicable statutes.

**COUNT 17 – Violation of Procedural Due Process and Equal Protection**

**U.S. Constitution – Fifth and Fourteenth Amendments**

**(Against Judicial Officers Marks, Anderson, Reid, Brasher, Watkins; DBNTC and Affiliated Counsel)**

¶194EN. Plaintiff incorporates all preceding paragraphs and alleges that the judicial officers named herein, acting in official capacity, together with DBNTC and affiliated counsel, violated Plaintiff's Fifth and Fourteenth Amendment rights through deliberate denial of procedural fairness and discriminatory treatment under color of law.

¶194EH. Plaintiff was repeatedly denied basic procedural due process, including timely notice of hearings, adjudication by a neutral tribunal, and a meaningful opportunity to present statutory defenses. Court orders were issued without merit review, and injunctions were entered prior to final adjudication, preventing Plaintiff's access to property-related claims.

¶194EI. Judicial officers failed to engage Plaintiff's filings on constitutional grounds, including claims under the Servicemembers Civil Relief Act (SCRA), RESPA, and FIRREA. Challenges to venue, standing, service, and assignment were either summarily dismissed or ignored, despite documentation of redacted entries and FDIC determinations supporting Plaintiff's position.

¶194EJ. Plaintiff and co-owners were labeled "vexatious" without formal findings or hearing and subjected to restrictions not applied to similarly situated litigants. Their Rule 20 joinder filings were met with retaliatory accusations, including threats of criminal sanctions, while other parties freely accessed judicial remedies under comparable circumstances.

¶194EK. Defendants and judicial officers manipulated venue, reassigned judges, and routed the case through procedural loops that displaced more neutral or previously assigned jurists (e.g., Judge Thompson, Judge Hardwick). Subsequent assignments to Judges Marks, Brasher, Watkins, and Reid coincided with rulings adverse to constitutional, statutory, and evidentiary claims.

¶194EL. The court's application of state law defenses and limitation statutes directly contradicted controlling federal provisions, including 12 U.S.C.

§ 1821(d), 50 U.S.C. § 3931, and 28 U.S.C. § 2415(a). This resulted in unequal treatment, denial of federally protected rights, and exclusion from legal pathways afforded to other litigants.

¶194EM. The cumulative procedural irregularities, judicial reassignment patterns, and disregard for co-owner status reflect a broader pattern of unequal treatment, retaliatory adjudication, and systemic gatekeeping. These actions directly injured Plaintiff's ability to pursue redress and protect constitutional property rights.

¶194EO. Plaintiff was denied:

- Timely notice and a meaningful opportunity to be heard

- Neutral adjudication of statutory and constitutional claims

- The right to assert joinder with co-owners under Rule 20 without retaliation

- Fair hearings on military status, debt extinguishment, and regulatory defenses

¶194EP. Court rulings were based on false statements by Defendants, issued without hearings, and enforced through injunctions that barred access to the record. Evidence was suppressed via redaction, docket manipulation, and denial of discovery.

¶194EQ. Judicial officers treated Plaintiff and co-owners differently from similarly situated litigants:

- Applied more stringent filing bans without findings

- Ignored federal statutory claims while enforcing state defenses

- Blocked access to consumer protection laws available to others

- Reassigned judges in a pattern consistent with retaliation and gatekeeping

¶194ER. These actions deprived Plaintiff of procedural due process and equal protection under the law, resulting in material injury to Plaintiff's rights, property, reputation, and redress options.

Relief Sought

- Declaratory judgment affirming violation of constitutional rights

- Injunctive relief restoring filing access, reopening barred claims, and vacating procedurally infirm rulings

- Compensatory damages in the amount of $2,500,000, reflecting loss of property access, reputational harm, emotional distress, and obstruction of statutory defenses

- Punitive damages in the amount of $2,500,000, to deter future constitutional violations and retaliatory adjudication

- Total damages sought: $5,000,000, subject to enhancement under 42 U.S.C. § 1983 and § 1985

- Any additional equitable or remedial relief deemed appropriate by the Court.

**COUNT 18 – Unlawful Seizure of Property Under Color of Law**

**U.S. Constitution – Amendments IV, V, XIV; 42 U.S.C. § 1983**

**(Against Montgomery County Sheriff's Department, Deutsche Bank National Trust Company, Judges James Anderson and Brooke Reid, Altisource Relocation Services, Jubilee Movers, and Enforcement Agents).**

¶194EW. Plaintiff incorporates Paragraphs 1 through 300 and alleges that Defendants, acting individually and in concert, violated Plaintiff's constitutional rights by executing a forced ejection and property seizure under color of law, without lawful authority, judicial review, or procedural safeguards.

¶194EX. On or about December 8, 2024, Plaintiff was forcibly removed from his homestead property by agents of the Montgomery County Sheriff's Department, in coordination with Altisource and Jubilee Movers, pursuant to judicial orders that were void ab initio due to unresolved jurisdictional defects and active federal litigation.

¶194EY. At the time of the seizure:

- No valid writ of possession had been entered by a court of competent jurisdiction

- Federal claims under FIRREA, RESPA, and SCRA were pending before the Eleventh Circuit

- Co-owner SSGT Bre Leonna Thomason's military status had been formally noticed and remained unadjudicated

- No hearing, warrant, or judicial review had occurred to authorize enforcement

¶194EZ. The seizure violated Plaintiff's:

- Fourth Amendment right to be secure in his home against unreasonable seizure

- Fifth and Fourteenth Amendment rights to due process and equal protection

- Statutory protections under 42 U.S.C. § 1983, which prohibit state actors from depriving individuals of constitutional rights under color of law

¶194FA. Each Defendant acted with actual or constructive knowledge of the disputed ownership, federal preemption, and ongoing litigation. Their coordinated actions reflect reckless disregard for Plaintiff's rights and a willful misuse of state power to enforce a judgment that lacked lawful foundation.

**Relief Requested**

Plaintiff seeks the following relief under 42 U.S.C. §§ 1983 and 1988:

- **Declaratory judgment** that the seizure and ejection were unlawful and unconstitutional

- **Permanent injunction** barring any future seizure, disposal, or enforcement activity related to the subject property

- **Compensatory damages** totaling **$1,375,000**, including:

  - $525,000 for loss of property, personal effects, and housing access

  - $450,000 for emotional distress, reputational harm, and displacement

  - $400,000 for litigation costs, relocation expenses, and loss of use

- **Punitive damages** totaling **$2,250,000**, based on Defendants' knowing and reckless execution of state power in defiance of federal rights

- **Attorney's fees and equitable relief** under 42 U.S.C. § 1988, estimated at **$125,000**

- **Total damages claimed under Count 18: $3,750,000**, subject to enhancement under federal civil rights statutes and jury determination.

**COUNT 19 – Civil Conspiracy to Interfere with Judicial Access and Chill Legal Advocacy Statute: 42 U.S.C. § 1985(2) (Against DBNTC Attorneys, Judges Brooke Reid and James Anderson, Court Clerks, Private Counsel, and State Enforcement Agents)**

¶194EW. Plaintiff incorporates Paragraphs 1 through 300 and alleges that Defendants—acting individually and in concert—engaged in a coordinated conspiracy to obstruct Plaintiff's access to judicial remedy, retaliate against his legal advocacy, and suppress fact-finding related to fraudulent foreclosure and judicial misconduct.

¶194EX. From 2015 through 2025, this conspiracy manifested through a pattern of acts including:

- Reassignment of cases away from impartial judges (e.g., Judge Thompson, Judge Hardwick)

- Use of gag orders and vexatious litigant designations to block filings

- False accusations of unauthorized practice of law for joint filings under Rule 20

- Judicial interference with licensed legal support and contractor rights

- Solicitation of ex parte input from former law partners to deny Plaintiff's participation in unrelated civil matters

- Transmission of threats through intermediaries, including Attorney Evans Brittan

¶194EZ. Plaintiff's legal activity—including filings on behalf of himself and underrepresented parties—was lawful, protected, and conducted in good faith. Defendants acted with specific intent to chill this activity, marginalize Plaintiff's legal voice, and eliminate avenues of redress.

¶194FA. These acts meet the criteria of 42 U.S.C. § 1985(2), which prohibits conspiracies to deter testimony, obstruct judicial proceedings, or intimidate legal actors. The coordinated targeting of Plaintiff—including his role in reversing discriminatory insurance denials for elderly African American homeowners—renders the conspiracy retaliatory and race-adjacent, triggering strict scrutiny.

¶194FB. The conspiracy was executed under color of law and involved both state actors and private entities. It resulted in material harm to Plaintiff's legal standing, professional reputation, and ability to advocate for constitutional and consumer protections.

¶194FC. The cumulative effect of these acts was to silence Plaintiff's litigation efforts, obstruct judicial access, and suppress evidence of enterprise misconduct. These injuries are ongoing and demand constitutional and statutory remedy.

**Relief Requested**

Plaintiff seeks the following relief under 42 U.S.C. §§ 1985(2) and 1988:

- Declaratory judgment affirming violation of Plaintiff's rights under 42 U.S.C. § 1985(2)

- Permanent injunction restraining ongoing retaliation and interference with legal advocacy

- Compensatory damages totaling **$1,500,000**, including:

- $600,000 for reputational harm, litigation obstruction, and suppression of advocacy

- $500,000 for emotional distress, intimidation, and professional targeting

- $400,000 for lost opportunities, contractor interference, and judicial exclusion

- Punitive damages totaling **$2,500,000**, based on Defendants' knowing and malicious conspiracy to obstruct justice and chill protected legal activity

- Attorney's fees and equitable restoration under 42 U.S.C. § 1988, estimated at **$125,000**

- **Total damages claimed under Count 19: $4,125,000**, subject to enhancement under federal civil rights statutes and jury determination.

## INTRODUCTION TO RETALIATORY PROCEEDINGS

Courtrooms are meant to be arenas of truth, where justice is pursued through law and evidence. Yet, in a chilling scene before the Middle District of Alabama Federal Court, Plaintiff was met not with legal reasoning, but with targeted intimidation—an attempt not merely to rule against him, but to criminalize his right to fight for his home.

Standing before the court, Plaintiff spoke the enduring words of Thurgood Marshall, declaring:

**"Do what you think is right and let the law catch up."**

Rather than meeting this statement with judicial objectivity, DBNTC attorney Bottcher retaliated by recommending criminal charges against Plaintiff, citing his continued pursuit of justice as grounds for sanction. This recommendation was not a matter of legal procedure—it was a weapon, intended to force submission through fear.

Plaintiff, unwavering, responded with the spirit of *The Count of Monte Cristo*, defiantly declaring:

**"Do your worst, but I will continue to fight for my property, even if you arrest me."**

Following this exchange, the court imposed a $7,500 sanction against Plaintiff for removing his case to federal court, disregarding his lawful basis under FDIC jurisdiction and FIRREA standing. But retaliation did not stop with monetary penalties.

Attorney David Sawyer, who represented Plaintiff and maintained ethical fidelity to federal jurisdictional arguments, was subsequently reprimanded, his name and judicial rebuke circulated across every judge in the Middle District of Alabama and Montgomery County state courts—a clear signal that defending Thomason's rights came at a professional cost.

This moment marked a turning point—not in Plaintiff's fight for his home, but in exposing the institutional resistance to truth that permeated the judicial system. It was no longer just about foreclosure. It was about erasing voices that challenged an entrenched legal order.

This retaliatory sequence forms the backbone of:

- **Count XX – Abuse of Injunction Power and Restraint of Legal Access**

- **Count XXI – Conspiracy to Violate Constitutional Rights**

- **Count XXII – Intentional Infliction of Emotional Distress**

Not merely legal violations, but acts of suppression, professional targeting, and coordinated obstruction designed to dismantle Plaintiff's access to justice.

This preamble sets the tone—it is no longer just litigation; it is resistance against suppression.

**COUNT 20 – Abuse of Injunction Power and Restraint of Legal Access Statutes Invoked: - U.S. Constitution – Amendments I & XIV - 42 U.S.C. § 1983 Defendants: Judges Emily Marks, Judge, James Anderson, Brooke Reid; DBNTC Counsel; Court Clerks**

¶194FN. Plaintiff incorporates Paragraphs 1 through 320 and alleges that Defendants violated his constitutional rights by weaponizing judicial injunctions to suppress legal speech, obstruct access to court, and prevent participation in property-related proceedings.

¶194FO. The injunctions were issued and enforced:

- Without hearings or factual findings

- Despite unresolved federal questions and pending appeals

- In the absence of any showing of abuse or improper conduct

- While Plaintiff was actively pursuing lawful remedies under federal statutes

¶194FP. These acts constitute content-based restrictions on speech and access to court, violating:

- First Amendment protections of petition and legal expression

- Fourteenth Amendment guarantees due process and equal protection

- 42 U.S.C. § 1983, which prohibits state actors from depriving individuals of constitutional rights under color of law

¶194FQ. The ongoing enforcement of these injunctions prevented Plaintiff from securing counsel, filing defenses, and challenging unlawful foreclosure and seizure—turning judicial process into a tool of institutional suppression.

¶194FR. From 2020 through 2025, Defendants—including Judge Emily Marks, Judge James Anderson, Judge Brooke Reid, DBNTC counsel, and court clerks—used judicial injunctions to restrain Plaintiff's ability to file motions, seek hearings, and participate in property-related proceedings.

¶194FS. Judge Marks issued an injunction barring Plaintiff from initiating filings in state court, despite unresolved federal questions, procedural defects in foreclosure filings, and Plaintiff's documented right to challenge standing and jurisdiction. The injunction was issued without hearing, factual findings, or proportionality review.

¶194FT. Judges Anderson and Reid subsequently reaffirmed and extended the injunction, even after Plaintiff filed motions requesting review, submitted newly discovered evidence, and cited statutory bases for removal and federal jurisdiction. No hearings were granted, and no findings were made regarding the legitimacy of Plaintiff's filings.

¶194FU. The injunction functioned as a content-based restriction on legal speech, violating Plaintiff's First Amendment right to petition the government and his Fourteenth Amendment right to due process. It chilled Plaintiff's access to court, punished lawful advocacy, and obstructed efforts to secure representation and challenge wrongful orders.

¶194FV. Court clerks enforced the injunction by rejecting filings, removing documents from the docket, and denying access to judicial process. These acts were carried out under color of law and in coordination with DBNTC counsel, transforming judicial authority into a mechanism of suppression.

Relief Requested

- Declaratory Judgment that the injunction orders were unconstitutional and unlawfully restrictive

- Injunctive Relief removing all barriers to Plaintiff's litigation and property claims

- Compensatory Damages in the amount of $1,250,000, representing:

- $750,000 for denial of access to court, obstruction of legal remedies, and suppression of constitutional rights

- $500,000 for economic harm, loss of property opportunity, and reputational damage

- Sanctions and Disciplinary Review against judicial officers who misused injunction power.

- Attorney's Fees and Equitable Relief under 42 U.S.C. § 1988.

**COUNT 21 – Intentional Infliction of Emotional Distress Statutes Invoked:**

**- Common Law Tort - U.S. Constitution – Due Process Clause (Amendment XIV) Defendants: DBNTC Attorneys, Foreclosure Agents, Judicial Officers, Law Enforcement Personnel**

¶194FW. Plaintiff incorporates Paragraphs 1 through 330 and alleges that Defendants engaged in extreme and outrageous conduct with intent or reckless disregard for the emotional harm caused. Their actions violated both common law protections and constitutional guarantees of due process and equal protection.

¶194FX. Defendants knowingly:

- Executed foreclosure and ejectment without lawful authority

- Threatened Plaintiff with criminal charges for lawful filings

- Sabotaged Plaintiff's professional reputation and legal support network

- Created a litigation environment designed to exhaust, isolate, and silence

¶194FY. Plaintiff suffered severe emotional distress, including:

- Mental anguish, anxiety, and loss of stability

- Reputational harm and economic hardship

- Isolation from legal assistance and community support

- Ongoing fear and exhaustion from retaliatory litigation and enforcement threats

¶194FZ. These injuries were the direct result of Defendants coordinated misconduct and demand recognition under both tort law and constitutional principles.

Additional Relief Requested

- Declaratory judgment that Defendants engaged in intentional infliction of emotional distress

- Compensatory damages in the amount of **$1,000,000**, representing:

  - $600,000 for mental anguish, emotional suffering, and psychological harm

  - $400,000 for reputational damage, economic hardship, and loss of community support

- Punitive damages in the amount of **$2,500,000**, to deter future abuse by financial institutions, judicial officers, and law enforcement personnel

- Injunctive relief restoring Plaintiff's property claims and legal rights obstructed by fraudulent court actions

**COUNT 22 – Conspiracy to Violate Constitutional Rights Statutes Invoked: - 42 U.S.C. § 1985(3) - Civil RICO – 18 U.S.C. § 1962(d) - U.S. Constitution – Due Process Clause (Amendment XIV) Defendants: DBNTC Attorneys, Judges Emily Marks, Brooke Reid, James Anderson, State Enforcement Agencies, Judicial Clerks**

¶194GA. Plaintiff incorporates Paragraphs 1 through 340 and alleges that Defendants entered into a coordinated conspiracy to obstruct his constitutional rights, suppress legal remedies, and retaliate against lawful advocacy.

¶194GB. The conspiracy involved overt acts by judicial officers, DBNTC attorneys, enforcement agencies, and court clerks, each contributing to a pattern of suppression, retaliation, and procedural manipulation.

¶194GC. Defendants knowingly and willfully:

- Obstructed Plaintiff's access to judicial remedies through unlawful injunctions and docket interference

- Prevented Plaintiff from securing legal representation by retaliating against attorneys who supported his claims

- Circulated judicial rebukes and sanctions to chill advocacy and isolate Plaintiff from legal support

- Coordinated enforcement actions and adverse rulings to reinforce institutional retaliation

¶194GD. These acts were not isolated—they formed a continuous pattern of racketeering activity under 18 U.S.C. § 1962(d), and a class-based conspiracy under 42 U.S.C. § 1985(3), targeting Plaintiff as a member of a protected class and as a litigant challenging entrenched institutional misconduct.

¶194GE. The conspiracy deprived Plaintiff of equal protection, due process, and access to court, violating both constitutional guarantees and federal civil rights statutes.

¶194GF. As a direct result of this conspiracy, Plaintiff suffered:

- Loss of legal standing and dismissal of valid claims

- Professional isolation and reputational harm

- Emotional distress and economic injury

- Procedural entrapment and retaliatory sanctions

Relief Requested

- Declaratory judgment that Defendants engaged in a conspiracy to violate Plaintiff's constitutional rights

- Compensatory damages in the amount of **$1,500,000** for procedural obstruction, reputational harm, and emotional injury

- Punitive damages in the amount of **$3,000,000** to deter future coordinated abuse by judicial and financial actors

- Attorney's fees and equitable restoration of Plaintiff's legal standing

- Reinstatement of Plaintiff's right to pursue claims previously dismissed due to procedural manipulation

- Mandate for independent oversight of future proceedings involving Plaintiff to safeguard against further coordinated interference

- Court-ordered expungement of adverse judicial findings and sanctions resulting from the conspiracy.

**COUNT 23 – Fraud Upon the Court and Material Misrepresentations Statutes Invoked: - Fed. R. Civ. P. 60(b)(3) and (4) - Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) Defendants: Deutsche Bank, One West Bank, Ocwen Loan Servicing, Counsel of Record, and Judicial Officers Enforcing False Representations**

¶194GU. Plaintiff incorporates Paragraphs 1 through 360 and alleges that Defendants knowingly submitted false pleadings, affidavits, and procedural representations that corrupted the judicial process and deprived Plaintiff of fair adjudication.

¶194GV. Defendants made material misrepresentations regarding:

- Legal standing to enforce the mortgage

- Possession of a complete and lawful chain of title

- Valid service of process to Plaintiff and co-owners

- FDIC authorization post-IndyMac failure

¶194GW. These misrepresentations were not inadvertent. They were:

- Repeated across multiple courts and forums

- Reinforced by invocation of invalid privilege to suppress discovery

- Accompanied by fabricated evidence, including false SCRA certifications and redacted disclosures

¶194GX. Judicial officers—including Judges Marks, Reid, and Anderson—adopted these falsehoods as foundational fact, issuing rulings and injunctions without requiring evidentiary proof or adjudicating Plaintiff's statutory defenses. These rulings were procured through deception and are void under Rule 60(b)(4).

¶194GY. Plaintiff's evidence includes:

- The 2012 FDIC letter confirming lack of assignment authority

- Concealed call logs showing attorney coordination with servicers

- Fabricated filings and procedural suppression of federal defenses

- Ejection orders executed despite unresolved jurisdictional defects

¶194GZ. These acts constitute fraud upon the court under Hazel-Atlas and Rule 60(b)(3), which permits vacatur of judgments obtained through misconduct. The pattern of deception documented herein meets the threshold for judicial nullification and disciplinary referral.

Relief Requested

- Declaratory judgment that all rulings, injunctions, and dismissals entered in reliance on fraudulent filings are void ab initio

- Vacatur of orders enforcing standing, foreclosure, or ejection based on said fraud

- Sanctions and disciplinary referral for attorneys and judicial officers involved

- Compensatory damages in the amount of **$1,250,000**, including:

  - $750,000 for loss of property, litigation obstruction, and reputational harm

  - $500,000 for emotional distress, procedural coercion, and suppression of statutory defenses

- Punitive damages in the amount of **$2,000,000**, to deter future fraud upon the court and institutional deception

- Attorney's fees, costs, and equitable restoration of Plaintiff's property interest under Rule 60(b) and 42 U.S.C. § 1988

- Any additional relief deemed just and appropriate by the Court.

**COUNT 24 – Federal Court Complicity & Due Process Violations Statutes Invoked:**

**- U.S. Const. Amend. V & XIV - 28 U.S.C. § 453 (Judicial Oath) - Judicial Code Violations**

**Defendants: Federal Judges, Clerks, and Judicial Officers in Official Capacity.**

¶194HA. Plaintiff incorporates and relies upon Paragraphs ¶194GU through ¶194GZ in support of this cause of action, which detail the federal court's failure to engage jurisdictional defenses, retaliatory sanctions, and suppression of Plaintiff's filings.

¶194HB. Plaintiff alleges that federal judicial actors failed to uphold their constitutional and statutory duties by:

- Suppressing valid federal defenses raised under RESPA, TILA, and FDCPA

- Refusing to adjudicate jurisdictional defects and standing challenges

- Retaliating against Plaintiff's lawful filings through sanctions, docket manipulation, and procedural exclusion

¶194HC. These acts violated:

- **28 U.S.C. § 453** – judicial oath requiring impartial adjudication and fidelity to the Constitution

- **Fifth Amendment** – denial of fair process and access to meaningful adjudication

- **Fourteenth Amendment** – unequal treatment, selective enforcement, and suppression of legal access

- **Federal Preemption Doctrine** – refusal to engage federally governed claims and statutory defenses

¶194HD. Plaintiff alleges that these violations were not isolated but systemic, occurring across multiple filings, hearings, and procedural events. Judicial officers failed to recuse despite conflicts, adopted servicer falsehoods as fact, and obstructed Plaintiff's efforts to invoke federal protections.

¶194HE. The cumulative effect of these acts constitutes **judicial complicity** in enterprise misconduct and a **structural due process violation**, warranting declaratory relief and vacatur under Rule 60(b)(4).

Relief Requested

- Declaratory judgment that federal courts failed to uphold due process and constitutional protections

- Vacatur of all rulings, dismissals, and sanctions issued in reliance on suppressed filings or unadjudicated jurisdictional defects

- Injunctive relief barring further obstruction of Plaintiff's federal defenses and requiring adjudication of all pending constitutional claims

- Compensatory damages in the amount of **$850,000**, including:

  - $500,000 for denial of access to federal remedies and procedural retaliation

  - $350,000 for reputational harm, litigation obstruction, and emotional distress

- Attorney's fees and costs under 42 U.S.C. § 1988 and Rule 60(b)

- Equitable restoration of Plaintiff's litigation rights, including reinstatement of dismissed claims and access to discovery

- Any additional relief deemed just and appropriate by the Court.

**COUNT 25 – Systemic Judicial Misconduct & Ethics Violations Statutes Invoked: - 28 U.S.C. §§ 453, 455 - Judicial Code of Conduct - U.S. Const. Amend. V & XIV Defendants: Judges Marks, Reid, Anderson; Clerks of Court; DBNTC Counsel.**

¶194HK. Plaintiff incorporates and relies upon Paragraphs ¶194HD through ¶194HJ in support of this cause of action, which document judge reassignment manipulation, ex parte coordination, and failure to recuse despite bias and conflicts.

¶194HL. Plaintiff alleges that judicial officers and court administrators engaged in systemic misconduct, violating their oath of impartiality and statutory obligations to recuse in the presence of bias, conflict of interest, or prior involvement with enterprise-aligned actors.

¶194HM. These acts violated:

- **28 U.S.C. § 453** – judicial oath requiring impartial adjudication and fidelity to the Constitution

- **28 U.S.C. § 455** – mandatory recusal in cases of bias, prejudice, or financial interest

- **Judicial Code of Conduct** – prohibiting ex parte communication, favoritism, and appearance of impropriety

- **Fifth Amendment** – denial of fair process and neutral adjudication

- **Fourteenth Amendment** – unequal treatment and suppression of Plaintiff's legal access

¶194HN. Plaintiff alleges that:

- Judge reassignment was manipulated to ensure enterprise-aligned oversight

- Clerks of Court suppressed filings and failed to docket critical pleadings

- Judicial officers failed to disclose prior involvement with servicer counsel or enterprise affiliates

- Ex parte coordination occurred between DBNTC counsel and judicial staff, resulting in prejudicial rulings and procedural exclusion

¶194HO. These acts constitute **structural due process violations** and **judicial ethics breaches**, warranting declaratory relief, vacatur, and disciplinary referral.

Relief Requested

- Declaratory judgment that judicial misconduct permeated Plaintiff's foreclosure and property proceedings

- Vacatur of all rulings, injunctions, and dismissals issued under compromised judicial oversight

- Injunctive relief barring enforcement of void judgments and requiring reassignment to impartial adjudicators

- Referral to the Judicial Council and appropriate disciplinary bodies for review and sanctions against named officials

- Compensatory damages in the amount of **$950,000**, including:

  - $600,000 for legal obstructions, procedural suppression, and financial losses

  - $350,000 for reputational harm, emotional distress, and denial of equal protection

- Attorney's fees and costs under 42 U.S.C. § 1988 and Rule 60(b)

- Any additional relief deemed just and appropriate by the Court .

**COUNT 26 – ENTERPRISE STRUCTURING AND SYSTEMIC OBSTRUCTION OF JUSTICE**

**Statutes Invoked:- 18 U.S.C. § 1962(c) – Civil RICO, - 42 U.S.C. § 1983 – Civil Rights Enforcement,- U.S. Const. Amend. V & XIV – Due Process and Equal Protection, - 28 U.S.C. §§ 1443, 1442 – Removal and Federal Review Rights.**

¶194IA. Plaintiff incorporates and relies upon Paragraphs ¶194HK through ¶194HZ in support of this cause of action, which document coordinated enterprise misconduct, retaliatory suppression, and obstruction of federal adjudication.

¶194IB. Plaintiff alleges that Defendants—including DBNTC attorneys, foreclosure agents, judicial officers, and court administrators—acted in concert to suppress Plaintiff's federal claims, obstruct venue access, and retaliate against lawful filings.

¶194IC. These acts include:

- Procedural rerouting and suppression of filings addressed to Hon. Myron Thompson

- Abuse of discretion by Chief Judge Emily Marks, who declared the case "will stay" in state court, defying federal removal statutes

- Retaliatory ejection timed to suppress civil rights assertions

- Coordination among servicers, clerks, and judicial officers to block federal review

¶194ID. These actions constitute a pattern of racketeering activity under 18 U.S.C. § 1962(c) and reflect systemic obstruction of justice designed to silence minority advocacy and deny constitutional remedy.

¶194IE. Plaintiff suffered direct harm, including property loss, emotional distress, reputational damage, and litigation costs, as detailed in the damage's matrix below.

Summary of Allegations

Plaintiff alleges that Defendants, acting in concert as part of a coordinated enterprise, engaged in systemic obstruction of justice through:

- Procedural suppression of federal filings

- Retaliatory ejection following civil rights assertions

- Rerouting and suppression of judicial access to Hon. Myron Thompson

- Abuse of discretion by Chief Judge Emily Marks to block statutory removal rights

- Coordinated misaddressing, gatekeeping, and forum manipulation

These acts constitute a pattern of racketeering activity under 18 U.S.C. § 1962(c), and directly deprived Plaintiff of property, dignity, and access to remedy.

**Damages Matrix – Count 26**

Category: Property Loss

Description: Loss of access, restoration costs, and equity suppression

Amount: $125,000

Category: Procedural Suppression

Description: Costs incurred due to rerouted filings, blocked motions, and judicial obstruction

Amount: $50,000

Category: Emotional Distress

Description: Psychological harm, reputational damage, and civil rights deprivation

Amount: $100,000

Category: Litigation Costs

Description: Expenses related to forced venue change, certified mailings, and re-filings

Amount: $25,000

Subtotal: $300,000

Treble Damages (18 U.S.C. § 1964(c)): $900,000

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Clayton Thomason respectfully requests that this Court enter judgment in his favor and grant the following relief:

- Compensatory damages in the amount of $300,000 for Count 26, and additional damages as specified in other counts

- Treble damages under 18 U.S.C. § 1964(c), totaling $900,000 for Count 26

- Punitive damages for willful misconduct, racial discrimination, and retaliatory suppression

- Declaratory relief affirming Plaintiff's removal rights under 28 U.S.C. §§ 1443, 1442, and FDIC statutes

- Injunctive relief barring Defendants from further enterprise coordination, procedural obstruction, or retaliatory conduct

- Restoration of property rights, access, and equity wrongfully denied

- Costs of litigation, including certified mailings, filings, and venue transfer expenses

- Any other relief the Court deems just and proper in light of the constitutional and statutory violations presented

Respectfully submitted,

Clayton Thomason

Pro Se Plaintiff.

**COUNT 27 – RETALIATION AGAINST PLAINTIFF'S FEDERAL COMPLAINTS; Statutes Invoked:- 42 U.S.C. § 1983 – Civil Rights Enforcement,- U.S. Const. Amend. I – Right to Petition and Free Speech,- U.S. Const. Amend. XIV – Equal Protection and Due Process**

**Defendants: Judges Emily Marks and James Reid, DBNTC Attorneys, Judicial Clerks**

¶194IA. Plaintiff incorporates and relies upon Paragraphs ¶194HU through ¶194HZ in support of this cause of action, which documents retaliatory sanctions, suppression of filings, and targeting of Plaintiff's legal counsel following protected federal complaints.

¶194IB. Plaintiff alleges that Defendants retaliated against his protected First Amendment activity—including the filing of federal complaints challenging foreclosure fraud, judicial misconduct, and enterprise structuring—by:

- Imposing unlawful sanctions

- Suppressing filings and pleadings

- Targeting and disqualifying legal counsel

- Coordinating procedural rerouting to obstruct federal venue

¶194IC. These retaliatory acts were committed under color of law and violated:

- First Amendment – Plaintiff's right to petition the government and engage in protected speech

- Fourteenth Amendment – Plaintiff's right to equal protection and due process

- 42 U.S.C. § 1983 – Prohibition against retaliation by state actors for protected activity

¶194ID. The retaliation was not isolated but part of a coordinated enterprise response to Plaintiff's exposure of systemic misconduct. Judicial officers and clerks acted in concert with DBNTC attorneys to suppress Plaintiff's litigation rights and silence constitutional advocacy.

¶194IE. Plaintiff suffered direct and measurable harm, including:

- Compensatory damages for emotional distress, reputational injury, and litigation costs

- Monetary losses tied to delayed restoration, suppressed filings, and attorney disqualification

- Loss of access to federal venue and procedural protections

- Ongoing harm from retaliatory rulings and enterprise entrenchment

Relief Requested

- Declaratory judgment that judicial and legal retaliation occurred

- Injunctive relief restoring unfettered access to courts and counsel

- Compensatory damages in excess of $250,000, subject to proof at trial

- Referral for judicial misconduct review and disciplinary action

- Attorney's fees under 42 U.S.C. § 1988

- Equitable restoration of Plaintiff's litigation rights and venue access.

**COUNT 28 – STATE COURT OBSTRUCTION OF APPEALS & PROCEDURAL SABOTAGE Statutes Invoked:- U.S. Const. Amend. V – Due Process:- U.S. Const. Amend. XIV – Equal Protection and Access to Courts- Alabama Rules of Appellate Procedure – Timely and Impartial Review: Defendants: Judges James Reid and Terri Anderson, State Clerks, DBNTC Attorneys.**

¶194IK. Plaintiff incorporates and relies upon Paragraphs ¶194ID through ¶194IJ in support of this cause of action, which document deliberate obstruction of appellate review, procedural sabotage, and suppression of Plaintiff's legal challenges to fraudulent foreclosure enforcement.

¶194IL. Plaintiff alleges that Defendants—acting in concert and under color of law—obstructed appellate review by:

- Delaying docketing and misrouting filings

- Blocking motions from judicial review

- Dismissing appeals without addressing jurisdictional defects

- Refusing to transmit records necessary for appellate adjudication

¶194IM. These acts violated:

- Fifth Amendment – denial of fair process and access to remedy

- Fourteenth Amendment – unequal treatment and suppression of legal access

- Alabama Rules of Appellate Procedure – failure to provide timely and impartial appellate review

¶194IN. The obstruction was not isolated but part of a broader enterprise pattern, wherein judicial officers and clerks coordinated with DBNTC attorneys to suppress Plaintiff's litigation rights, retaliate against federal complaints, and prevent appellate scrutiny of fraudulent foreclosure enforcement.

¶194IO. Plaintiff suffered direct and measurable harm, including:

- Compensatory damages for emotional distress, reputational injury, and litigation costs

- Monetary losses tied to delayed restoration, suppressed appeals, and procedural sabotage

- Loss of appellate standing and constitutional access to remedy

- Ongoing harm from retaliatory rulings and enterprise entrenchment

Relief Requested

- Declaratory judgment that Plaintiff's appellate rights were obstructed

- Order compelling review of fraudulent foreclosure claims

- Injunctive relief preventing further clerk interference and procedural sabotage

- Compensatory damages in excess of $300,000, subject to proof at trial

- Attorney's fees under 42 U.S.C. § 1988 and applicable state law

- Equitable restoration of Plaintiff's appellate standing and record transmission

**Exhibit: Timeline of Procedural Sabotage & Appellate Obstruction**

Date: Jan 2024

Event: Plaintiff files federal complaint challenging foreclosure fraud

Actors Involved: Plaintiff, DBNTC Attorneys

Sabotage Type: Triggering protected activity

Linked Count: Count 27

Date: Feb 2024

Event: Judicial clerk reroutes filings away from Hon. Myron Thompson

Actors Involved: State Clerks, Chief Judge Marks

Sabotage Type: Venue suppression

Linked Count: Count 26

Date: Mar 2024

Event: Judge Reid imposes sanctions on Plaintiff's counsel

Actors Involved: Judge Reid, DBNTC Attorneys

Sabotage Type: Retaliation against protected speech

Linked Count: Count 27

Date: Apr 2024

Event: Appeal filed challenging foreclosure enforcement

Actors Involved: Plaintiff, State Clerks

Sabotage Type: Appellate initiation

Linked Count: Count 28

Date: May 2024

Event: Clerk delays docketing and omits record transmission

Actors Involved: State Clerks

Sabotage Type: Procedural sabotage

Linked Count: Count 28

Date: Jun 2024

Event: Judge Anderson dismisses appeal without jurisdictional review

Actors Involved: Judge Anderson

Sabotage Type: Denial of appellate remedy

Linked Count: Count 28

Date: Jul 2024

Event: DBNTC attorneys file retaliatory pleadings to suppress federal venue

Actors Involved: DBNTC Attorneys

Sabotage Type: Enterprise retaliation

Linked Count: Count 26

Date: Aug 2024

Event: Plaintiff's filings blocked from judicial review

Actors Involved: Judicial Clerks

Sabotage Type: Suppression of pleadings

Linked Count: Count 27

Date: Sep 2024

Event: Coordinated rulings deny access to federal venue

Actors Involved: Judges Marks, Reid, Anderson

Sabotage Type: Constitutional obstruction

Linked Count: Count 26

**Exhibit: Predicate Act Matrix – Counts 26–28**

Event: Rerouting filings

Predicate Act: Obstruction of justice

Statutory Basis: 18 U.S.C. § 1512

Enterprise Element: Coordination between clerks and judges

Event: Sanctions against counsel

Predicate Act: Retaliation under color of law

Statutory Basis: 42 U.S.C. § 1983

Enterprise Element: Judicial retaliation for protected speech

Event: Dismissal without jurisdictional review

Predicate Act: Denial of due process

Statutory Basis: U.S. Const. Amend. V & XIV

Enterprise Element: Procedural sabotage

Event: Record suppression

Predicate Act: Deprivation of rights

Statutory Basis: 42 U.S.C. § 1983

Enterprise Element: Enterprise concealment

Event: Coordinated rulings

Predicate Act: Pattern of racketeering activity

Statutory Basis: 18 U.S.C. § 1962(c)

Enterprise Element: Structural Entrenchment

**COUNT 29 – FEDERAL PREEMPTION VIOLATIONS & JURISDICTIONAL OVERREACH**

**Statutes Invoked:- U.S. Const. Art. VI, Cl. 2 – Supremacy Clause- 28 U.S.C. §§ 1331, 1367, 1442 – Federal Jurisdiction and Removal- FIRREA – Financial Institutions Reform, Recovery, and Enforcement Act- SCRA – Servicemembers Civil Relief Act; Defendants: Judges James Reid and Terri Anderson, DBNTC Attorneys, State Clerks**

¶194IU. Plaintiff incorporates and relies upon Paragraphs ¶194IN through ¶194IT in support of this cause of action, which documents the refusal of Alabama courts to honor federal preemption, enforce FDIC oversight, and engage military service protections under SCRA.

¶194IV. Plaintiff alleges that Defendants violated federal law and constitutional mandates by:

- Enforcing foreclosure rulings in defiance of FIRREA and FDIC asset determinations

- Ignoring SCRA protections for Plaintiff's active-duty co-owner

- Refusing to engage federal removal arguments, despite statutory mandates under 28 U.S.C. §§ 1442 and 1446

¶194IW. These acts violated:

- Supremacy Clause (Art. VI, Cl. 2) – federal law overrides conflicting state rulings

- 28 U.S.C. §§ 1331, 1442, 1367 – federal jurisdiction over claims involving FDIC and military protections

- FIRREA & SCRA – statutory mandates requiring federal review, abatement, and protection of servicemember rights

¶194IX. Plaintiff further alleges that state court actors knowingly disregarded federal removal triggers, suppressed FDIC correspondence, and failed to adjudicate SCRA defenses, resulting in unlawful foreclosure enforcement and constitutional injury.

¶194IY. These violations are part of a broader pattern of enterprise structuring, wherein judicial actors, and servicer counsel coordinate to override federal protections, suppress jurisdictional defenses, and entrench state control over federally governed claims.

¶194IZ. Plaintiff suffered direct harm, including:

- Loss of property and equity due to unlawful foreclosure enforcement

- Denial of military service protections for co-owner

- Suppression of FDIC-triggered removal rights

- Emotional distress and reputational harm tied to jurisdictional sabotage

Relief Requested

- Declaratory judgment that Alabama courts violated federal preemption principles and statutory mandates

- Vacatur of all foreclosure enforcement orders issued in defiance of FIRREA, SCRA, and federal jurisdictional statutes

- Injunctive relief barring further state court action contradicting federal law

- Referral for judicial misconduct review and disciplinary action

- Compensatory damages in excess of $350,000, subject to proof at trial

- Attorney's fees under 42 U.S.C. § 1988 and applicable federal statutes

- Equitable restoration of Plaintiff's jurisdictional defenses and military service protections.

**COUNT 30 – SUPPRESSION OF FDIC ASSET DETERMINATIONS & BANKING FRAUD**

**Statutes Invoked:- 12 U.S.C. § 1821(d) – FDIC Receivership and Asset Determinations**

**- 18 U.S.C. § 1001 – False Statements in Judicial and Regulatory Filings**

**- 18 U.S.C. § 1014 – Fraudulent Claims in Financial Enforcement**

**- 18 U.S.C. § 1962(c), (d) – Civil RICO Enterprise Conduct and Conspiracy**

**Defendants: Deutsche Bank National Trust Company (DBNTC), Ocwen Loan Servicing, MERS, Judicial Officers, Alabama Banking Regulators.**

¶194JG. Plaintiff incorporates and relies upon Paragraphs ¶194IX through ¶194JF in support of this cause of action, which document the suppression of FDIC asset determinations, fabrication of title records, and judicial enforcement of fraudulent foreclosure claims.

¶194JH. Plaintiff alleges that Defendants engaged in a coordinated scheme to:

- Conceal FDIC receivership records confirming void asset status

- Submit false title and servicing documents into judicial proceedings

- Misrepresent ownership, standing, and authority to foreclose

- Collude with judicial officers to enforce fraudulent claims and suppress jurisdictional defenses

¶194JI. These acts violated multiple federal statutes, including:

- 12 U.S.C. § 1821(d) – FDIC asset determinations preempt conflicting state claims and must be honored in judicial proceedings

- 18 U.S.C. § 1001 – knowingly submitting false statements and documents to courts and regulators

- 18 U.S.C. § 1014 – asserting fraudulent claims in financial enforcement actions

- 18 U.S.C. § 1962(c), (d) – engaging in a pattern of racketeering activity through a coordinated enterprise involving servicers, attorneys, judicial officers, and regulators

¶194JJ. Plaintiff alleges that this conduct constitutes a Civil RICO enterprise, with continuity, structure, and shared purpose to suppress federal asset determinations, fabricate ownership claims, and extract property through fraudulent foreclosure enforcement.

¶194JK. Alabama banking regulators failed to investigate or intervene, despite receiving FDIC correspondence and evidence of asset voidance, thereby enabling the enterprise, and violating their statutory oversight duties.

¶194JL. Judicial officers knowingly enforced foreclosure orders based on fabricated records, refused to engage FDIC preemption arguments, and suppressed Plaintiff's jurisdictional defenses, constituting willful misconduct and aiding racketeering activity.

¶194JM. Plaintiff suffered direct harm, including:

- Loss of property and equity through fraudulent foreclosure enforcement

- Suppression of FDIC asset determinations and federal defenses

- Emotional distress, reputational harm, and financial injury

- Deprivation of due process and equal protection under federal law

Relief Requested

- Declaratory judgment that FDIC asset determinations were unlawfully suppressed and preempt state foreclosure claims

- Vacatur of all foreclosure enforcement orders based on fraudulent banking records and misrepresented ownership

- Order compelling production of all servicing, title, and FDIC correspondence documentation

- Treble damages under Civil RICO, pursuant to 18 U.S.C. § 1964(c)

- Injunctive relief barring further enforcement of void foreclosure claims

- Attorney's fees under 18 U.S.C. § 1964(c) and applicable federal statutes

- Equitable restoration of Plaintiff's property interest and jurisdictional defenses.

**FEDERAL DAMAGES FRAMEWORK – COUNT 30**

1. Compensatory Damages (Restoration of Losses)

These are grounded in actual harm suffered due to enterprise misconduct:

- Property Loss:

Fair market value of foreclosed property + lost equity

Estimated: $175,000–$225,000

- Emotional Distress & Reputational Harm:

Due to judicial suppression, servicer misconduct, and public record damage

Estimated: $50,000–$75,000

- Litigation Costs & Document Recovery:

Costs incurred to obtain suppressed FDIC records, forensic title analysis, and court filings

Estimated: $15,000–$25,000

2. Treble Damages (Civil RICO – 18 U.S.C. § 1964(c))

Federal law mandates treble damages for successful RICO claims:

- Base Harm: $250,000

- Treble Multiplier: ×3

- Total RICO Damages: $750,000

3. Attorney's Fees & Costs

Recoverable under RICO and constitutional claims:

- Estimated Fees: $75,000–$125,000

- Court Costs & Expert Fees: $10,000–$15,000

4. Equitable Relief

- Restoration of Property Interest

- Vacatur of Foreclosure Orders

- Injunctive Relief Against Further Enforcement

- Referral for Judicial Misconduct Review

TOTAL MONETARY DAMAGES REQUESTED

$850,000–$1,000,000, subject to proof at trial, plus equitable and declaratory relief.

Date | Event | Enterprise Action | Federal Violation

---------------------------------------------------------------------------------------------------------

2018–2019 | FDIC issues asset determination confirming void status | DBNTC and Ocwen conceal FDIC correspondence from filings | 12 U.S.C. § 1821(d)

2020 | Plaintiff submits FDIC records in state proceedings | Judicial officers refuse to acknowledge federal preemption| U.S. Const. Art. VI, Cl. 2

2021 | Alabama regulators receive FDIC documentation | No investigation or enforcement action taken | Regulatory negligence

2022 | DBNTC attorneys submit fabricated title and servicing docs | Misrepresentation of ownership and standing | 18 U.S.C. §§ 1001, 1014

2023 | State court enforces foreclosure order based on false records| Judicial complicity in enterprise enforcement | 18 U.S.C. § 1962(d)

2024 | Plaintiff invokes federal removal and RICO claims | State court suppresses removal and jurisdictional defenses| 28 U.S.C. §§ 1442, 1331

**COUNT 31 – PROCEDURAL DUE PROCESS VIOLATIONS & DENIAL OF MEANINGFUL REVIEW Statutes Invoked: - U.S. Const. Amend. V – Right to Fair Process**

**- U.S. Const. Amend. XIV – Equal Protection and Access to Justice**

**- 42 U.S.C. § 1983 – Deprivation of Rights Under Color of Law**

**- Federal Rules of Civil Procedure – Rules 5, 26, 56, and 60 Defendants: Judges Emily Marks, James Anderson, Brooke Reid; State Clerks; DBNTC Attorneys**

¶194JN. Plaintiff incorporates and relies upon Paragraphs ¶194JG through ¶194JM, which detail how judicial officers and procedural actors blocked hearings, manipulated filings, and denied Plaintiff's constitutional right to fair process.

¶194JO. Defendants engaged in coordinated procedural suppression by:

- Refusing to adjudicate federal defenses, including FDIC asset determinations and SCRA protections

- Suppressing Plaintiff's legal filings, discovery requests, and evidentiary submissions

- Issuing foreclosure-related rulings without impartial review or meaningful hearing

¶194JP. These acts violated multiple constitutional and statutory protections:

- Fifth Amendment – denial of fair process and impartial proceedings

- Fourteenth Amendment – suppression of access to justice and unequal treatment under law

- 42 U.S.C. § 1983 – deprivation of constitutional rights under color of state law

- Federal Rules of Civil Procedure – violations of notice, hearing, and discovery standards

¶194JQ. These procedural violations were not isolated, but part of a broader pattern of judicial entrenchment and enterprise structuring designed to suppress federal defenses, deny meaningful review, and enforce foreclosure orders without lawful adjudication.

¶194JR. Plaintiff suffered direct harm, including:

- Denial of access to discovery, hearings, and statutory defenses

- Wrongful foreclosure rulings issued without impartial review

- Emotional distress and reputational harm tied to procedural obstruction

- Financial injury due to suppression of jurisdictional and constitutional defenses

Relief Requested:

- Declaratory judgment that Plaintiff was denied procedural due process under the Fifth and Fourteenth Amendments

- Vacatur of all wrongful rulings obtained through manipulated procedures and suppression of federal defenses

- Order restoring access to discovery, evidentiary hearings, and statutory protections under FIRREA, SCRA, and FDIC oversight

- Compensatory damages in excess of $250,000, subject to proof at trial

- Attorney's fees under 42 U.S.C. § 1988 and applicable federal law

- Equitable restoration of Plaintiff's foreclosure defense posture and constitutional standing

**EXHIBIT C – PROCEDURAL SUPPRESSION TIMELINE**

Date | Event | Procedural Violation | Constitutional Impact

----------------------------------------------------------------------------------------------------------------

2019 | Plaintiff files FDIC asset documentation | Filing suppressed by court clerk | Denial of access to evidence (Amend. V, XIV)

2020 | Request for evidentiary hearing on SCRA protections | Hearing denied without explanation | Denial of meaningful review (Amend. V)

2021 | Discovery requests submitted regarding title fabrication | Discovery obstructed and never ruled upon | FRCP Rule 26 violation

2022 | DBNTC attorneys submit false servicing records | Court accepts without evidentiary challenge | Lack of impartial adjudication

2023 | Plaintiff invokes federal defenses and removal rights | State court refuses to engage or acknowledge | Suppression of jurisdictional defenses

2024 | Foreclosure order issued without hearing or review | No notice, no hearing, no adjudication of defenses | Procedural sabotage under color of law

Actor | Conduct | Statute Violated | Constitutional Injury

----------------------------------------------------------------------------------------------------------------

Judge Marks | Denied hearings and suppressed filings | FRCP Rules 5, 26, 60 | Amend. V – No fair process

Judge Reid | Issued rulings without adjudicating federal defenses | 42 U.S.C. § 1983 | Amend. XIV – Unequal treatment

State Clerks | Blocked filings and failed to docket federal exhibits | FRCP Rule 5 | Amend. V – Denial of access

DBNTC Attorneys | Submitted false records and opposed discovery | 18 U.S.C. § 1001 | Amend. V – Impartiality compromised

**COUNT 32 – OBSTRUCTION OF FEDERAL PROCESS AND RETALIATORY ENFORCEMENT**

**(18 U.S.C. § 1512; 42 U.S.C. § 1983)**

**Defendants:**

**Deutsche Bank National Trust Company (DBNTC); Hill & Hill; Judge James Anderson; Local Enforcement Agents; Servicer-Aligned Counsel Statutes Invoked: - 18 U.S.C. § 1512 – Obstruction of Justice - 42 U.S.C. § 1983 – Deprivation of Rights Under Color of Law - 28 U.S.C. § 1443 – Removal for Civil Rights Enforcement - 28 U.S.C. § 1446(d) – Stay of State Proceedings Upon Removal**

¶194KG. Plaintiffs incorporate and rely upon Paragraphs ¶194KA through ¶194KF in support of this cause of action, which establish that Defendants knowingly interfered with federal judicial process, retaliated against Plaintiffs for asserting civil rights claims, and executed enforcement actions in defiance of removal and pending federal litigation.

¶194KH. Plaintiffs allege that:

- Defendants were served with actual and constructive notice of federal removal on July 28, 2025

- Despite removal, Defendants executed possession and initiated resale efforts, violating 28 U.S.C. § 1446(d)

- Judicial actors and servicer counsel continued to issue orders and coordinate enforcement post-removal

- These actions obstructed Plaintiffs' access to federal remedies and suppressed constitutional defenses

¶194KI. Defendants' conduct constitutes:

- Obstruction of justice under 18 U.S.C. § 1512(c)(2), by corruptly impeding federal adjudication

- Retaliation under 42 U.S.C. § 1983, by depriving Plaintiffs of property and due process under color of law

- Violation of removal stay under 28 U.S.C. § 1446(d), rendering all post-removal enforcement void

Relief Requested:

- Declaratory judgment that all post-removal enforcement actions are void and unlawful

- Injunctive relief barring further enforcement, possession, or resale efforts pending federal adjudication

- Compensatory damages in excess of $500,000 for obstruction, emotional distress, and loss of federal remedy

- Punitive damages as warranted by the evidence

- Attorney's fees under 42 U.S.C. § 1988 and applicable federal law.

**COUNT 33 – CONSTRUCTIVE FRAUD AND SUPPRESSION OF STATUTORY DEFENSES**

**(15 U.S.C. § 1692e; 12 U.S.C. § 2605; Ala. Code § 6-5-101; Common Law Fraud and Equitable Estoppel)**

**Defendants:**

**Ocwen/PHH; Deutsche Bank National Trust Company; Hill & Hill; Eva Bank; Servicer Counsel**

Statutes Invoked:

- 15 U.S.C. § 1692e – False, deceptive, or misleading representations

- 12 U.S.C. § 2605 – Servicing disclosures and statutory obligations under RESPA

- Ala. Code § 6-5-101 – Constructive fraud under Alabama law

- Common Law – Equitable estoppel, concealment, and reliance injury

¶194KJ. Plaintiffs incorporate and rely upon Paragraphs ¶194KA through ¶194KI and further allege that Defendants engaged in a pattern of constructive fraud by suppressing statutory defenses, reenacting discharged obligations, and concealing material facts necessary for legal remedy.

¶194KK. Specifically:- Defendants failed to disclose debt discharge events and 1099-C issuance, violating 26 U.S.C. § 6050P

- Reenacted servicing and foreclosure actions post-discharge, misleading Plaintiffs, and courts

- Suppressed QWR responses, redacted ledger entries, and concealed insurance proceeds

- Misrepresented legal standing and ownership chain to obstruct quiet title and equitable defenses

¶194KL. Plaintiffs relied on servicer representations and judicial orders that were void or misleading, resulting in:

- Loss of statutory defenses under RESPA, FDCPA, and TILA

- Injury to equitable title, possession, and restoration efforts

- Emotional distress and procedural exhaustion due to concealment and misdirection

Relief Requested:

- Declaratory judgment that Defendants engaged in constructive fraud and statutory suppression

- Equitable estoppel against further enforcement or resale based on misrepresented standing

- Compensatory damages in excess of $250,000 for reliance injury, restoration loss, and emotional harm

- Punitive damages as warranted

- Attorney's fees and costs under applicable federal and state law

**COUNT 34 – INJUNCTIVE RELIEF TO VACATE VOID FORECLOSURE AND EJECTMENT**

**Statutes Invoked:- Fed. R. Civ. P. 60(b)(4) – Relief from Void Judgment - Fed. R. Civ. P. 60(d)(3) – Fraud on the Court - 28 U.S.C. § 2201 – Declaratory Judgment Act - 42 U.S.C. § 1983 – Deprivation of Rights Under Color of Law Defendants: Deutsche Bank National Trust Company (DBNTC); Judge James Anderson; Foreclosure Counsel and Agents; Successors in Possession**

¶194KS. Plaintiff incorporates and relies upon Paragraphs ¶194KI through ¶194KR in support of this cause of action, which establishes that the judgment underpinning DBNTC's foreclosure and ejectment posture was void, that enforcement occurred in violation of jurisdiction, and that judicial conduct enabled coercive resale offers and waiver tactics.

¶194KT. Plaintiff alleges that Defendants:

- Knowingly enforced a void judgment entered on April 2, 2025

- Executed possession without lawful jurisdiction or adjudication of federal defenses

- Suppressed Plaintiff's statutory claims under FIRREA, FDIC oversight, and civil rights law

- Colluded to convert enforcement into coercive waiver and resale pressure

¶194KU. These acts violated Plaintiff's rights under:

- Fed. R. Civ. P. 60(b)(4) – by enforcing a judgment void for lack of jurisdiction

- Fed. R. Civ. P. 60(d)(3) – by committing fraud upon the court through suppression and collusion

- 42 U.S.C. § 1983 – by depriving Plaintiff of property and liberty interests under color of law

- 28 U.S.C. § 2201 – by failing to adjudicate Plaintiff's federal defenses and jurisdictional objections .

¶194KV. Plaintiff suffered direct harm, including:

- Loss of homestead property and wrongful ejectment

- Emotional distress and reputational injury tied to coercive enforcement

- Financial injury resulting from displacement, emergency lodging, and loss of personal property

- Suppression of federal defenses and denial of meaningful review

Relief Requested:

- Declaratory judgment that April 2, 2025, foreclosure and ejectment orders are void ab initio

- Vacatur of all enforcement actions derived from the void judgment

- Injunctive relief barring DBNTC or any successor from asserting possession or ownership claims

- Order compelling restoration of Plaintiff's homestead and rightful occupancy

- Attorney's fees under 42 U.S.C. § 1988 and applicable federal law

- Equitable relief restoring Plaintiff's constitutional standing and foreclosure defense posture

Monetary Damages:

Plaintiff seeks compensatory damages in excess of **$750,000**, subject to proof at trial, pursuant to:

- 42 U.S.C. § 1983 – for deprivation of property and liberty interests under color of law

- Fed. R. Civ. P. 60(d)(3) – for fraud on the court and obstruction of judicial process

- Emotional distress, financial injury, and reputational harm resulting from unlawful ejectment and suppression of federal defenses

- Costs incurred in resisting void enforcement, including emergency filings, courier services, and legal response.

**EXHIBIT D – VOID JUDGMENT TIMELINE**

Date | Event | Jurisdictional Defect / Procedural Violation | Legal Consequence

---------------------------------------------------------------------------------------------------------------

Jan 2025 | Plaintiff invokes federal defenses and removal rights | State court refuses to engage or acknowledge | Suppression of jurisdictional defenses

Feb 2025 | DBNTC counsel submits false servicing records | No evidentiary hearing or challenge permitted | Fraud on the court under Rule 60(d)(3)

Mar 2025 | Plaintiff files motion to vacate based on FDIC asset data | Motion denied without jurisdictional review | Violation of due process and Rule 60(b)(4)

Apr 2, 2025| Foreclosure judgment entered by Judge Anderson | No hearing, no adjudication of federal defenses | Void judgment for lack of subject matter jurisdiction

Apr 2025 | Possession executed by agents of DBNTC | No lawful authority or jurisdiction to enforce | Unlawful ejectment and deprivation of property

May 2025 | DBNTC initiates resale efforts | Plaintiff pressured to waive claims under threat | Coercive waiver tactics violating equity and due process

July 2025 | Plaintiff removes case to federal court | State actors continue enforcement post-removal | Obstruction of federal jurisdiction under 18 U.S.C. § 1512

## CONCLUSION AND PRAYER FOR RELIEF

Plaintiff respectfully submits this Verified Complaint for Injunctive, Declaratory, and Monetary Relief, asserting claims under the United States Constitution, federal civil rights statutes, RICO, FIRREA, FDIA, and related federal law. This action arises from a coordinated enterprise of judicial suppression, constructive fraud, and retaliatory foreclosure practices that deprived Plaintiff of property, due process, and equal protection under color of law.

On July 28, 2025, Plaintiff removed the related state court action to the United States District Court for the Northern District of Georgia (Atlanta Division) pursuant to 28 U.S.C. §§ 1443, 1442, the Fair Housing Act, and the Federal Deposit Insurance Act. This removal, combined with the filing of this RICO complaint, vests exclusive jurisdiction in this Court and stays all further state court proceedings. Any post-removal enforcement action constitutes unlawful interference with federal process and supports Plaintiff's claims under 18 U.S.C. §§ 1512 and 1962(d).

Plaintiff respectfully requests:

- Declaratory relief on all constitutional and statutory violations

- Injunctive relief restoring possession, halting enforcement, and neutralizing enterprise control

- Vacatur of void judgments and suppression-based rulings

- Compensatory damages in excess of $5,000,000, subject to proof at trial "including treble damages under 18 U.S.C. § 1964(c) for RICO violations, subject to proof at trial."

- Punitive damages as warranted by the evidence

- Attorney's fees under 42 U.S.C. § 1988 and applicable federal law

- Any additional equitable or statutory relief deemed just and proper

Plaintiff respectfully requests that this Court:

- Decide all questions of law, including constitutional violations, statutory interpretation, and entitlement to injunctive and declaratory relief

- Reserve all questions of fact and damages—including compensatory, punitive, and statutory awards—for determination by a jury pursuant to Fed. R. Civ. P. 38 and 42(b)

- Enter judgment consistent with the findings of fact and law, and grant all other relief deemed just and proper

Decide all questions of law, including constitutional violations, statutory interpretation, and entitlement to injunctive and declaratory relief

- Reserve all questions of fact and damages—including compensatory, punitive, and statutory awards—for determination by a jury pursuant to Fed. R. Civ. P. 38 and 42(b)

Plaintiff demands a jury trial on all triable issues.

Respectfully submitted,

Steven Clayton Thomason Pro Se ____________________

Respectfully submitted,

Norcisse Thomason ____________________ Plaintiff, Pro Se

Bre Leonna Thomason ____________________ Plaintiff, Pro Se

**Joint Declaration of Ownership and Injury**

Filed in Support of Verified Complaint for Injunctive, Declaratory, and Monetary Relief

We, Norcisse Thomason and Bre Thomason, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. Ownership and Possession

We are the daughters of Clayton and Priscilla Thomason, and co-owners of the residential property located at 901 Seibles Road, Montgomery County, Alabama 36116.

Our ownership and possessory interests arise from family inheritance, continuous residence, and joint restoration efforts with our father, Plaintiff Clayton Thomason.

We have continuously occupied and maintained the property, sharing responsibility for its upkeep, restoration, and defense against unlawful foreclosure and dispossession.

2. Injury and Interference

On or about July 9, 2025, we were subjected to a retaliatory enforcement action by servicer-aligned actors and local agents, despite actual notice of federal removal and pending RICO claims.

We were forcibly dispossessed of our home and property without lawful process, in violation of our constitutional rights and federal protections.

The enforcement action caused emotional distress, disruption of our daily lives, and deprivation of our lawful property interests.

3. Federal Standing and Participation

We join Plaintiff Clayton Thomason in asserting claims under the United States Constitution, 42 U.S.C. §§ 1983, 1985(3), and 1988, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962 and 1512.

We affirm our standing as co-plaintiffs and lawful possessors, and we seek injunctive, declaratory, and monetary relief for the injuries sustained.

Executed on this 25th day of July 2025.

/s/ Norcisse Thomason Norcisse Thomason

Plaintiff, Pro Se

/s/ Bre Thomason Bre Thomason

Plaintiff, Pro Se

Anesha Smith-Cook

ANESHA SMITH-COOK
Notary Public
Alabama State at Large

My Commission Expires
June 27, 2027

ANESHA SMITH-COOK NOTARY

The following parties were served with a true and correct copy of the Complaint, including all exhibits and attachments, via certified mail, return receipt requested, pursuant to Rule 4 and Rule 5(b)(2)(C) of the Federal Rules of Civil Procedure:

DEFENDANTS

- Federal Deposit Insurance Corporation (FDIC) – Receiver for IndyMac Bank, FSB

Address: 3501 Fairfax Drive, Arlington, VA 22226

- First Citizens Bank – Successor-by-acquisition to CIT Group, One West Bank, and IndyMac operations

Address: 4300 Six Forks Road, Raleigh, NC 27609

- Eva Bank – FDIC-insured state-chartered bank

Address: 34113 Eva Road, Eva, AL 35621

Branch: 1710 Cherokee Avenue, Cullman, AL 35055

- PHH Mortgage Corporation – Successor servicer to Ocwen Loan Servicing, LLC

Address: P.O. Box 5954, Springfield, OH 45501-5954

- Deutsche Bank National Trust Company (DBNTC) – Foreign trustee purporting to act on behalf of INABS 2006-A8 securitized pool

Address: 60 Wall Street, New York, NY 10005

- Mortgage Electronic Registration Systems (MERS) – Registry entity involved in title manipulation Address: 1901 E. Voorhees Street, Suite C, Danville, IL 61834

Named attorneys include:

Christopher A. Bottcher

McGlinchey Stafford PLLC

505 20th Street North, Suite 800

Birmingham, AL 35203

-Joseph Vincent Ronderous

McGlinchey Stafford PLLC

505 20th Street North, Suite 800

Birmingham, AL 35203

Timothy Dylan Reeves

McGlinchey Stafford PLLC

505 20th Street North, Suite 800

Birmingham, AL 35203

Natalie V. Walker

McGlinchey Stafford PLLC

505 20th Street North, Suite 800

Birmingham, AL 35203

Cynthia W. William

Sirote & Permutt, P.C.

2311 Highland Avenue South

Birmingham, AL 35205

Meagan Elizabeth Ryan

Sirote & Permutt, P.C.

2311 Highland Avenue South

Birmingham, AL 35205$

Colin Thomas Dean

Bradley Arant Boult Cummings LLP

One Federal Place

1819 5th Avenue North

Birmingham, AL 35203

Graham W. Gerhardt

Bradley Arant Boult Cummings LLP

One Federal Place

1819 5th Avenue North

Birmingham, AL 35203

Shaun Ramey

McGlinchey Stafford PLLC

505 20th Street North, Suite 800

Birmingham, AL 35203

**AGENCY & MUNICIPAL ACTORS**

Montgomery County Sheriff's Department

115 South Perry Street

Montgomery, AL 36104

Jubilee Movers

8953 Wares Ferry Road

Montgomery, AL 36117

Phone: (334) 840-6040

Altisource Relocation Services

Altisource Solutions, Inc.

2300 Lakeview Parkway, Suite 700

Alpharetta, GA 30009-9066

Graham W. Gerhardt

Bradley Arant Boult Cummings LLP

One Federal Place

1819 5th Avenue North

Birmingham, AL 35203

Meaghan Elizabeth Ryan

Formerly at Sirote & Permutt, P.C.

2311 Highland Avenue South

P.O. Box 55727

Birmingham, AL 35205

Phone: (205) 930-5319

Shaun Ramey

McGlinchey Stafford PLLC

Nashville / Birmingham / Fort Lauderdale

Alternate: Sirote & Permutt, P.C.

2311 Highland Avenue South

Birmingham, AL 35205

John R. Lavette

Morris & Lavette, P.C.

2131 3rd Avenue North

Birmingham, AL 35203

Jon-Kaden G. Mullen

Virtus Law Group

2017 Morris Avenue, Suite 100

Birmingham, AL 35203

**JUDICIAL OFFICERS (Named in Individual Capacity)**

- Judge Emily C. Marks, Chief Judge, MDAL
- Judge William Keith Watkins, Senior Judge, MDAL
- Judge Andrew L. Brasher, Circuit Judge, Eleventh Circuit
- Judge James Anderson, Circuit Judge, Montgomery County
- Judge Brooke Reid, Circuit Judge, Montgomery County
- Magistrate Judge Kelly Fitzgerald Pate – MDAL

Judge James Anderson

Fifteenth Judicial Circuit Court of Alabama

251 South Lawrence Street

Montgomery, AL 36104

*Served in individual capacity*

Judge Brooke E. Reid

Fifteenth Judicial Circuit Court of Alabama

P.O. Box 5159

Montgomery, AL 36103

*Served in individual capacity*

Judge W. Keith Watkins

U.S. District Court – Middle District of Alabama

One Church Street

Montgomery, AL 36104

*Served in individual capacity*

Judge Emily Marks

U.S. District Court

Middle District of Alabama

One Church Street

Montgomery, AL 36104

*Served in individual capacity*

Judge Andrew L. Brasher

U.S. Court of Appeals – Eleventh Circuit

Elbert P. Tuttle Court of Appeals Building

56 Forsyth Street N.W.

Atlanta, GA 30303-3147

*Served in individual capacity*

CERTIFICATE OF SERVICE

I certify under penalty of perjury that the foregoing is true and correct. Executed on July 28, 2025.

I declare that Service was made pursuant to Rule 5(b)(2)(C) of the Federal Rules of Civil Procedure. I will retain the signed return receipts (green cards) as proof of service and will submit copies to the Clerk of Court upon receipt.

Dated: 7-28-2025

Respectfully s Steven Clayton Thomason

901 Seibles Road

Montgomery Alabama 36116

334-294-9910

claytonthomason@yahoo.com

Pro Se Plaintiff

ANESHA SMITH-COOK
Notary Public
Alabama State at Large

ANESHA SMITH-COOK NOTARY PUBLIC ALABAMA STATE AT LARGE

My Commission Expires
June 27, 2027